**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UMG RECORDINGS, INC., CAPITOL
RECORDS, LLC, SONY MUSIC
ENTERTAINMENT, ARISTA MUSIC, ARISTA
RECORDS LLC, ATLANTIC RECORDING
CORPORATION, RHINO ENTERTAINMENT
COMPANY, WARNER MUSIC INC., WARNER
MUSIC INTERNATIONAL SERVICES
LIMITED, WARNER RECORDS INC.,                    Case No. 1:24-cv-04777-AKH
WARNER RECORDS LLC, and WARNER
RECORDS/SIRE VENTURES LLC,

                        Plaintiffs,

            -against-                            **CIVIL CASE MANAGEMENT PLAN**

UNCHARTED LABS, INC., d/b/a Udio.com, and
JOHN DOES 1-10,


 Defendant.

After consultation with counsel for the parties, the following Case Management Plan is adopted. This plan is also a scheduling order pursuant to Rules 16 and 26(f) of the Federal Rules of Civil Procedure.

    A.  The case (is) (is not) to be tried to a jury. [Circle as appropriate].[1]

    B.  Non-Expert Discovery:

        1.    The parties are to conduct discovery in accordance with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of New York. All non-expert discovery is to be completed by **[See parties' competing proposals in Attachment A]** which date shall not be adjourned except upon a showing of good cause and further order of the Court. Interim deadlines for specific discovery activities may be extended by the parties on consent without application to the Court, provided the parties are certain that they can still meet the discovery completion date ordered by the Court.

            i.    The parties shall list the contemplated discovery activities and anticipated completion dates in Attachment A, annexed hereto.

        2.  Joinder of additional parties must be accomplished by **[See parties' competing proposals in Attachment A]**.

        3.    Amended pleadings may be filed without leave of the Court until **[See parties' competing proposals in Attachment A]**.

    C.  For all causes of action seeking monetary damages, each party shall identify and quantify in Attachment B, annexed hereto, each component of damages alleged; or, if not known, specify and indicate by what date Attachment B shall be filed providing such information.

    D.  Motions, Settlement, Second Pre-Trial Conference, and Expert Discovery:

        1.    Upon the conclusion of non-expert discovery, counsel for the parties shall meet for at least two hours at the office of plaintiff's counsel, to discuss settlement. The date for the meeting is **[See parties' competing proposals in Attachment A]**. (Counsel shall insert a date but, at the option of either, the date may be canceled upon the service or filing of a dispositive motion and notice to the court.)

---

[1] Udio denies that all of Plaintiffs' claims are properly triable to a jury.

           i.   ~~There shall be no cross-motions.~~

    2.  Approximately one week thereafter, the parties shall meet with the Court for a Second Case Management Conference to discuss the status of the case, the prospects of settlement, whether alternative disputes-resolution procedures should be utilized, the need for and a schedule regulating experts and expert-discovery, appropriate motions and schedules therefor, and any other issue counsel or the Court wish to discuss. The Case Management Conference will be held on **[See parties' competing proposals in Attachment A]**.

    3.      As to motions, there shall be no more than three rounds of serving and filing papers: supporting affidavits and briefs, opposing affidavits and briefs, and reply affidavits and briefs.

E.  Any request for relief from any date provided in this Case Management Plan shall conform to the Court's Individual Rules, and include an order, showing consents and disagreements of all counsel, setting out all dates that are likely to be affected by the granting of the relief requested, and proposed modified dates. Unless and until the Court approves the proposed order, the dates provided in this Plan shall be binding.

F.  A final pre-trial conference will be held on a date to be set, as close as possible to the date that trial is expected to begin. The parties, three days before said meeting, shall submit their pre-trial order, conforming to the Court's Individual Rules and, at the conference, deliver their exhibit books containing all exhibits the parties actually intend to offer at the trial.

G.  Pre-Trial Motions:

Applications for adjournments and for discovery or procedural rulings will reflect or contain the positions of all parties, and otherwise conform to my Individual Rules 1(D) and 2(E).

SO ORDERED.


DATED:

_____, 20__

New York, New York



_____

ALVIN K. HELLERSTEIN
 United States District Judge

## ATTACHMENT A

The Parties have met and conferred, but were unable to reach agreement on the dates requested by the Court's Civil Case Management Plan, including with respect to discovery activities. The Parties respectfully submit competing proposals below for the Court's consideration, and each side offers a statement in support of their position below the table of proposed dates.

| CASE ACTIVITIES | PLAINTIFFS' PROPOSED DEADLINE | DEFENDANT UDIO'S PROPOSED DEADLINE |
|---|---|---|
| **1.** Joinder of additional parties | September 27, 2024 | September 27, 2024 |
| **2.** Amended pleadings (without leave of court) | December 20, 2024<br><br>Amended pleadings limited to the identification of additional infringed works may be filed without leave of the Court 45 days prior to the close of the second phase of fact discovery. | November 18, 2024 |
| **3.** Substantial completion of document production | November 1, 2024 (limited to Defendant's fair use defense) | April 10, 2025 |
| **4.** Fact discovery (written and depositions) | November 25, 2024 (limited to Defendant's fair use defense) | July 1, 2025 |
| **5.** Initial expert disclosures | January 10, 2025 (limited to Defendant's fair use defense) | August 12, 2025 |

| | | |
|---|---|---|
| **6.** Rebuttal expert disclosures | January 31, 2025 (limited to Defendant's fair use defense) | September 11, 2025 |
| **7.** Expert discovery | February 14, 2025 (limited to Defendant's fair use defense) | September 26, 2025 |
| **8.** Motions for summary judgment | March 14, 2025 (motions for summary judgment regarding Defendant's fair use defense) | October 21, 2025 |
| **9.** Second Case Management Conference | 1 week after resolution of motions for summary judgment regarding Defendant's fair use defense, during which potential mediation and any further discovery will be discussed and scheduled | 1 week after the Final Settlement Conference |
| **10.** Final Settlement Conference | Within 30 days after the completion of the second phase of discovery | 30 days after the Court's resolution of all motions for summary judgment, at 9:00 a.m. |

## **PLAINTIFFS' POSITION**

Defendant's Answer in this case has clarified what is and what is not in dispute.  This case will not turn on whether Plaintiffs own or control the rights to numerous copyrighted sound recordings (they do) or whether Defendant copied many of those copyrighted works (it did). Answer (ECF No. 26) at 8 ("The many recordings that Udio's model was trained on presumably included recordings whose rights are owned by the Plaintiffs in this case.").  Regardless of what Defendant says in opposing this proposal now, the pleadings make clear that the heart of this dispute is whether Defendant's copying of those sound recordings constitutes fair use.  Compare Complaint (ECF No. 9) ¶ 14 ("Udio cannot avoid liability for its willful infringement by claiming fair use.") with Answer (ECF No. 26) at 1-2 ("Under longstanding doctrine, what Udio has done . . . is a quintessential 'fair use' under copyright law.").  Indeed, Udio made its reliance on this defense abundantly clear even prior to the filing of the Complaint.  Complaint (ECF No. 9) ¶ 10 (referencing Udio's pre-litigation correspondence claiming "that its large-scale copying of sound recordings is 'fair use'").  In the interests of judicial economy, limiting expense, and speeding resolution, Plaintiffs' proposal sequences discovery to focus first on that central issue of liability.

Rule 26(d) provides courts with the broad authority "to control the sequence and timing of discovery, particularly where resolution of a preliminary matter may decide the entire case," empowering them to bifurcate discovery where appropriate.  *Roper v. City of New York*, 2017 WL 462270, at *1 (S.D.N.Y. Jan. 25, 2017); *see also* Civil Case Management Plan, *Laxminarayan Lodging, LLC v. First Specialty Ins. Corp.*, No. 1:21 Civ. 07506 (AKH) (S.D.N.Y. Apr. 8, 2022) (Hellerstein, J.), ECF No. 43 (permitting early motions for summary judgment focused on ripeness and staying discovery pending determination of the motions).  Courts have recognized that fair use is the type of discrete issue appropriate for bifurcated discovery.  *See, e.g., OSHO Int'l Found. v.*

*Chapman Way*, 2019 WL 12379558, at *2 (C.D. Cal. Sept. 11, 2019) (granting request for bifurcation where "Defendants' liability for copyright infringement relies on a determination of whether Defendants' use is protected under the fair use doctrine"); *see also Nook Industries, Inc. v. Barnes & Noble, Inc.*, 2011 WL 486157, at *2 (N.D. Oh. Feb. 7, 2011) (ordering bifurcated discovery of liability and damages in copyright infringement case to "promote judicial economy and efficiency, particularly because . . . if Plaintiff's claims do not withstand scrutiny at the dispositive motion stage, discovery relating to damages would be unnecessary"). This is because the fair use factors—(1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the work used; and (4) the effect of the use on the potential market for or value of the copyrighted work—require inquiry into matters that are largely distinct from areas that necessitate more burdensome and costly discovery.

    This is an archetypal case for bifurcation given the significant volume of copyrighted material at issue. Plaintiffs allege that Defendant has infringed on the copyrights of thousands of sound recordings. *See* Complaint (ECF No. 9) Ex. A. As Plaintiffs noted in the Complaint, they intend to amend their pleading "to provide an expanded list of works that Udio has infringed" once they learn the full scope of Defendant's infringing conduct, likely adding significantly more copyrighted sound recordings to the case. *Id.* ¶ 30. To the extent additional discovery on the particular works involved is needed to fully adjudicate Plaintiffs' claims, it would undoubtedly require a significant undertaking involving voluminous materials given the number of sound recordings implicated. *See Shamraev v. Tiktok Inc.*, 2022 WL 17882129, at *3 (C.D. Cal. Oct. 12, 2022) (bifurcating discovery into liability and damages phases in copyright infringement suit where "damages discovery will be particularly burdensome given the nature and scope of the alleged violation"). It would be inefficient and inexpedient to undertake such voluminous

discovery when a more limited set of discovery in the first instance might fully dispose of the case and moot the need for more burdensome discovery.

Defendant takes the position that bifurcation would result in duplicative discovery, but this concern is overblown.  Notwithstanding Defendant's position below, the Answer makes clear that there are no legitimate disputes, at least as a general matter, with respect to the prima facie elements of ownership and copying.  Insofar as Defendant may intend to challenge Plaintiffs' ownership of any specific one of the thousands of recordings involved, that need not be resolved prior to addressing the central liability issue in the case.

As to any alleged overlap between the fair use factors and damages, "[t]he discovery required on these issues is distinct from one another," asking different questions and requiring different evidence.  *OSHO*, 2019 WL 12379558, at *2-3.  As compared to fair use, the damages inquiry is more fine-grained and may take into account complex, detailed issues such as "the actual damages suffered . . . as a result of the infringement, and any profits from the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." *Id.* (quoting 17 U.S.C. § 504).  In short, discovery with respect to damages will "undoubtedly require a more thorough examination of documents and experts relating to . . . finances than . . . will be necessary for liability." *Id.*

Defendant also asserts that overlap between its fair use and copyright misuse defenses counsels against bifurcation.  That is not so.  First, it is not even clear that copyright misuse is a valid defense in this Circuit.  *Michael Grecco Prods., Inc. v. Valuewalk, LLC*, 345 F. Supp. 3d 482, 510 (S.D.N.Y. 2018) ("This defense has not been firmly established in the Second Circuit and it is unclear whether an antitrust violation is required for its use.").  Second, even assuming copyright misuse is a valid defense, Defendant's allegations are so vague that it is far from clear

that this is an appropriate case for its application.  *See, e.g.*, Answer (ECF No. 26) at 11–12 (alleging that Plaintiffs "leverage[d] their exclusive rights under copyright law to strong-arm music users into categorically avoiding artificial intelligence products").  Third, even if Defendant is ultimately allowed to proceed with a legally dubious defense based on such barebones allegations, the potential overlap of discovery with Defendant's fair use defense is not a reason to prevent bifurcation.  Any discovery that the parties obtain during the first phase of discovery on fair use would subsequently still be available for their use with respect to any other issues in the case, including both the copyright misuse defense and damages.

Nor should the Court give credence to the various other "generative AI cases" that Defendant claims prove Plaintiffs' proposal unworkable.  *None* of those cases involved a request to bifurcate the issue of fair use,[2] as Plaintiffs propose here, nor is there any indication that those cases had been narrowed by the initial pleadings in a similar fashion.  Thus, it is unclear that the cases are "similar," despite Defendant's claim, in any way that is relevant to the Court's decision here.

In conclusion, the contrast between the two proposals in this case lays bare exactly why bifurcation is appropriate here.  Plaintiffs' proposal reflects that key elements of Defendant's liability are not in dispute, and it prioritizes discovery and adjudication of the most significant outstanding issue, which can be accomplished in accelerated fashion.  Under Defendant's proposal, discovery would last for over a year before summary judgment motions are filed in October 2025.

---

[2] In *Mujae Group*, this court considered, and ultimately did not accept, a proposal to split discovery into liability and damages phases.  *Mujae Group* was a trade secrets case that involved claims and issues meaningfully different than those presented here.  In particular, there was no argument in that case that the sequencing proposal would limit the need for voluminous discovery into largely uncontested issues.  Here, by contrast, Plaintiffs' sequencing proposal would, among other things, limit the need for voluminous discovery into the ownership of the at-issue works, when ownership is not seriously in dispute.

This would require both sides to spend significant amounts of time and money on discovery that would only be required if Defendant's fair use defense is rejected. It would be a waste of the parties' and the Court's resources to conduct discovery on issues that may never be reached, including costly analyses of damages, where conducting a more limited initial phase of discovery may resolve the central liability issue in the case by the spring of next year.

## **DEFENDANT'S POSITION**

Bifurcation is "the exception, and not the rule." *Melville v. HOP Energy, LLC*, No. 21-cv-10406, 2023 WL 4054945, at *2 (S.D.N.Y. May 11, 2023); *see also Lopez v. City of New York*, No. 20-cv-02502, 2021 WL 2739058, at *1 (S.D.N.Y. July 1, 2021) (moving party has burden of proof to show good cause is warranted). And Plaintiffs' proposal, here, is both unprecedented and without justification. There are several dozen currently pending cases, many of them in S.D.N.Y., asserting copyright claims against AI companies—and Plaintiffs' proposed schedule tracks none of them. *Compare, e.g.*, *New York Times v. Microsoft*, No. 23-cv-08292-SHS, Dkt. No. 112 (S.D.N.Y. Jan. 31, 2024); *Lehrman v. Lovo, Inc.*, No. 24-cv-03770-JPO, Dkt No. 21 (S.D.N.Y. Aug. 12, 2024). It proposes bifurcating Udio's fair use defense, and then affords the parties meaningfully less time litigate the case to summary judgment than courts have allowed in analogous cases. *Compare id.* And it does so without good cause.

Plaintiffs ask the Court to effectively assume liability and allow them to skip discovery into all the threshold matters over which they bear the burden of proof and instead proceed straight to resolution of a single asserted defense of *Plaintiffs'* choosing. Plaintiffs do not explain why they should be permitted to unilaterally dictate Udio's defense by selecting one affirmative defense, from among several that Udio has asserted, for early resolution. *See* Dkt. 26 (asserting twelve defenses, including copyright misuse and unclean hands). As Udio's Answer makes clear,

fair use is just one of a number of asserted defenses that have the potential to materially impact the outcome of this litigation.  A copyright misuse finding, for example, would preclude Plaintiffs entirely from asserting their copyrights during the entire period of misuse.  *See* Dkt. 26; *see also Prac. Mgmt. Info. Corp. v. Am. Med. Ass'n*, 121 F.3d 516, 520 n.9 (9th Cir. 1997). Plaintiffs' contention that copyright misuse is not a "valid" defense in this District is wrong, and Plaintiffs' attempt to justify their proposed schedule based on premature assumptions about how their apparently forthcoming motion to strike will be resolved should be rejected.  *See Saks Inc. v. Attachmate Corp.*, No. 14-cv-4902, 2015 WL 1841136, at *12 (S.D.N.Y. Apr. 17, 2015) ("a number of district courts in this circuit have refused to strike such a defense, so it is incorrect to suggest that this defense is not recognized in this Circuit"); *Michael Grecco Prods., Inc. v. Valuewalk, LLC*, 345 F. Supp. 3d 482, 510 (S.D.N.Y. 2018) (noting that "courts in this District have declined to bar" the copyright misuse defense).  Regardless, Plaintiffs' proposed schedule— which denies Udio discovery into <u>all</u> of its affirmative defenses except one for the first seven months of the litigation (at minimum)—would disrupt the balance of the adversarial process and prejudice Udio's ability to control its defense.  Notably, the only case Plaintiffs cite as precedent for bifurcating a fair use defense is one in which bifurcation was requested by the *defendant*—and, in that case, the court merely bifurcated *damages* from liability (including all asserted defenses), *not* the defendant's fair use defense from the entirety of the case.  *See OSHO Int'l Found. v. Chapman Way*, No. 19-cv-00753, 2019 WL 12379558, at *2 (C.D. Cal. Sept. 11, 2019).

Plaintiffs offer no persuasive reason for why the Court should bifurcate Udio's fair use defense over its objection.  Plaintiffs cannot show that their proposed bifurcation would "further convenience, avoid prejudice, or promote efficiency."  *Amato v. City of Saratoga Springs*, 170 F.3d 311, 316 (2d Cir. 1999).  To the contrary, Plaintiffs' plan is inconvenient, prejudicial, and

wasteful.  *See Beale v. Alexis Bittar, Inc.*, No. 12-cv-07902-AKH, Dkt. No. 34 (S.D.N.Y. June 13, 2013) (Hellerstein, J.) (denying motion because "bifurcation at this point will tend to add proceedings, motions and arguments").

In particular, given the *significant overlap in discovery* between and among Plaintiffs' direct infringement claim and Udio's defenses, Plaintiffs' plan runs risk of leading to disputes regarding the appropriate scope of discovery at each proposed phase.  *See, e.g.*, *Melville*, 2023 WL 4054945, at *2 (denying bifurcation of discovery where substantial overlap of issues would result in "duplication of efforts and needless line-drawing disputes"); *Beale*, No. 12-cv-07902-AKH, Dkt. No. 34 (denying motion where "witnesses and documents tend to overlap issues").  For example, both Plaintiffs' direct infringement claim and Udio's fair use defense will require discovery into the design and technical specifications of Udio's generative AI tool.  In addition, Udio's fair use defense, copyright misuse defense, and Plaintiffs' asserted damages claim will all require discovery into Plaintiffs' licensing practices, including whether Plaintiffs have licensed their works as training data for generative AI models—and if not, why.  Indeed, Plaintiffs admit that Factor Four of the fair use defense demands evidence on "the effect of the use on the potential market for or value of the copyrighted work."  *See supra.*  In any event, that the parties are already disputing what discovery goes to Udio's fair use defense vs. other case issues is proof positive that Plaintiffs' bifurcation proposal is likely to result in "needless line-drawing disputes."  *Melville*, 2023 WL 4054945, at *2.

And to what end?  Plaintiffs identify no meaningful economies to be gained from bifurcation beyond one-sided "efficiencies" that flow from delaying Plaintiffs' obligation to establish the prima facie elements of their infringement claims—including showing they have copyright standing under 17 U.S.C. Section 106 to assert each of the works at issue, and that each

of the asserted works was indeed copied.  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) ("To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original").  Contrary to Plaintiffs' suggestion, Udio has *not* admitted these elements.  Rather, Udio has serious doubts about Plaintiffs' ability to prove that they own every work in suit (a task the RIAA itself called "a legal abyss of uncertainty," *Comments of RIAA in the Matter of Federal Copyright Protection of Sound Recordings Fixed Before February 15, 1972*, at 5)—particularly given the complexities that result from the manner in which the Classics Act, 17 U.S.C. § 1401, which governs pre-1972 sound recordings, has been incorporated into state law.  Udio intends to hold Plaintiffs to their burden of proof on each element of their copyright infringement claims.

For these reasons, the Court should reject Plaintiffs' plan and adopt Udio's proposed schedule, which aligns with the schedules of similar generative AI cases.  In fact, Udio's schedule proposes a *faster* timeline than that of many other AI cases—as well as other schedules this Court has adopted.  *Compare* Udio's Proposed Deadlines (fact discovery completion deadline 371 days after filing of complaint), *with Kadrey v. Meta Platforms, Inc.*, No. 23-cv-03417-VC, Dkt. No. 87 (N.D. Cal. Jan. 23, 2024) (fact discovery completion deadline 452 days after filing of complaint), *and Doe 1 v. GitHub, Inc.*, No. 22-cv-06823-JST, Dkt. No. 130 (N.D. Cal. July 11, 2023) (fact discovery completion deadline 478 days after filing of complaint), *and Lehrman v. Lovo, Inc.*, No. 24-cv-03770-JPO, Dkt. No. 21 (fact discovery completion deadline 411 days after filing of complaint); *see also Mujae Grp., Inc. v. Spotify USA Inc.*, No. 20-cv-06719-AKH, Dkt. No. 68 (S.D.N.Y. June 11, 2021) (Hellerstein, J.) (fact discovery completion deadline 442 days after filing of complaint).

<u>**ATTACHMENT B**</u>

**For all causes of action seeking monetary damages, each party shall identify and quantify each component of damages alleged:**

1.    <u>**PLAINTIFF'S CLAIMS**</u>:

Plaintiffs seek statutory damages pursuant to 17 U.S.C. § 504(c), up to the maximum provided by law; or, in the alternative, actual damages and/or Udio's profits from any found infringement pursuant to 17 U.S.C. § 504(b).  At this time, Plaintiffs cannot identify each and every copyrighted sound recording that Defendant has infringed.  Plaintiffs expect to be able to quantify these figures following expert discovery.  Plaintiffs also seek costs and disbursements in this action, including attorneys' fees, and pre- and post- judgment interest, to the fullest extent available.

2.    <u>**COUNTERCLAIMS AND CROSS-CLAIMS**</u>:

None at present.

3.    <u>**THIRD-PARTY CLAIMS**</u>:

Respectfully submitted,


Dated: August 19, 2024


By: /s/ *Moez M. Kaba*

Moez M. Kaba
Mariah N. Rivera
Alexander R. Perry
**HUESTON HENNIGAN LLP**
1 Little West 12th Street, 2nd Floor
New York, NY 10014
Telephone: (646) 930-4046
Facsimile: (888) 775-0898
mkaba@hueston.com
mrivera@hueston.com
aperry@hueston.com

Robert N. Klieger (*pro hac vice*)
Rajan S. Trehan (*pro hac vice*)
**HUESTON HENNIGAN LLP**
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
Facsimile: (888) 775-0898
rklieger@hueston.com
rtrehan@hueston.com

*Attorneys for Plaintiffs*
*UMG Recordings, Inc., Capitol*
*Records, LLC, Sony Music*
*Entertainment, Arista Music,*
*Arista Records LLC, Atlantic*
*Recording Corporation, Rhino*
*Entertainment Company, Warner*
*Music Inc., Warner Music*
*International Services Limited,*
*Warner Records Inc., Warner*
*Records LLC, and Warner Records/*
*Sire Ventures LLC*

Dated: August 19, 2024

By: /s/  *Brittany N. Lovejoy*
Steven N. Feldman
Nathan Taylor
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
steve.feldman@lw.com
nathan.taylor@lw.com

Andrew M. Gass (*pro hac vice*)
Brittany N. Lovejoy (*pro hac vice*)
**LATHAM & WATKINS LLP**
505 Montgomery Street
Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
andrew.gass@lw.com
brittany.lovejoy@lw.com

Sarang V. Damle
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
sy.damle@lw.com

Alex Spiro
Jessica A. Rose
Todd S. Anten
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
51 Madison Avenue
22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
alexspiro@quinnemanuel.com
jessicarose@quinnemanuel.com
toddanten@quinnemanuel.com

Andrew H. Schapiro
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
191 N. Wacker Drive
Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401
andrewschapiro@quinnemanuel.com

*Attorneys for Defendant Uncharted Labs, Inc., d/b/a Udio.com*