## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UMG RECORDINGS, INC., CAPITOL
RECORDS, LLC, SONY MUSIC
ENTERTAINMENT, ARISTA MUSIC,
ARISTA RECORDS LLC, ATLANTIC
RECORDING CORPORATION, RHINO
ENTERTAINMENT COMPANY, WARNER
MUSIC INC., WARNER MUSIC
INTERNATIONAL SERVICES LIMITED,
WARNER RECORDS INC., WARNER
RECORDS LLC, and WARNER
RECORDS/SIRE VENTURES LLC,

          Plaintiffs,

    vs.

UNCHARTED LABS, INC., d/b/a Udio.com,
and JOHN DOES 1-10,

          Defendant.

Case No. 1:24-cv-04777-AKH

**JOINT SUBMISSION RE: FRCP 33
AND 34 DISCOVERY DEADLINES,
PROTECTIVE ORDER, AND ESI
PROTOCOL**

Pursuant to the Court's scheduling order, dated August 22, 2024 (ECF No. 37), the parties hereby submit the following proposals for (1) dates for completion of discovery under Federal Rules of Civil Procedure 33 and 34; (2) a protective order to govern the exchange of sensitive information; and (3) a protocol to govern the production of electronically stored information ("ESI").

Though the parties met and conferred and reached agreement on many facets of a joint proposed protective order and ESI protocol, certain matters with respect to those documents remain in dispute. As a result, the parties have submitted herewith competing proposals for the protective order and ESI protocol, along with a brief summary of the nature of the disputed portions of each.

## I.  Deadlines for Completion of Written Discovery

The parties jointly propose **February 28, 2025**, as the date for substantial completion of document productions, and **April 18, 2025**, as the deadline for FRCP 33 and 34 discovery. The parties reserve all rights as to the timing for the close of fact discovery, including the deadlines for depositions and third-party discovery.

## II.  Protective Order

The parties agree on substantial portions of the protective order; however, material disputes remain with respect to the following provisions. Reflecting these disputes, Plaintiffs' proposed protective order is attached as **Exhibit A**, and Defendant's proposed protective order is attached as **Exhibit B**. The parties' respective positions on these outstanding issues with the protective order are set forth below:

### *Disputed Provisions*

### A.  Provision Regarding a Potential Protocol for Inspection of Source Code

1) *Plaintiffs' Position*

Defendant proposes including a paragraph stating, "The Parties will separately negotiate a protocol for the inspection of source code . . . to the extent such a protocol becomes necessary." *See* Ex. B ¶ 7. Plaintiffs repeatedly asked Defendant to identify what they had in mind with respect to this protocol, noting the importance of discussing any such proposal in advance of the Court's

deadline for submission of a discovery protocol.  Defendant responded that it was "premature" to do so because the scope of source code discovery had yet to be determined.

Plaintiffs oppose the inclusion of Defendant's proposed paragraph regarding a source code protocol because they cannot agree that they will negotiate such a protocol without having any understanding of what that protocol would include.  Moreover, Plaintiffs would object to any attempt by Defendant to use the absence of such a protocol as the basis for avoiding or delaying permissible discovery.  Both sides recognize that the claims at issue necessitate inspection of Defendant's source code to understand the inner workings of its service and AI model (indeed, Defendant proposed the inclusion of a special confidentiality designation for such material in the protective order), and Defendant could have made any specific proposals in that regard prior to this submission.

The potential complexities that Defendant raises in its position are precisely the types of issues the Court expected the parties to discuss while crafting these discovery proposals.  Nothing in the Court's Scheduling Order carved out specific categories of discovery for negotiation at a later date.  Yet, Defendant refused to negotiate a protocol over source code discovery even though it was the only party that believed that such a specific protocol would be necessary.  Plaintiffs were ready and willing to follow the Court's directive to negotiate a comprehensive discovery protocol before the present deadline and decline to endorse Defendant's delay tactics.

2) *Udio's Position*

Udio's Protective Order proposes that the Parties commit to negotiate in good faith a protocol governing the inspection of source code.  *See* Proposed Protective Order Ex. B ¶ 7.  Udio's source code is among its most highly confidential and sensitive assets.  Prior to any inspection of Udio's source code, the Parties will need to agree upon protocols that ensure that the inspection is conducted in a secure manner that is carefully designed to prevent any intentional or accidental disclosure of code.

However, at this early stage of the litigation, when the parties have only just begun exchanging discovery requests and positions and it is not yet clear what source code materials Udio will be obligated to produce, it is premature to set parameters governing source code

inspection.  For instance, though Udio's Responses and Objections to Plaintiffs' First Set of Requests for Production are not due until September 20, Udio anticipates that one area of dispute will be the scope of the source code Plaintiffs are entitled to inspect, including because it is presently unclear whether Plaintiffs are seeking code materials beyond the aspects of Udio's model architecture that were developed by trained on recordings.  How such disputes are resolved may significantly affect the terms of the source code inspection protocol, including such technical terms as what software should be loaded onto the source code review computer and how many pages of physical printouts might be appropriate in relation to the overall volume of code.  Udio commits to begin discussions with Plaintiffs counsel regarding an appropriate inspection protocol once the Parties have a meeting of the minds on what, exactly, is being inspected—and its proposed Protective Order captures that commitment.  Plaintiffs refusal to similarly commit is troubling.

**B.     Limitations on In-House Counsel Who May Receive Highly Confidential Information**

1)  *Plaintiffs' Position*

To balance the complexity and volume of information likely to be produced in this matter with the parties' interests in protecting their competitively sensitive information, Plaintiffs propose that the parties be allowed to disclose "Highly Confidential Information" to up to five (5) designated in-house attorneys to whom disclosure is reasonably necessary for this litigation, provided such person has first executed the agreed-upon non-disclosure agreement annexed to the protective order.  Ex. A ¶ 13(b).  Defendant, by contrast, would restrict this number to just two (2) in-house attorneys, provided that such attorneys do not have any role in "Competitive Decision Making."  Defendant defines "Competitive Decision Making" to include, among other things,

> the action or process of making a business decision or resolving a non-legal question relating to a competitor, potential competitor, licensee, distribution partner, artist, or other business partner regarding licensing, contracts, marketing, pricing, product or service development or design, research and development, mergers and acquisitions, acquisition, funding, or enforcement of intellectual property.

Ex. B ¶ 14 n.1.

Defendant's attempt to exclude in-house attorneys involved in what it terms "Competitive Decision Making" from reviewing protected materials is plainly designed for the actual purpose

of hindering Plaintiffs' ability to prosecute this litigation. Indeed, Defendant's broad definition—which encompasses Plaintiffs' routine business activities—effectively sweeps in most, if not all, of Plaintiffs' in-house attorneys and would bar them from reviewing the protected material. Thus, Defendant's proposal is unworkable, as it risks blocking in-house attorneys managing this litigation from reviewing information critical to the claims asserted in this case and would arbitrarily handcuff their ability to manage the litigation.

Defendant's proposed restriction is also unnecessary. Defendant argues that sharing Highly Confidential Information with Plaintiffs' in-house counsel risks competitive harm, but this is speculative and unfounded. Under both parties' proposals, any in-house attorney reviewing protected material would first need to agree to be bound by the express limitations on how those materials may be used—i.e., "solely for the prosecution or defense of this action and not for any other purpose." Ex. A. ¶ 1. This use restriction guards against the supposed harm of which Defendant is concerned, as Plaintiffs are expressly prohibited from utilizing Protected Discovery Material as part of any non-legal, business decision divorced from this case. There is no merit to Defendant's suggestion that Plaintiffs' designated in-house counsel would simply disregard these obligations. Moreover, under Plaintiffs' proposal, the parties still would only be permitted to share Highly Confidential Information with attorneys "reasonably necessary" for the prosecution of this litigation.

The Court should thus accept Plaintiffs' proposal regarding in-house counsel's access to Highly Confidential Information.

2)  *Udio's Position*

Consistent with the position it articulated at the Parties' Initial Case Management Conference (8/21/24 Hr'g Tr. at 21:2-20), Udio's Protective Order proposes a two-tier confidentiality structure that, even under the highest confidentiality tier, allows two designated in-house attorneys for each party to view the most sensitive information in the case.[1] *See* Proposed Protective Order Ex. B ¶ 14(b). The only limitation Udio places on such disclosure is that

---

[1] The Parties agree, however, that such in-house attorneys may not view "Highly Confidential – Source Code." *See* Proposed Protective Order Exs. A ¶ 13(b) & B ¶ 14(b).

designated in-house attorneys not be involved in "Competitive Decision-Making"—*i.e.*, core business decisions in which the opposing party's confidential information could be leveraged, even inadvertently, to gain competitive or commercial advantage. *See id.* This safeguard is critical to maintaining the competitive integrity of the Parties. *See Anderson News*, 2014 WL 129046, at *1. The Protective Order's limitation on scope of use is not alone sufficient. Once someone with adverse business interests learns of another's highly confidential information, he or she cannot simply "forget" that information. The bell cannot be unrung—"the damage is already done." *Anderson*, 2014 WL 129046, at *1. In fact, courts have recognized that the risk of inadvertent disclosure is higher for in-house counsel than outside counsel because compartmentalization of protected information is "a feat beyond the compass of ordinary minds" and "an individual cannot rid himself of the knowledge he has gained; he cannot perform a prefrontal lobotomy on himself . . . ." *F.T.C. v. Advoc. Health Care Network*, 162 F. Supp. 3d 666, 670–71 (N.D. Ill. 2016).

This is not merely a theoretical risk given the sorts of discovery likely to be exchanged in this case. For instance, in the probable event that a party in this case discloses information about its licensing practices or confidential deal terms, under Plaintiffs' proposal, a designated in-house counsel that negotiates the other party's licenses could view that material. This would create unfair information asymmetries in potential future negotiations. Similarly, under Plaintiffs' proposal, a designated in-house attorney involved in product development could access Udio's most sensitive product design plans and technical specifications.

Courts in this district have recognized the harm that can result from disclosure of highly sensitive information to in-house attorneys with competitive decision-making power, and have resolved that risk of harm—as Udio's proposal does—by excluding such individuals from scope of access. *See Sullivan Mktg., Inc. v. Valassis Commc'ns, Inc.*, No. 93-cv-06350, 1994 WL 177795, at *2 (S.D.N.Y. May 5, 1994) (finding that the decision to exclude in-house counsel from highly sensitive information "turns largely on the specific role of in-house counsel within the business: whether he or she has a part in the type of competitive decision-making that would involve the potential use of the confidential information"). Plaintiffs' concern that Udio's proposal would "hinder[] Plaintiffs' ability to prosecute this litigation" is overblown. Plaintiffs notably do

not represent that there is **_no_** in-house attorney at each record label that would meet Udio's proposed criteria for access.  And, regardless, courts have recognized that in-house counsel can still effectively manage litigation without access to highly confidential information.  *See F.T.C. v. Sysco Corp.*, 83 F. Supp. 3d 1, 4 (D.D.C. 2015) (noting in-house counsel was "still able to assist outside counsel and advise [his employer] on litigation strategy" even though he was not permitted to access opposing party's highly confidential information).

**C.    Advance Disclosure of Experts Who Receive Highly Confidential Information**

1) *Plaintiffs' Position*

As an end-run around the Federal Rules' expert disclosure provisions, Defendant proposes that a party who seeks to disclose to a testifying or consulting expert any Highly Confidential Information must first disclose the identity of the expert who is to receive such information and provide an opportunity for the opposing party to object to such disclosure.  *See* Ex. B ¶¶ 16–17. The party disclosing the expert would also need to provide "a list of all other cases in which the witness testified as an expert at trial or by deposoition during the previous four (4) years."  *Id.* ¶ 16.  This procedure would operate as a one-way mechanism for Defendant to obtain early disclosure of and discovery regarding Plaintiffs' experts.  Though Defendant frames this as a "marginal litigation disadvantage," it hardly can be considered such given the importance of expert testimony in this case.

By way of example, Defendant is certain to produce source code (designated Highly Confidential under both parties' proposed protective orders) that will require of expert analysis. But, under Defendant's proposal, only Plaintiffs would have to disclose their source code expert, while Defendant would be free to withhold the identity of any such expert of their own to whom they could voluntarily disclose the same Highly Confidential Information.  Given the level of technical complexity inherent to this case, the same issue is likely to repeat itself with respect to experts the Plaintiffs may retain to analyze specific aspects of Defendant's AI model.  These experts would need to be disclosed to Defendant regardless of whether they have *any* business

interests, competing or not.[2]  Moreover, Plaintiffs would need to identify and disclose the experts even if they were only operating in a consulting role.  This directly impedes on well-enshrined work product protections.  *See Cerco Bridge Loans 6 LLC v. Schenker*, 2024 WL 4165137, at *1 (S.D.N.Y. Aug. 26, 2024) (noting that work by a consulting expert is ordinarily "not discoverable").  The Court should not sanction a procedure that, as a practical matter, stands to provide one party the advantage of one-way discovery, not otherwise available under the Federal Rules of Civil Procedure, at the other's expense.

To the extent that Defendant has any legitimate concern about competitive harm, that is adequately addressed by other provisions in the protective order.  Again, any such expert would first need to agree to use protected material "solely for the prosecution or defense of this action and not for any other purpose."  Ex. A ¶ 1.  They would also need to agree that they would not use protected material "for any business, commercial, or competitive purpose."  *Id.* ¶ 17.  Those protections, coupled with the potential sanction of being held in contempt of court, are significant and are routinely relied on by courts.[3]

2)  *Udio's Position*

Udio's Protective Order proposes a provision that requires a party to identify any expert that it wishes to show another party's "Highly Confidential – Attorneys' Eyes Only" or "Highly Confidential – Source Code," and provide the opposing party opportunity to object before such highly confidential material may be disclosed to the expert.  *See* Proposed Protective Order Ex. B ¶ 15.  Plaintiffs' proposal would instead allow for the disclosure of highly confidential information to an expert without the other party's knowledge—let alone ability to object prior to the disclosure. That will not work.  The Parties must be able to evaluate whether an expert might have an

---

[2] Defendant's citation to *Anderson News, L.L.C. v. Am. Media, Inc.*, No. 09 Civ. 2227, 2014 WL 129046, at *1 (S.D.N.Y. Jan. 14, 2014) is inapposite.  The cited opinion concerned the disclosure of highly confidential information to an executive of one of the parties.  It did not address expert discovery or a provision akin to what Defendant proposes here.

[3] Plaintiffs would also be amenable to the inclusion of language requiring any expert to attest that they are not presently employed by a direct competitor to the producing party.  Again, such a step would further any legitimate purpose underlying Defendant's proposal without disproportionately prejudicing Plaintiffs.

affiliation with a competitor prior to their business-sensitive information being disclosed. "Once privileged information is given to a competitor, [] the damage is already done." *Anderson News, L.L.C. v. Am. Media, Inc.*, No. 09 Civ. 2227, 2014 WL 129046, at *1 (S.D.N.Y. Jan. 14, 2014) (denying plaintiff's motion to amend a protective order and allow plaintiff's corporate representative to attend depositions because, in part, the corporate representative could be exposed to the opposing party's highly confidential information during the deposition).

Udio's proposal protects *both* Parties from the disclosure of highly confidential information to an expert who may have meaningful competitive or business interests adverse to the producing party. A potential artificial intelligence expert could be an employee or consultant or otherwise be involved with one of Udio's competitors. Udio anticipates that it may be required to produce some of its most closely guarded proprietary technical information during this litigation. The disclosure of such information to an expert with an interest in a competitor would expose Udio to significant harm. Likewise, a potential music-industry expert might be an employee or consultant of a record label or distributor that might compete with Plaintiffs. Surely Plaintiffs would be equally harmed were Udio to hand over their most highly confidential information to such a competitor. Any marginal litigation disadvantage flowing from the "early" disclosure of experts is substantially outweighed by the risk of competitive harm to *both* litigants should the Court adopt Plaintiffs' proposal.

## III.   ESI Protocol

The parties agree on substantially all of the ESI protocol, except for a single provision relating to the logging of attorney-client communications that post-date the filing of the complaint on a privilege log. Plaintiffs' version of the proposed ESI protocol order is attached as **Exhibit C**; Defendant's version of the proposed ESI protocol is attached as **Exhibit D**.

### *Disputed Provision*

### A.   Logging of Privileged Communications Postdating the Complaint

1)  *Plaintiffs' Position*

Plaintiffs propose that privileged communications involving a party's counsel that post-date the filing of the complaint need not be placed on a privilege log. Ex. C ¶ 17. This is a routine

provision that permits the parties to avoid the burden and expense of having to catalog privileged communications that that are temporally disconnected from the events that form the basis of the parties' claims and defenses.

Defendant's only objection to this provision is a non-specific concern regarding the possibility of unilateral privilege decisions that cannot be vetted via a privilege log. However, this articulated concern does not counsel in favor of imposing the substantial burden of logging ongoing privileged communications with counsel in complex litigation of this sort. The reason parties generally agree not to log such communications is because there is a reasonable presumption that the privilege applies and an understanding that any disclosure of such information, even though limited, may still intrude on work product protection. Defendant supplies no reason to believe that this case differs from those norms.

Because the burden of logging privileged communications post-dating the complaint is disproportionate to the needs of the case, the production of such information is exceedingly unlikely to yield discoverable information, and any such disclosure may impinge on protected work product, Plaintiffs respectfully ask that the Court adopt their proposed ESI protocol.

2) *Udio's Position*

Udio advocates for a provision in the ESI protocol that requires the Parties to list all documents that would have been produced but are being withheld on the basis of attorney-client privilege or work product protection on the privilege log. Under Plaintiffs' proposed approach, privileged communications "involving a party's counsel" that "post-date the filing of the complaint need not be placed on a privilege log." However, Plaintiffs do not appear to dispute that relevant and responsive documents may post-date the filing of the complaint, nor that they would be required to produce such documents. Plaintiffs' position would therefore allow a party to unilaterally decide that a responsive document that post-dates the filing of the complaint should be withheld on the basis of privilege, without having to log that document in its privilege log and, therefore, without giving the opposing party an opportunity to review and challenge its privilege

decisions.[4]  Privilege logs exist to allow such review.  *See, e.g.*, *In re Aenergy, S.A.*, 451 F. Supp. 3d 319, 326 (S.D.N.Y. 2020) (noting that "a privilege log is not a mere administrative exercise. Its purpose is to ensure that a withholding party can justify a privilege designation." (citation, quotation marks, and alterations omitted)).  Because the scope of discovery extends beyond the date of the filing of the complaint, the scope of the privilege logs must as well.

---

[4] Indeed, the breadth of the carve out Plaintiffs propose—communications "involving a party's counsel"—indicates that the Parties may have distinct views on the appropriate scope of the attorney-client privilege.

Respectfully submitted,


Dated: September 19, 2024


<table>
<tr>
<td>

*s/ Moez M. Kaba*

Moez M. Kaba

Mariah N. Rivera

Alexander R. Perry

**HUESTON HENNIGAN LLP**

1 Little West 12th Street

New York, New York 10014

Telephone: (646) 930-4046

Facsimile: (888) 775-0898

mkaba@hueston.com

mrivera@hueston.com

aperry@hueston.com


Robert N. Klieger

Rajan S. Trehan

**HUESTON HENNIGAN LLP**

523 West 6th Street, Suite 400

Los Angeles, California 90014

Telephone: (213) 788-4340

Facsimile: (888) 775-0898

rklieger@hueston.com

rtrehan@hueston.com


*Counsel for Plaintiffs*

</td>
<td>

*s/ Brittany N. Lovejoy*

Steven N. Feldman

Nathan Taylor

**LATHAM & WATKINS LLP**

1271 Avenue of the Americas

New York, NY 10020

Telephone: (212) 906-1200

Facsimile: (212) 751-4864

steve.feldman@lw.com

nathan.taylor@lw.com


Andrew M. Gass (*pro hac vice*)

Brittany N. Lovejoy (*pro hac vice*)

**LATHAM & WATKINS LLP**

505 Montgomery Street

Suite 2000

San Francisco, CA 94111-6538

Telephone: (415) 391-0600

Facsimile: (415) 395-8095

andrew.gass@lw.com

brittany.lovejoy@lw.com


Sarang V. Damle

**LATHAM & WATKINS LLP**

555 Eleventh Street, NW

Suite 1000

Washington, D.C. 20004-1304

Telephone: (202) 637-2200

Facsimile: (202) 637-2201

sy.damle@lw.com


Alex Spiro

Todd Steven Anten

Jessica Anne Rose

**QUINN EMANUEL URQUHART & SULLIVAN LLP**

51 Madison Avenue

New York, NY 10010

Telephone: (212) 849-7000

Facsimile: (212) 849-7100

alexspiro@quinnemanuel.com

toddanten@quinnemanuel.com

jessicarose@quinnemanuel.com

</td>
</tr>
</table>

Andrew H. Schapiro
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
191 N. Wacker Drive
Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401
andrewschapiro@quinnemanuel.com

*Counsel for Defendant Uncharted Labs, Inc., d/b/a Udio.com*