UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, SONY MUSIC ENTERTAINMENT, ARISTA MUSIC, ARISTA RECORDS LLC, ATLANTIC RECORDING CORPORATION, RHINO ENTERTAINMENT COMPANY, WARNER MUSIC INC., WARNER MUSIC INTERNATIONAL SERVICES LIMITED, WARNER RECORDS INC., WARNER RECORDS LLC, and WARNER RECORDS/SIRE VENTURES LLC,<br><br>Plaintiffs,<br><br>v.<br><br>UNCHARTED LABS, INC., d/b/a Udio.com, and JOHN DOES 1-10,<br><br>Defendant. | Case No. 1:24-cv-04777-AKH<br><br>**[PROPOSED] STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

Upon the stipulation of the parties, the Court ORDERS as follows:

**I.   PURPOSE**

This Order supplements the Federal Rules of Civil Procedure ("Federal Rules"), the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules"), and any other applicable orders and rules.

**II.   DEFINITIONS**

1.   "**Electronically stored information**" or "**ESI**," shall be defined as computer-generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, tape, or other real or virtualized devices or media.  Non-limiting examples of ESI shall include:

- Digital communications (*e.g.*, e-mail, instant messaging);

- Word-processed documents (*e.g.*, Word or WordPerfect files and drafts);

- Spreadsheets and tables (*e.g.*, Excel worksheets);

- Image and facsimile files (*e.g.*, .PDF, .TIFF, .JPG, .GIF images);

- Sound recordings (*e.g.*, .WAV, .MP3 files);

- Databases;

- Contact and Relationship Management Data (*e.g.*, Outlook);

- Calendar and Diary Application Data (*e.g.*, Outlook PST); *and*

- Presentations (*e.g.*, PowerPoint).

2. "**Native**" shall be defined as the format of ESI in which it was generated and/or as used by the producing party in the usual course of its business and in its regularly conducted activities.

3. "**Metadata**" shall be defined as information about information, or data about data, and includes without limitation: (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage, and/or validity of the electronic file and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

4. "**Document**" shall be defined synonymously in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

5. "**Media**" shall be defined as object or device, real or virtualized, including but not limited to a disc, tape, computer or other device, on which data is or was stored.

6. "**Responsive**" shall be defined as materials responsive to a party's discovery requests, as opposed to a search term.

### III. PRESERVATION

7. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties agree that:

   a. No later than seven (7) days after entry of this ESI Stipulation, the Parties will exchange a list of (i) the types of ESI they believe the other parties should preserve, and (ii) the general job titles or descriptions of the other parties' custodians for whom they believe ESI should be preserved. Neither list shall limit any Party's disclosure obligations pursuant to Section IV below or otherwise limit the scope of discoverable information or sources. The Parties shall consider the lists in good faith and will meet and confer as reasonably necessary.

   b. The Parties will meet and confer and use best efforts to agree on data sources that are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B), and ESI from these sources will either not be preserved or be preserved but not searched, reviewed, or produced.

## IV. DISCLOSURES

8. Pursuant to Federal Rules of Civil Procedure 26(a) and 26(g), and to the extent not already disclosed, the Parties[1] shall disclose the following information:

    a. ***Document Custodians.*** The parties will meet and confer to identify the custodians believed most likely to have non-duplicative discoverable ESI in their possession, custody, or control (**"Document Custodians"**). If a discrete dispute arises with respect to identification of the initial custodians, the parties may seek the Court's intervention in accordance with Section 2(E) of the Individual Rules of the Honorable Alvin K. Hellerstein. After good faith and genuine efforts to resolve the dispute.

    b. ***Additional Document Custodians.*** If, after the Parties identify Document Custodians, a requesting party identifies additional document custodians that possess non-cumulative, unique documents or information that would justify enlarging the list of custodians, the Parties shall meet and confer in good faith to determine whether such custodians should be added. If the Parties are unable to reach agreement within seven (7) days of the requesting party's request, then any remaining disagreement shall be addressed in accordance with Section 2(E) of the Individual Rules of the Honorable Alvin K. Hellerstein, or the then applicable orders of the Court. Nothing in this paragraph waives any objection by a Producing Party that further

---

[1] Each Plaintiff and any that may subsequently be named shall each be separately obligated to make the disclosures in this Section.

   investigation, discovery, or document production is needed before determining the necessity or lack thereof of additional custodians.

  c. ***Data Sources***: The producing party will inform the requesting party about which data sources within the producing party's possession, custody, or control have been searched and/or collected from to identify potentially responsive or relevant documents or ESI.

  d. The Parties agree to meet and confer regarding the identification of any additional data sources with potentially responsive information.

**V. SEARCH**

  9. The Parties agree to meet and confer and use their reasonable best efforts to reach agreement regarding the search methodology to be used.  Agreement on a search methodology does not relieve a Party of its obligation under the Federal Rules of Civil Procedure to produce all relevant and responsive documents that are both reasonably accessible and may be identified through a reasonably diligent search.  Discovery requests shall govern the scope of documents to be produced, subject to any agreements reached during the Parties' conferral.  To the extent a Party is specifically aware of non-duplicative documents that are relevant, responsive, non-privileged, and reasonably accessible, such documents will be produced regardless of whether they contain search terms or some other search methodology agreed to by the Parties or ordered by the Court.

  10. Where potentially responsive ESI shall be searched using search terms, the Parties agree to disclose a list of such terms.  The requesting party may propose additional search terms for the responding party's consideration.  To the extent the responding party disputes the additional search terms, the responding party shall provide a search term hit report for the

disputed term(s). The parties agree to continue discussing ESI in good faith as discovery progresses.

11. Nothing in this Order shall be construed as precluding a producing party from performing a privilege review to determine if certain documents should be withheld.

12. The Parties acknowledge that there may be subsequent instances where potential modification to a previously agreed-upon ESI Search Protocol may be warranted. Should such an instance arise, the Parties agree to meet and confer about modifications to a search methodology. If a party requests such a meet and confer, the Parties will meet and confer within ten days.

13. The Parties further agree that each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.

**VI.    PRODUCTION FORMAT FOR ESI**

14. With the exception of spreadsheets, presentation files, multi-media files, and other native files that cannot be converted to image files, the Parties shall produce all relevant, responsive, and non-privileged ESI as Bates-stamped single-page 1-bit TIFF images with a DAT load file that enables the document to be uploaded and viewed using standard litigation support software in accordance with the provisions below. Unless excepted below, single-page, 1-bit, black and white Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Where the TIFF image is unreadable or has materially degraded the

quality of the original, the producing party shall provide a higher quality TIFF image or the native or original file.

    a. ***Production Media.*** The Parties shall produce documents in an encrypted format through electronic means, such as external hard drives, secure file sharing methods (*e.g.*, FTP), or readily accessible computer or electronic media (*e.g.*, CDs, DVDs) (collectively, "Production Media"), with explicit decryption instructions. Productions shall have the following four directories: (1) IMAGES for the images; (2) DATA for the .dat and .opt files; (3) TEXT for the extracted text/OCR files; and (4) NATIVES for any native Excel, PowerPoint, multi-media, or other files that cannot be understood reasonably unless displayed in native format. The producing party shall identify: (a) the responding party's name; (b) the production date; and (c) the Bates Number range of the materials contained on the Production Media.

    b. ***Color.*** The Parties shall produce documents in color if the original of the produced document is in color. Color images should be produced as single-page JPG files at 300 dpi with JPG compression and a high-quality setting so as to not degrade the original image.

    c. ***Unique IDs.*** Images shall be produced using a unique file name that will be the Bates number of that page (*e.g.*, ABC000001.TIFF). The Bates number must appear on the face of the image and not obliterate, conceal, or interfere with any information from the source document.

    d. ***Parent-Child Relationships.*** Parent-child relationships (association between an attachment and its parent document) shall be preserved. The attachment(s) shall be produced adjacent to the parent document, in terms of Bates numbers, with the first

attachment being named with the next sequential number after the parent, and any additional attachment(s) sequentially numbered after that first attachment.

e. ***Redactions.*** If the Parties are redacting information from a page, they shall electronically stamp the word "Redacted" onto the page or otherwise clearly indicate a redaction at or reasonably near to the location of the redaction(s). If documents that the Parties have agreed to produce in native format need to be redacted, the Parties agree to meet and confer in good faith on how to best produce the documents so that proper formatting and usability are maintained.

f. ***Confidentiality Designation.*** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order entered in this matter.

g. ***Metadata Fields.*** The Parties shall provide the system-generated and metadata fields (the "Production Fields") substantially similar to those set forth in **Exhibit A**.

h. ***Native Format.*** The responding party shall produce spreadsheets (*e.g.*, Excel), presentation files (*e.g.*, PowerPoint), and any other materials not readily convertible to TIFF format (*e.g.*, three-dimensional design files) in native format. Audio, video, and multimedia files will be produced in native format. If a native file originally had track changes, comments, or other collaborative change features turned on, the .TIF file will display those changes in the converted image file. Native files shall be produced with a link in the NATIVEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in Exhibit A. For each native file produced, the production will include a *.tiff image slipsheet indicating the production number of the native file and stating, "Produced in Native Format" (or substantially

similar). Native files will be produced in a separate folder on the production media. TIFF images of e-mail messages should include the BCC line. Upon request from the receiving party that any files be produced in native format (identified by Bates number), the Parties agree to meet and confer in good faith concerning such requests. A request for such production shall not be unreasonably denied. The Parties agree to meet and confer regarding a protocol for use of native files at depositions, hearings, or trial.

i. ***Text Files.*** For each produced document, a document-level text file shall be provided in addition to the image files (TIFFs). The text of native files should be extracted directly from the native file and each text file will be named using its corresponding beginning bates number (*e.g.*, ABC000001.TXT). For ESI with redacted text, a commercially acceptable technology for Optical Character Recognition ("OCR") shall be used for all scanned, hard copy documents with redactions.

j. ***Physical/Hard Copy Documents.*** Nothing herein shall relieve the Parties of any obligations they may have to search for responsive Documents in hard copy form. The Parties shall produce documents that exist solely in physical hard-copy format following this ESI Stipulation. The metadata shall indicate document breaks and identify the custodian or non-person custodial source from whom/where the document was collected. The documents should be logically unitized using reasonable best efforts. The ".tiff" files shall be subject to an OCR process. The OCR software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process. The Parties will meet and confer to address instances of undue burden and will work to negotiate an appropriate solution.

k. ***Databases and Other Structured Data.*** The Parties shall meet and confer regarding the production format and scope of data contained in enterprise database or database management systems, including the types of information stored in the database(s), the types of reports that can be generated from or for the data, whether there are existing and reasonably available reports that include the information, and whether the receiving party will need any information in native form in order to ensure that any information produced is reasonably usable by the receiving party and that its production does not impose an undue burden. To avoid doubt, information will be considered reasonably usable when produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format.

l. ***Duplicates.*** The responding party may use software to identify duplicate documents that are in files of individual or multiple Production Custodians. To the extent there are duplicate documents, the responding party need only produce a single copy of a responsive document, unless the requesting party reasonably requests the duplicate document for a legitimate reason. Removal of duplicate documents should only be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level only). Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. De-duplication should be done across the entire collection (*i.e.*, global level) and the CUSTODIAN fields should list each custodian separated by a semicolon. To accommodate for rolling productions, for ESI that is removed as a duplicate from earlier productions, the producing party should provide an overlay file along with or within a reasonable time after each production.

m. ***Email Threading.***  Where multiple email messages are part of a single chain or "thread," a party is only required to produce the most inclusive message ("Last-In-Time Email") and need not produce earlier, less inclusive email messages or "thread members" that are fully contained, including attachments and including identical senders and recipients, within the Last-In-Time-Email.  Only email messages for which the parent document and all attachments are contained in the Last-In-Time Email will be considered less inclusive email messages that need not be produced.

n. ***Hyperlinked Documents and Communications.***  The receiving party may request the production of up to seventy-five (75) non-public, responsive, and non-privileged documents and communications that are within the producing party's possession, custody, or control and are hyperlinked within the producing party's production by providing to the producing party a list of hyperlinks, corresponding Bates numbers, and the basis for its claim that each hyperlinked document is potentially relevant and needs to be produced independently of the search and review procedures set forth elsewhere in this protocol.  No later than thirty (30) days following receipt of the receiving party's request, the producing party shall identify and produce the hyperlinked document referenced in the previously produced document or state its basis for not doing so.  The producing party shall utilize good faith efforts to produce the version of the hyperlinked document in existence at the time of the underlying communication.  In the event it is not feasible to produce the version of the hyperlinked document that existed at the time of the underlying communication, either by reason of technical impossibility or undue burden, the producing party may produce the current version of the hyperlinked document.  As part of its production, the producing party shall include information

identifying the date on which the produced hyperlinked document was last modified, to the extent that information is available, and the corresponding Bates number of the previously produced document containing the hyperlink. The parties agree to meet and confer in good faith to resolve any disputes concerning the appropriateness of production of the requested documents and communications and any reasonable request to increase the cap on the total number of hyperlinked documents and communications to be produced.

### VII. DOCUMENTS PROTECTED FROM DISCOVERY AND PRIVILEGE LOGS

15. Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

16. If the producing party withholds information that is responsive to a discovery request by claiming that it is privileged or otherwise protected from discovery, that party shall prepare and provide a privilege log. The parties shall meet and confer regarding the timing for production of privilege logs. The privilege log should contain the categories or fields of information identified in **Exhibit B** hereto, to the extent available, unless otherwise agreed in writing or pursuant to a court order.

17. Privileged communications involving a party's outside counsel of record in this action (including all attorneys, staff, or other personnel) and privileged communications involving a single party's in-house counsel[2] concerning the litigation of this action (and that

---

[2] For the purposes of this provision, "a single party" shall include each party's subsidiaries, divisions, predecessor and successor companies, affiliates, parent, partnerships and joint ventures.

12

contain no other responsive information) that post-date the filing of the complaint need not be included on a privilege log.

## VIII.    MODIFICATION

18.    This Stipulated Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

**IT IS SO STIPULATED**:[3]


Dated: January 7, 2025


<div style="display: flex;">
<div>

*s/* Rajan S. Trehan
Moez M. Kaba
Mariah N. Rivera
Alexander R. Perry
**HUESTON HENNIGAN LLP**
1 Little West 12th Street
New York, New York 10014
Telephone: (646) 930-4046
Facsimile: (888) 775-0898
mkaba@hueston.com
mrivera@hueston.com
aperry@hueston.com

Robert N. Klieger
Rajan S. Trehan
**HUESTON HENNIGAN LLP**
523 West 6th Street, Suite 400
Los Angeles, California 90014
Telephone: (213) 788-4340
Facsimile: (888) 775-0898
rklieger@hueston.com
rtrehan@hueston.com

*Counsel for Plaintiffs*

</div>
<div>

*s/* Brittany N. Lovejoy
Steven N. Feldman
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
steve.feldman@lw.com
nathan.taylor@lw.com

Andrew M. Gass (*pro hac vice*)
Brittany N. Lovejoy (*pro hac vice*)
**LATHAM & WATKINS LLP**
505 Montgomery Street
Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
andrew.gass@lw.com
brittany.lovejoy@lw.com

Sarang V. Damle
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
sy.damle@lw.com

</div>
</div>

---

[3] The Parties use electronic signatures with consent in accordance with Rule 8.5(b) of the Court's ECF Rules and Instructions.

Alex Spiro
Todd Steven Anten
Jessica Anne Rose
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
51 Madison Avenue
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
alexspiro@quinnemanuel.com
toddanten@quinnemanuel.com
jessicarose@quinnemanuel.com

Andrew H. Schapiro
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
191 N. Wacker Drive
Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401
andrewschapiro@quinnemanuel.com

*Counsel for Defendant Uncharted Labs, Inc., d/b/a Udio.com*

**SO ORDERED this __ day of January, 2025**

_____

The HONORABLE ALVIN K. HELLERSTEIN
United States District Judge

**EXHIBIT A**

Production Fields

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| DOCID | Unique document reference (can be used for de-duplication). |
| BEGDOC | Bates number assigned to the first page of the document. |
| ENDDOC | Bates number assigned to the last page of the document. |
| BEGATTACH | Bates number assigned to the first page of the parent document in a document family (i.e., should be the same as BEGDOC of the parent document, or PARENTDOC). |
| ENDATTACH | Bates number assigned to the last page of the last child document in a document family (i.e., should be the same as ENDDOC of the last child document). |
| PARENTDOC | BEGDOC of parent document. |
| CHILDDOCS | List of BEGDOCs of all child documents, delimited by ";" when field has multiple values. |
| NATIVEFILE | Relative file path of the native file on the production media. |
| TEXTFILE | Relative file path of the document-level file on the production media. |
| CUSTODIAN | Owner of the document or file. |
| FROM | Sender of the email. |
| TO | All to: members or recipients, delimited by ";" when field has multiple values. |
| CC | All cc: members or recipients, delimited by ";" when field has multiple values. |
| BCC | All bcc: members or recipients, delimited by ";" when field has multiple values. |
| SUBJECT | Subject line of the email. |
| DATERCVD | Date that an email was received. |
| TIMERCVD | Time that an email was received. |
| DATESENT | Date that an email was sent. |
| TIMESENT | Time that an email was sent. |
| ATTACHMENTS | List of filenames of all attachments, delimited by";" when field has multiple values. |
| FOLDERLOC | Original folder path of the produced document. |
| FILENAME | Original filename of the produced document. |
| DOCEXT | Original file extension. |
| DOCTYPE | Name of the program that created the produced document. |
| TITLE | Document title (if entered). |
| AUTHOR | Name of the document author. |
| DATECREATED | Date that a document was created. |
| TIMECREATED | Time that a document was created. |
| DATEMOD | Date that a document was last modified. |
| TIMEMOD | Time that a document was last modified. |
| FILESIZE | Original file size in bytes. |
| PGCOUNT | Number of pages per document. |

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| MDHASH | MD5 hash value computed from native file (a/k/a file fingerprint). |
| CONFIDENTIALITY | Description of confidentiality designation such as "Confidential Material" or "Highly Confidential - Attorneys' Eyes Only." Blank when there is no confidentiality designation. |
| REDACTED | "Yes" when the document contains redactions. Blank or "No" when there are no redactions. |

# EXHIBIT B

Privilege Log Fields

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| PrivLog # (generic number) | Generic field for tracking purposes (i.e. 1, 2, 3). |
| Begin Bates | Beginning Bates number of document. |
| End Bates | Ending Bates number of document. |
| Document Type | General type of record (i.e., Outlook, PDF, PowerPoint Presentation). |
| Family Relationship | Parent, Child, or Standalone. |
| Date | The date of the parent document (for emails, this is date sent; for non-emails, this is date last modified). If the date the document was prepared and the date on which it was sent or shared with persons other than its author(s) are different, all dates shall be noted. |
| Author | Author or sender of document (for emails, this is the From field; for non-emails, this is the person who created the file), including the author's position. |
| Recipients | Derived from the To field. The description of the recipients shall also include the positions of the recipients. |
| Other Recipients | Derived from the CC and BCC fields. The description of the recipients shall also include the positions of the recipients. |
| Privilege Claimed | Type of privilege claimed (i.e., Attorney-Client or Attorney Client - Work Product, etc.). |
| Description | Description of Privilege Claim, including the subject matter addressed in the document and any steps taken to ensure the confidentiality of the communication. |
| Treatment | How the document was treated with regards to production (e.g., Withheld, Redacted). |