# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, SONY MUSIC ENTERTAINMENT, ARISTA MUSIC, ARISTA RECORDS LLC, ATLANTIC RECORDING CORPORATION, RHINO ENTERTAINMENT COMPANY, WARNER MUSIC INC., WARNER MUSIC INTERNATIONAL SERVICES LIMITED, WARNER RECORDS LLC, and WARNER RECORDS/SIRE VENTURES LLC,<br><br>       Plaintiffs,<br>vs.<br><br>UNCHARTED LABS, INC., d/b/a Udio.com, and JOHN DOES 1-10,<br><br>       Defendant. | Case No. 1:24-cv-04777 (AKH) |

**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO**
**DEFENDANT UNCHARTED LABS, INC., d/b/a UDIO.COM**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs UMG Recordings, Inc. ("UMG") and Capitol Records, LLC ("Capitol," and collectively with UMG, "Universal"); Sony Music Entertainment ("SME"), Arista Music, and Arista Records LLC ("Arista Records," and collectively with Arista Music and SME, "Sony"); Atlantic Recording Corporation ("Atlantic"), Rhino Entertainment Company ("Rhino"), Warner Music Inc. ("WMI"), Warner Music International Services Limited ("WMISL"), Warner Records Inc., Warner Records LLC, and Warner Records/SIRE Ventures LLC ("WR/SIRE," and collectively with Atlantic, Rhino, WMI, WMISL, Warner Records Inc., and Warners Records LLC, "Warner," and together with Universal and Sony, "Plaintiffs"), hereby request that Defendant Uncharted Labs, Inc. d/b/a Udio.com ("Udio") produce for inspection and copying the documents and things described in this First Set of Request for Production of Documents ("Requests," and each a "Request") to the offices of Hueston Hennigan, 1 Little West 12th Street, New York, NY 10014, or in such other way as the parties may agree, within thirty (30) days from the service of these Requests.

## **<u>DEFINITIONS</u>**

The definitions and rules of construction set forth in the Federal Rules of Civil Procedure, Federal Rules of Evidence, and the Local Rules are incorporated herein by reference. Whenever the singular is used herein it also includes the plural, and vice versa. Notwithstanding any definition below, each word, term, or phrase used in these Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure and any other applicable rules.

The following definitions apply to the following Requests.

1.      "ACTION" or "LITIGATION" shall refer to the above-captioned action, filed in the U.S. District Court for the Southern District of New York, entitled *UMG Recordings, Inc. et al. v. Uncharted Labs, Inc., d/b/a Udio.com et al.*, No. 1:24-cv-04777, unless otherwise specified.

2.      The words "AND" and "OR" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

3.      The term "ANY" shall include "ALL" and "ALL" shall include "ANY."

4.      "AI MODEL" means any and all computer programs or "neural networks," inclusive of software source code, parameters, and other settings, that YOU constructed using "tens of millions of instances of different kinds of recordings" in order to derive a "collection of statistical insights about the auditory characteristics of those recordings" for the purpose of allowing YOUR SERVICE to generate OUTPUTS. (ANSWER at 3; *see also id.* ¶ 41.)

5.      "AI SERVICE" or "SERVICE" shall refer to any and all of YOUR "artificial intelligence-powered service[s]" that allow USERS to "use plain English descriptions of genres, styles, and other musical elements" to generate OUTPUTS. (ANSWER at 1, 2.)

6.      "ANSWER" shall mean the Answer, dated August 1, 2024, YOU filed in response to the COMPLAINT in this ACTION.

7.      "COMMUNICATION" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

8.      "COMPLAINT" refers to the operative Complaint in the ACTION as of the date these Requests are served.

9.      "CONCERNING" means relating to, referring to, describing, evidencing, or constituting.

10.     "COPYRIGHTED SOUND RECORDINGS" refers to the non-exhaustive, representative list of sound recordings whose copyrights are owned or exclusively controlled by Plaintiffs listed in Exhibit A attached to the COMPLAINT.

11.     "DOCUMENT" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

12.     "OUTPUT" and "OUTPUTS" shall refer to the digital music files that YOUR SERVICE generates as a result of YOUR AI MODEL.

13.     "PERSON" is defined as any natural person or any legal entity, including, without limit, any business or governmental entity or association.

14.    "RELATED TO" and "RELATING TO," shall be interpreted in their customary broad sense and shall include, without limitation, having any connection, relation, or reference to, as well as identifying, concerning, containing, pertaining to, referring to, reflecting, mentioning, discussing, representing, embodying, illustrating, substantiating, evidencing, describing, constituting, or otherwise being logically or factually connected with the matter discussed.

15.    "SOUND RECORDINGS" shall have the same meaning as that term is defined in the Copyright Act, *see* 17 U.S. § 101.

16.    "TERMS OF SERVICE" shall refer to the Terms of Service presently available on YOUR website at https://www.udio.com/terms-of-service and ANY prior versions thereof.

17.    "TRAINING DATA" means any information, data, or datasets used to train or establish the parameters of YOUR AI MODEL at any point in time, including but not limited to pre-training and fine-tuning processes.

18.    "UDIO," YOU," and "YOUR" shall refer to Defendant Uncharted Labs, Inc., its subsidiaries, divisions, predecessor and successor companies, affiliates, any partnership or joint venture to which it may be a party, and its employees, agents, officers, directors, representatives, consultants, accountants, and attorneys, including any person who served in any such capacity at any time during the relevant time period specified herein.

19.    "USERS" means PERSONS who use YOUR AI SERVICE to create OUTPUTS.

## **INSTRUCTIONS**

The following instructions shall apply to each of the Requests herein:

1.    Unless otherwise specified, the time period encompassed by these Requests shall be June 24, 2021, to the present.

2.    Each paragraph below shall operate and be responded to independently, and unless otherwise indicated, no paragraph limits the scope of any other paragraph.

3.    In answering the following Requests, furnish all available information, including information in the possession, custody or control of YOUR attorneys, agents, representatives, and

any additional PERSONS under YOUR control, not merely information known to YOU based on YOUR own personal knowledge.

4.      If YOU cannot fully respond to the following Requests after exercising due diligence to secure the information requested thereby, so state, and specify the portion of each Request that cannot be responded to fully and completely. In the latter event, state what efforts were made to obtain the requested information and the facts relied upon that support the contention that the Request cannot be answered fully and completely; and state what knowledge, information or belief YOU have concerning the unanswered portion of any such Request.

5.      All documents must be produced in accordance with the requirements of Federal Rule of Civil Procedure 34(b).

6.      All DOCUMENTS existing in electronic format should be produced in single page tag image file format ("TIFF") imaged at a resolution of at least 300 dpi with an image load/cross reference file, a data load file with field metadata, and document-level extracted text for electronically stored information or optical character recognition ("OCR") text for scanned hard copy documents. Each TIFF image shall be named according to a unique corresponding bates number associated with the document. Each image shall be branded according to the Bates number and the confidentiality designations defined in any protective order that may issue. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Email attachments shall be produced sequentially after the parent email. Each document production will be accompanied by two load files: (1) an image load file, and (2) a metadata load file.

(a)      When it is impracticable for an electronic document to be produced as a TIFF file, including because any information contained in the document would be omitted,

distorted, reorganized, or otherwise made more difficult to read or understand than the document's native format, a party may produce the document in its native format. When the production of an electronic document, such as an excel document, would lead to an excessive number of pages when converted to a TIFF file, such document should be produced in its native format.

(b)     Load files should include, where applicable, the following metadata:

(i)      Identifier: A unique production identifier of the item.

(ii)     File Name: The original name of the item or file when collected from the source custodian or system.

(iii)    Custodian: The name of the custodian or source system from which the item was collected.

(iv)     Source Device: The device from which the item was collected.

(v)      Source Path: The file path from the location from which the item was collected.

(vi)     Production Path: The file path to the item produced from the production media.

(vii)    Modified Date: The last modified date of the item when collected from the source custodian or system.

(viii)   Modified Time: The last modified time of the item when collected from the source custodian or system.

(ix)     Time Offset Value: The universal time offset of the item's modified date and time based on the source system's time zone and daylight savings time settings.

(c)    Additional metadata Fields for e-mail messages:

(i)    To: Addressee(s) of the message.

(ii)    From: The e-mail address of the person sending the message.

(iii)    CC: Person(s) copied on the message.

(iv)    BCC: Person(s) blind copied on the message.

(v)    Date Sent: Date the message was sent.

(vi)    Time Sent: Time the message was sent.

(vii)    Subject: Subject line of the message.

(viii)    Date Received: Date the message was received.

(ix)    Time Received: Time the message was received.

(x)    Attachments: The Bates number ranges of e-mail attachments.

7.    Documents attached to each other shall not be separated. All documents that respond, in whole or in part, to any portion of any request shall be produced in their entirety, including all addenda, appendices, attachments and enclosures.

8.    If YOU respond to a particular Request by stating that YOU lack the ability to comply with that Request, YOU must specify whether the inability to comply is because the particular item or category of information never existed, has been destroyed, has been lost, misplaced or stolen, or has never been, or is no longer in YOUR possession, custody or control, in which case YOU must identify the name and address of any person or entity known or believed by YOU to have possession, custody or control of that information or category of information.

9.    If any information requested is claimed to be privileged or otherwise protected from discovery, provide all information falling within the scope of the Request which is not privileged, and for each item of information contained in a document to which a claim of privilege is made,

identify such document with sufficient particularity for purposes of a motion to compel, such identification to include at least the following:

(a)    the basis on which the privilege or protection is claimed;

(b)    the names and positions of the author of the document and all other persons participating in the preparation of the document;

(c)    the name and position of each individual or other person who sent or disclosed the document, as well as of each individual or other person to whom the document, or a copy thereof, was sent or otherwise disclosed;

(d)    the date of the document, as well as the dates of any sending or disclosure of the document;

(e)    a description of any accompanying material transmitted with or attached to such document;

(f)    the number of pages in such document;

(g)    the particular Request to which such document is responsive; and

(h)    whether any business or non-legal matter is contained or discussed in such document.

10.    YOUR obligation to respond to these Requests is continuing, and YOUR responses are to be supplemented to include subsequently acquired information in accordance with the requirements of Rule 26(e) of the Federal Rules of Civil Procedure.

## **REQUESTS FOR PRODUCTION OF DOCUMENTS**

**DOCUMENT REQUEST NO. 1**:

ALL DOCUMENTS and COMMUNICATIONS CONCERNING or RELATED TO PLAINTIFFS.

**DOCUMENT REQUEST NO. 2**:

ALL DOCUMENTS and COMMUNICATIONS CONCERNING YOUR TRAINING DATA, including without limitation ALL DOCUMENTS and COMMUNICATIONS RELATING TO the collection, copying, reproduction, development, compilation, maintenance, alteration, and revision of YOUR TRAINING DATA.

**DOCUMENT REQUEST NO. 3**:

ALL DOCUMENTS and COMMUNICATIONS CONCERNING YOUR AI MODEL, including without limitation ALL DOCUMENTS and COMMUNICATIONS reflecting the contents of YOUR AI MODEL or RELATING TO the manner in which YOU developed, trained, fine-tuned, and refined YOUR AI MODEL.

**DOCUMENT REQUEST NO. 4**:

ALL DOCUMENTS and COMMUNICATIONS RELATING TO the OUTPUTS cited in the COMPLAINT, including without limitation those CONCERNING YOUR decision to remove or delete such OUTPUTS.

**DOCUMENT REQUEST NO. 5**:

ALL DOCUMENTS AND COMMUNICATIONS RELATING TO OUTPUTS that YOU have removed from YOUR AI SERVICE, including but not limited to DOCUMENTS RELATING TO the reasons for ANY such removal and any policies, protocols, or procedures concerning the removal of OUTPUTS.

**DOCUMENT REQUEST NO. 6**:

ALL DOCUMENTS and COMMUNICATIONS RELATED TO YOUR use of "existing sound recordings as data to mine and analyze," as referenced on page 1 of the ANSWER.

**DOCUMENT REQUEST NO. 7**:

DOCUMENTS sufficient to identify how YOU use SOUND RECORDINGS to develop YOUR AI MODEL, including but not limited to use as TRAINING DATA.

**DOCUMENT REQUEST NO. 8**:

ALL DOCUMENTS and COMMUNICATIONS RELATED TO YOUR downloading, copying, and/or reproduction of SOUND RECORDINGS, including but not limited to how, and what portions of, the SOUND RECORDINGS are downloaded, copied, and/or reproduced.

**DOCUMENT REQUEST NO. 9**:

ALL DOCUMENTS comprising YOUR TRAINING DATA, including, without limitation, DOCUMENTS sufficient to identify ANY and ALL "sound recordings" used "as data to mine and analyze," as referred to on page 1 of the ANSWER.

**DOCUMENT REQUEST NO. 10**:

DOCUMENTS sufficient to identify the "many . . . UMG recordings" that "probably were" "in Udio's training data," as alleged on pages 9-10 of the ANSWER.

**DOCUMENT REQUEST NO. 11**:

ALL DOCUMENTS and COMMUNICATIONS RELATED TO YOUR belief that "many . . . UMG recordings" "probably were" "in Udio's training data," as alleged on pages 9-10 of the ANSWER.

**DOCUMENT REQUEST NO. 12**:

ALL DOCUMENTS and COMMUNICATIONS RELATED TO YOUR efforts to obtain YOUR TRAINING DATA.

**DOCUMENT REQUEST NO. 13**:

ALL DOCUMENTS and COMMUNICATIONS RELATED TO the "additional further technical refinements" included in YOUR training process as referenced on pages 20 and 21 of the ANSWER.

**DOCUMENT REQUEST NO. 14**:

ALL DOCUMENTS and COMMUNICATIONS RELATED TO payment, including but not limited to contemplation of potential payment, for any SOUND RECORDINGS included in YOUR TRAINING DATA.

**DOCUMENT REQUEST NO. 15**:

ALL DOCUMENTS and COMMUNICATIONS RELATED TO licensing or contemplation of potential licensing of ANY TRAINING DATA, including but not limited to licensing of any SOUND RECORDINGS included in YOUR TRAINING DATA.

**DOCUMENT REQUEST NO. 16**:

DOCUMENTS sufficient to identify the formats of media, including but not limited to file types, included in YOUR TRAINING DATA and any format conversions YOU carried out with respect to YOUR TRAINING DATA.

**DOCUMENT REQUEST NO. 17**:

ALL DOCUMENTS and COMMUNICATIONS RELATED TO how YOU identified and accessed ANY COPYRIGHTED SOUND RECORDINGS included in YOUR TRAINING DATA.

**DOCUMENT REQUEST NO. 18**:

DOCUMENTS sufficient to show whether and to what extent or in what form SOUND RECORDINGS, in whole or in part, in any form or format, reside in, are stored in, or otherwise exist within YOUR AI MODEL.

**DOCUMENT REQUEST NO. 19**:

ALL DOCUMENTS and COMMUNICATIONS RELATING TO YOUR AI MODEL's creation, whether intentional or not, of OUTPUTS that copy, mimic, imitate, simulate, contain, replicate, or resemble any aspects or elements of SOUND RECORDINGS included in YOUR TRAINING DATA.

**DOCUMENT REQUEST NO. 20**:

ALL DOCUMENTS and COMMUNICATIONS RELATING TO YOUR efforts to enable YOUR AI SERVICE to create OUTPUTS that copy, imitate, simulate, or resemble music created by humans.

**DOCUMENT REQUEST NO. 21**:

ALL DOCUMENTS AND COMMUNICATIONS RELATING TO United States intellectual property laws or regulations, including but not limited to the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, the Music Modernization Act, 17 U.S.C. §§ 1401, *et seq.*, and the United States Copyright Office.

**DOCUMENT REQUEST NO. 22**:

ALL DOCUMENTS and COMMUNICATIONS RELATING TO whether OUTPUTS are subject to copyright or other intellectual property protection.

**DOCUMENT REQUEST NO. 23**:

ALL DOCUMENTS and COMMUNICATIONS RELATED TO YOUR policies,

procedures, or practices RELATED TO intellectual property rights, including but not limited to YOUR compliance with copyright law.

**DOCUMENT REQUEST NO. 24**:

ALL DOCUMENTS and COMMUNICATIONS RELATING TO YOUR policies, procedures, or practices CONCERNING complaints regarding purported copyright violations.

**DOCUMENT REQUEST NO. 25**:

ALL DOCUMENTS and COMMUNICATIONS CONCERNING ANY complaints YOU have received RELATED TO purported copyright violations.

**DOCUMENT REQUEST NO. 26**:

ALL DOCUMENTS and COMMUNICATIONS RELATED TO YOUR TERMS OF SERVICE, including ALL drafts and versions thereof.

**DOCUMENT REQUEST NO. 27**:

ALL DOCUMENTS and COMMUNICATIONS RELATING TO YOUR policy authorizing USERS to "use outputs for both personal and commercial purposes," as provided in § 6.3 of YOUR TERMS OF SERVICE.

**DOCUMENT REQUEST NO. 28**:

All DOCUMENTS AND COMMUNICATIONS RELATING TO measures that YOU have considered, developed, or implemented to limit YOUR AI SERVICE's creation of OUTPUTS, including but not limited to the "filters" referenced on page 3 of the ANSWER.

**DOCUMENT REQUEST NO. 29**:

ALL DOCUMENTS and COMMUNICATIONS RELATING TO YOUR efforts to market, promote, or otherwise publicize YOUR AI SERVICE or OUTPUTS.

**DOCUMENT REQUEST NO. 30**:

ALL DOCUMENTS and COMMUNICATIONS RELATING TO articles, news reports, blog posts, social media posts, or other publicly available communications CONCERNING YOUR TRAINING DATA or the inclusion of SOUND RECORDINGS in YOUR TRAINING DATA, including but not limited to the publications referenced in paragraph 49 of the COMPLAINT.

**DOCUMENT REQUEST NO. 31**:

ALL DOCUMENTS and COMMUNICATIONS RELATING TO how YOU intended, expected, or predicted that USERS would use YOUR AI SERVICE, including but not limited to ALL DOCUMENTS AND COMMUNICATIONS RELATING TO ANY perceived or observed deviation from YOUR intentions, expectations, or predictions.

**DOCUMENT REQUEST NO. 32**:

DOCUMENTS sufficient to identify the number of OUTPUTS that have been generated by YOUR AI MODEL on a monthly basis.

**DOCUMENT REQUEST NO. 33**:

DOCUMENTS sufficient to identify the number of USERS that have used YOUR AI SERVICE on a monthly basis.

**DOCUMENT REQUEST NO. 34**:

DOCUMENTS sufficient to identify the number of downloads or plays of OUTPUTS on a monthly basis.

**DOCUMENT REQUEST NO. 35**:

ALL DOCUMENTS and COMMUNICATIONS RELATING TO USERS' ability to upload OUTPUTS to streaming music services (*e.g.*, Spotify, Apple Music, and Soundcloud),

including but not limited to the names and number of OUTPUTS uploaded to streaming services.

**DOCUMENT REQUEST NO. 36**:

ALL DOCUMENTS AND COMMUNICATIONS RELATING TO ANY decision to temporarily deactivate "Manual Mode" on YOUR AI SERVICE, including but not limited to the instance identified in paragraph 73 of the ANSWER.

**DOCUMENT REQUEST NO. 37**:

ALL DOCUMENTS and COMMUNICATIONS RELATING TO the monetization or commercialization of OUTPUTS, including but not limited to the licensing or sampling thereof.

**DOCUMENT REQUEST NO. 38**:

ALL DOCUMENTS and COMMUNICATIONS RELATING TO the market for OUTPUTS, including but not limited to ANY DOCUMENTS CONCERNING their potential competition with other SOUND RECORDINGS.

**DOCUMENT REQUEST NO. 39**:

ALL DOCUMENTS and COMMUNICATIONS RELATING TO YOUR AI SERVICE's subscription tiers, including but not limited to how many USERS are included in each subscription tier.

**DOCUMENT REQUEST NO. 40**:

ALL DOCUMENTS and COMMUNICATIONS RELATING TO the market for YOUR AI SERVICE, including but not limited to ANY projections or forecasts.

**DOCUMENT REQUEST NO. 41**:

ALL DOCUMENTS and COMMUNICATIONS RELATING TO YOUR AI SERVICE's impact or effect on the music industry.

**DOCUMENT REQUEST NO. 42**:

ALL DOCUMENTS and COMMUNICATIONS RELATING TO YOUR consideration of actual or potential legal, financial, or reputational risks RELATING TO YOUR AI SERVICE.

**DOCUMENT REQUEST NO. 43**:

DOCUMENTS sufficient to identify and describe UDIO's corporate organizational structure, including DOCUMENTS sufficient to show UDIO's board of directors, parent companies, subsidiaries, affiliates, departments, and divisions.

**DOCUMENT REQUEST NO. 44**:

ALL DOCUMENTS and COMMUNICATIONS RELATING TO the minutes from YOUR board meetings, including those concerning issues RELATED TO compliance with intellectual property laws, YOUR TRAINING DATA, and YOUR business strategy related to YOUR OUTPUTS.

**DOCUMENT REQUEST NO. 45**:

DOCUMENTS sufficient to identify all PERSONS who invested in or financially backed UDIO.

**DOCUMENT REQUEST NO. 46**:

ALL DOCUMENTS and COMMUNICATIONS between YOU and ANY investors, venture capital backers, seed funders, or any other potential investors in UDIO, including but not limited to Andreessen Horowitz (a16z), Steve Stoute's UnitedMasters, will.I.am, Common, Tay Keith, Kevin Wall, Mike Krieger, and Oriol Vinyals.

**DOCUMENT REQUEST NO. 47**:

ALL DOCUMENTS and COMMUNICATIONS RELATING TO investor presentations and meetings, including but not limited to pitch decks to investors and potential investors.

**DOCUMENT REQUEST NO. 48**:

DOCUMENTS sufficient to show YOUR funding and financing.

**DOCUMENT REQUEST NO. 49**:

ALL DOCUMENTS and COMMUNICATIONS RELATING TO YOUR demonstration of "the product to musicians and producers across the music industry," as referenced on page 3 of the ANSWER.

**DOCUMENT REQUEST NO. 50**:

ALL DOCUMENTS and COMMUNICATIONS RELATING TO YOUR "advisory partnerships with leading artists and producers," as reference on pages 3 and 4 of the ANSWER.

**DOCUMENT REQUEST NO. 51**:

ALL DOCUMENTS and COMMUNICATIONS RELATING TO YOUR actual or potential "symbiotic relationships with key stakeholders in the industry," as referenced on page 4 of the ANSWER.

**DOCUMENT REQUEST NO. 52**:

ALL DOCUMENTS and COMMUNICATIONS RELATING TO YOUR allegation on page 11 of the ANSWER that music labels "have sought to impose deal terms on a broad array of licensees."

**DOCUMENT REQUEST NO. 53**:

ALL DOCUMENTS and COMMUNICATIONS RELATING TO YOUR allegation on pages 11 and 12 of the ANSWER that music labels "have responded to outreach from potential commercial counterparties by engaging in one or more concerted refusals to deal."

**<u>DOCUMENT REQUEST NO. 54</u>**:

ALL DOCUMENTS and COMMUNICATIONS referenced directly or indirectly in the

ANSWER.

**<u>DOCUMENT REQUEST NO. 55</u>**:

ALL DOCUMENTS and COMMUNICATIONS that support ANY of YOUR defenses to

the allegations in the COMPLAINT.

Dated:   August 16, 2024
        New York, New York

By:_____
Moez M. Kaba
HUESTON HENNIGAN LLP
1 Little West 12th Street
New York, New York 10014
Telephone: (646) 930-4046
Facsimile: (888) 775-0898
mkaba@hueston.com

*Attorney for Plaintiffs*
*UMG Recordings, Inc., Capitol*
*Records, LLC, Sony Music*
*Entertainment, Arista Music, Arista*
*Records LLC, Atlantic Recording*
*Corporation, Rhino Entertainment*
*Company, Warner Music Inc., Warner*
*Music International Services Limited,*
*Warner Records Inc., Warner Records*
*LLC, and Warner Records/SIRE*
*Ventures LLC*

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 523 West 6th Street, Suite 400, Los Angeles, CA 90014.

On August 16, 2024, I caused the foregoing document(s) described as:

**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT UNCHARTED LABS, INC., d/b/a UDIO.COM**

to be served on the interested parties in this action as stated below:

| | |
|---|---|
| Alex Spiro<br>Jessica Anne Rose<br>Quinn Emanuel Urquhart & Sullivan<br>51 Madison Avenue<br>New York, NY 10010<br>alexspiro@quinnemanuel.com | Andrew H. Schapiro<br>Quinn Emanuel Urquhart & Sullivan, LLP<br>191 N. Wacker Drive<br>Suite 2700<br>Chicago, IL 60606<br>andrewschapiro@quinnemanuel.com |
| Andrew Gass<br>Brittany N. Lovejoy<br>Latham & Watkins, LLP<br>505 Montgomery Street, Ste. 2000<br>San Francisco, CA 94111<br>andrew.gass@lw.com | Sarang Damle<br>Latham & Watkins LLP<br>555 Eleventh Street NW<br>Suite 1000<br>Washington, DC 20004<br>sy.damle@lw.com |
| Steven Nathaniel Feldman<br>Nathan Edmund Taylor<br>Latham & Watkins<br>1271 Avenue of the Americas<br>New York, NY 10020<br>steve.feldman@lw.com | |

☐ (BY E-MAIL) By transmitting a true copy of the foregoing document(s) to the e-mail addresses set forth from the email mgreen@hueston.com.

☒ (BY PERSONAL SERVICE) I caused a true copy of the foregoing document(s) to be placed in a sealed envelope and delivered by hand to the offices of each interested party at the above address(es) via messenger.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on August 16, 2024, at Los Angeles, California.

| | |
|---|---|
| Marina G. Green | |
| (Type or print name) | (Signature) |

0