# EXHIBIT D

# Mariah Rivera

| | |
|---|---|
| **From:** | Britt.Lovejoy@lw.com |
| **Sent:** | Wednesday, November 6, 2024 1:31 PM |
| **To:** | Mariah Rivera; Andrew.Gass@lw.com; Steve.Feldman@lw.com; andrewschapiro@quinnemanuel.com; jessicarose@quinnemanuel.com; Grace.McLaughlin@lw.com; Lydia.Franzek@lw.com |
| **Cc:** | Moez M. Kaba; Rajan Trehan; Alexander Perry; Katharine Ross |
| **Subject:** | RE: UMG Recordings, Inc. et al. v. Uncharted Labs, Inc., d/b/a Udio.com et al., No. 1:24-cv-04777 (AKH) |

Counsel:

Your email does not indicate why a potential stipulation that the asserted works are contained in the training data would "fall[] far short as a substitute for the broad range of discovery" that Plaintiffs seek. You do not explain *why* such an agreement, together with discovery into the technical aspects of Udio's training process, would not provide Plaintiffs with sufficient information related to Udio's training in order to litigate their claims. And you do not otherwise explain *why* Plaintiffs are entitled to the "broad range of discovery" that they demand. If there is some specific additional category of documents that you believe Plaintiffs are entitled to, Udio would certainly be willing to meet and confer regarding that category—but we would like to understand your position on why those documents are relevant to Plaintiffs' claims and proportional to the needs of the case.

While we maintain that such a stipulation should moot the need for technically complicated discovery into training data, your suggestion that training data might be easily produced fundamentally misapprehends the amount of data needed to train a generative AI model. Udio's training data is measured in petabytes—a single petabyte is the equivalent of *thousands* of hard drives. That is why the parties in generative AI cases across the country have agreed to inspection of such training data.

With respect to scope of model discovery, a model "similar in functionality" would be a music-generative AI model, consistent with the allegations in Plaintiffs' Complaint. To that end, Udio will produce discovery related to Udio v.1 and v.1.5. We are not presently aware of any other music-generative AI model that has been made available to the public such that it would be relevant to the infringement claims asserted in Plaintiffs' Complaint.

As to temporal scope, Udio began technical development of its model in November 2023. As a compromise position, Udio is willing to extend its proposal back to July 2023, when it first conceptualized the service.

Finally, Plaintiffs' RFAs do not "confirm information." *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.,* 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021). Your representation that Udio "knows exactly . . . what copyrighted sound recordings" were used to train its model again misperceives the volume of the training data at issue. Udio does not presently know exactly which songs are in its training data—and certainly does not know whether an asserted work associated with each Plaintiff is contained in its training data. Further, as we previously stated, RFAs are not discovery tools; Plaintiffs' attempt to shift the burden of investigation to Udio via RFAs is improper.

We do not agree to your proposed briefing schedule. First, we do not agree to an "exchange of drafts." Please send us your position, and we will respond in a timely manner. Your expectation that this entire process will be completed within 4 business days is unreasonable. We agree to respond within 5 business days of receipt of your letter, assuming it is limited to the issues addressed in my email.

Regards,

Britt

1