# EXHIBIT G

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, SONY MUSIC ENTERTAINMENT, ARISTA MUSIC, ARISTA RECORDS LLC, ATLANTIC RECORDING CORPORATION, RHINO ENTERTAINMENT COMPANY, WARNER MUSIC INC., WARNER MUSIC INTERNATIONAL SERVICES LIMITED, WARNER RECORDS INC., WARNER RECORDS LLC, and WARNER RECORDS/SIRE VENTURES LLC,<br><br>           Plaintiffs,<br><br>   v.<br><br>UNCHARTED LABS, INC., d/b/a Udio.com, and JOHN DOES 1-10,<br><br>           Defendant. | Case No. 1:24-cv-04777-AKH<br><br>Hon. Alvin K. Hellerstein |

## DECLARATION OF DAVID DING IN SUPPORT OF JOINT LETTER RE MOTION TO COMPEL

I, David Ding, declare that the following is true and correct:

1. I am Chief Technology Officer and Co-Founder of Uncharted Labs, Inc., d/b/a Udio.com ("Udio"). Udio is an artificial intelligence ("AI") technology company focused on music generation. Udio's generative artificial intelligence model produces music based on simple text prompts. I co-founded Udio in 2023. At its founding, I was Udio's Chief Executive Officer. In December 2024, I transitioned to my current role as the Chief Technology Officer to focus on model development. I am responsible for, among other things, overseeing the core development of Udio's AI model and I directly contribute to the source code.

1

2. Udio has only ever released two versions of its product: the first—V1—before Plaintiffs filed their Complaint; the second—V1.5—after Plaintiffs filed suit. I understand that Udio has agreed to provide discovery into both of these model versions.

3. Udio's first commercially released model, V1, was made publicly available on April 10, 2024.

4. Udio's second commercially released model, V1.5, was released on July 23, 2024, a month after Plaintiffs filed their Complaint.

5. Udio's engineers have developed on the order of hundreds of non-released models that I understand Plaintiffs are now demanding discovery into. There are two types of internal, unreleased models.

6. One type are intermediate models developed between versions as engineers tweaked the code to obtain a more effective and efficient algorithm. Given their interim nature, intermediate models often had bugs and mistakes in them such that they could not run as is.

7. Another type of non-released models are internal research models built to test edge-case functionalities and explore the boundaries of model capabilities without interfering with Udio's existing commercial product.

8. Between these two types, it is common for individual engineers to build multiple models over just a few weeks. Internal research models were developed solely for research purposes and have never been used in commercially released models. For intermediate models, if any portion was incorporated into a commercially

released model, Plaintiffs would have access to that code when they inspect the commercial model.

9. Udio does not keep intricate records of internal research models nor intermediate models in the normal course of business, and it is unusual for engineers working in a fast-paced development environment to do so.  Thus, collecting information about the source code and other documentation regarding each of these models would first require asking each individual engineer to try to recall and reconstruct their developments from months ago.  Then, Udio would need to conduct a line-by-line review of the code in an attempt to restore the code to each model's original state in the past.  The process would not only be complicated and burdensome but also prone to error.  Identifying every research and intermediate model created since the company's inception would demand an immense effort.

10. Tracing who developed each model, the reasons behind their creation, the methods used, the data they were trained on, and other related details would be an even greater challenge.  I estimate collecting and organizing this information into accessible locations for Plaintiffs' access would take Udio approximately months.

11. Udio's research and development remains ongoing; it will continue to develop its AI technology over the next year.  As such it will likely continue to create internal-only versions of models.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 18th day of February, 2025 in EDINBURGH, SCOTLAND.

By: *Fengming Ding* (signature)
DAVID DING

4