Andrew Gass
Direct Dial: +1.415.395.8806
andrew.gass@lw.com

505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Tel: +1.415.391.0600  Fax: +1.415.395.8095
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Silicon Valley |
| Hong Kong | Singapore |
| Houston | Tel Aviv |
| London | Tokyo |
| Los Angeles | Washington, D.C. |
| Madrid | |

# LATHAM & WATKINS LLP

March 25, 2025

**VIA CM/ECF**

Honorable Alvin K. Hellerstein
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *UMG Recordings, Inc. et al. v. Uncharted Labs, Inc. et al.*, No. 1:24-cv-04777 (AKH)

Dear Judge Hellerstein:

Defendant Uncharted Labs, Inc. ("Udio") writes in opposition to Plaintiffs' recent request for an extension of time to file an amended complaint. *See* Dkt. 83 ("Pls.' Mot."). As Plaintiffs have acknowledged, *see* Pls.' Mot. at 2, the present litigation is both legally and practically complex, involving novel legal issues, new technology, and highly technical as well as voluminous discovery. As such, and in spite of the parties' best efforts, discovery has so far proceeded slowly, with both sides exchanging numerous drafts of protocols to guide Plaintiffs' review of Udio's technology, negotiating the relevant scope of document discovery, submitting briefing, and attending conferences before the Special Master. *Id.* While the parties have made progress, significant disputes on a number of foundational discovery issues remain.

Against this backdrop, Plaintiffs seek to further complicate the litigation by amending their complaint to add an untold number of additional sound recordings to the nearly *2,000 works* they have asserted. This case already involves an unwieldy number of works, and Plaintiffs' motion has the potential to add thousands more given the size of their catalogs. This Court can and should decide the key issues in this case—whether Udio's use of these copyrighted works to train its AI model is a fair use and whether Plaintiffs engaged in copyright misuse—before it expands the scope of the case. Adding these new works will mire the case in discovery and delay adjudication of these critical legal questions. Udio thus proposes an alternative tack: namely, that the parties and Court proceed to summary judgment on the already-asserted works. Thereafter, if necessary, the Court can take up Plaintiffs' request to expand the scope of the case by adding additional works.

To be clear, Udio is not, at this juncture, opposing Plaintiffs' ability to assert additional works, assuming they have a basis to do so under Federal Rule of Civil Procedure 11. Nor is Udio refusing to provide Plaintiffs with discovery regarding the full scope of what it trained its music-generative AI model on—it has already agreed to allow Plaintiffs to inspect the whole of its training data. Rather, Udio's proposal is based on the reality that increasing the number of works

**LATHAM&WATKINS**LLP

in suit at this time is likely to significantly delay this case's progress to resolution. By considering Plaintiffs' potential motion to amend after adjudicating summary judgment, the Court can avoid that delay, and its ruling will inform how the parties proceed with any additional works.

In fact, in a prior effort to postpone ownership-related discovery as part of their bid to bifurcate discovery, Plaintiffs argued that producing ownership information regarding the asserted works "would undoubtedly require a significant undertaking involving voluminous materials given the number of sound recordings implicated," which would be both "inefficient and inexpedient." Dkt. 36 at 8. Udio objected to Plaintiffs' bid to defer discovery into their ownership of their asserted works and Udio's other defenses because Plaintiffs cannot shirk their prima facie obligations with respect to the works that they asserted to get through the courthouse doors. *See id.* at 11-12. Nor should Plaintiffs be permitted to control Udio's defenses. *See id.* at 12. What Udio proposes now, however, is different: both parties will be able to fully pursue the claims and defenses *already* in suit. Udio's approach will merely allow the Court and the parties to focus on those claims and defenses and table the "significant"—but not undue—ownership discovery that will be required should Plaintiffs be permitted to add *additional* works to the litigation.

Indeed, the Court previously expressed concern that a copyright litigation comprised of many thousands of asserted works may not be one "that any single judge could deal with." Ex. A (Aug. 21, 2024 Hr'g Tr.) at 17:21-20:24. In light of the unique complexities of this case, the more efficient and manageable approach for the Court and parties alike is for Plaintiffs to wait to assert any new works until after the Court has adjudicated summary judgment as to the works currently in suit. At that point, once the parties have been through fact discovery and received the benefit of the Court's analysis of key issues like fair use, copyright misuse, and Plaintiffs' burden of proving ownership of the asserted works, the parties will be better positioned to conduct targeted discovery as to any additional works without delaying the entire case to do so. Should the Court find that Udio's use of sound recordings as training data to teach a generative AI model is fair use—a finding well-supported by existing law—this additional discovery may not be necessary at all. If not, Plaintiffs can use the intervening months to collect requisite ownership documents related to the additional works they intend to pursue without delaying the forward progress of the claims and defenses presently before the Court.

Because Udio's counterproposal offers a better approach to the issue of additional works, Udio respectfully requests that the Court deny Plaintiffs' motion.

**Udio Has Been Forthcoming In Discovery**

Plaintiffs devote several paragraphs of their letter motion to the false premise that Udio intends to obfuscate the contents of its training data—that is, the corpus of sound recordings from which Udio's music-generative AI tool derives complex statistical information about music in order to generate new audio files. Plaintiffs' accusations could not be further from the truth.

In fact, before the parties even began to negotiate a training data inspection protocol, Udio offered to explore a stipulation that the works identified in Plaintiffs' complaint were among its training data. *See* Ex. B (Oct. 31, 2024 B. Lovejoy Email) at 2. Plaintiffs rejected this proposal. *See id.* at 1. Udio therefore agreed to provide Plaintiffs with *complete access* to its training data—

2

LATHAM&WATKINS LLP

among Udio's most sensitive business assets—which will allow Plaintiffs to ascertain the full scope of sound recordings that Udio trained its model on. *See* Dkt. 82 (providing for inspection of Udio's training data). Udio agreed to Plaintiffs' broad fishing expedition for additional works to assert in this litigation despite the fact that copyright claims are work-specific and require allegations—and, ultimately, proof—of registration and ownership for *each* allegedly infringed work.[1] Courts routinely deny demands for discovery into unasserted works, even where the Complaint indicates that the asserted works are "non-exhaustive."[2]

---

[1] *See, e.g.*, 17 U.S.C. § 411 ("no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title"); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) ("To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."); *Gold Value Int'l Texile, Inc. v. Sanctuary Clothing, LLC*, No. 16-cv-1600339, 2017 WL 3477746, at *7-8 (C.D. Cal. May 12, 2017) (finding that an "action cannot proceed as to any alleged infringement" of works whose "registrations were not identified in the pleadings"); *Adobe Sys. Inc. v. Software Speedy*, No. 14-cv-2152, 2014 WL 7186682, at *6 (N.D. Cal. Dec. 16, 2014) (finding a "non-exhaustive list" of the plaintiff's copyrights and "a general allegation that Defendants have infringed its . . . 'copyrights'" in plaintiff's complaint was "insufficient," as defendant "is entitled to clear notice" of the "copyrights he is alleged to have infringed"); *Cole v. John Wiley & Sons, Inc.*, No. 11-cv-02090, 2012 WL 3133520, at *12 (S.D.N.Y. Aug. 1, 2012) (finding that it is "insufficient to list certain works . . . and then allege that the [infringement] claim is also intended to cover other, unidentified works.").

[2] *See, e.g., Psihoyos v. Pearson Educ., Inc.*, No. 10-cv-05912, 2010 WL 11889066, at *1 (S.D.N.Y. Dec. 7, 2010) (treating different works as separate infringement claims and denying discovery into works not pleaded in the complaint, "find[ing] that plaintiffs' request for documents concerning images not identified in their Complaint" was "grossly overbroad" and "nothing more than . . . an impermissible fishing expedition."); *Teradyne, Inc. v. Astronics Test Sys., Inc.*, No. 20-cv-02713, 2022 WL 18397125, at *6 (C.D. Cal. Dec. 22, 2022) (denying the plaintiff's attempt to take discovery into unasserted copyrights and finding that, when it came to requests to "seek[] evidence of potential copyright infringement not currently at issue, the Court need not allow Plaintiff to engage in a fishing expedition for new causes of action"); *Slate v. Am. Broad. Cos.*, 274 F.R.D. 350, 352 (D.D.C. 2011) (limiting discovery to the infringement alleged within "the four corners of the Complaint" and rejecting plaintiff's argument that evidence of other copyright infringement "could, conceivably, establish a pattern and practice of copyright infringement"); *Oracle Am., Inc. v. HPE*, No. 16-cv-01393, 2016 WL 11806000, at *2 (N.D. Cal. Nov. 7, 2016) (denying motion to compel discovery into unasserted works and finding that "the vague placeholder language" of "'includes, without limitation' does nothing to expand the scope of discovery to software not specifically put at issue by the complaint"); *Epidemic Sound v. Meta*, No. 22-cv-04223, Dkt. No. 177 (N.D. Cal. Oct. 10, 2024) (rejecting an attempt by a music production library to seek intrusive data discovery from the defendant that was not related to works not asserted in the complaint); *Capitol Records, Inc. v. Alaujan*, No. 03-cv-11661, May 13, 2009 Text Order (D. Mass. May 13,

3

**LATHAM&WATKINS**LLP

But, contrary to Plaintiffs' demand that Udio simply tell them what works it trained on, *see* Pls.' Mot. at 2, Udio has no obligation under the discovery rules to analyze its training data in order to ferret out Plaintiffs' works. Even if that were an appropriate discovery request, Udio could not, without additional information, identify with any certainty works owned by Plaintiffs.[3] Udio does not have access to information defining the scope of Plaintiffs' catalogs or the copyright deposit copies associated with each of their works—which are necessary for Udio to confirm whether or not a particular audio file in its training data is one and the same as a sound recording registered by Plaintiffs. In fact, Plaintiffs had not produced *any* ownership information until Friday, March 21, the same day they filed their motion for extension, when two Plaintiffs produced registration certifications associated with approximately 200 of the over 1,600 asserted works asserted in the Complaint. This disparity in information between Plaintiffs and Udio is why allowing Plaintiffs to inspect Udio's training data and make those determinations themselves is appropriate.[4]

**Plaintiffs Have Resisted Producing Ownership Discovery**

In contrast to Udio's transparency, Plaintiffs have continually resisted discovery into their asserted works. Plaintiffs bear the prima facie burden of proving, for each of the works at issue, "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."[5] Plaintiffs cannot meet this burden merely by listing works in their Complaint, and they have never argued otherwise. But from the beginning of this litigation, Plaintiffs have attempted

---

2009) (instructing many of the present plaintiffs that "this lawsuit is not an opportunity to explore any potential copyright infringement committed by the Defendant at any time or place" but "[r]ather, this suit and relevant discovery are limited to the infringement of specific songs whose copyrights are owned or licensed by the Plaintiffs *and which were identified* . . . [in] their Complaint" (emphasis added)); *UMG Recordings Inc. v. Internet Archive*, No. 23-cv-06522, Dkt. No. 154, at 7–8 (N.D. Cal. Dec. 19, 2024) (denying discovery into unasserted sound recordings).

[3] Plaintiffs themselves have represented that Udio's "metadata is not a reliable means of ascertaining the ownership of a particular sound recording because it may be incomplete, incorrect, or unreliable. And metadata can be created and attached to an audio file by a third party, some of whom may have an incentive to mislabel or mislead." Dkt. 80-6; *see also* Dkt. 80 at 4-7 (explaining the difficulty of identifying any work found in Udio's training data as one belonging to Plaintiffs).

[4] Similar training data inspection protocols have been entered in multiple other generative AI copyright cases. *See, e.g.*, *In re OpenAI Chat GPT Litigation*, Case No. 23-cv-03223, Dkt. 182 (N.D. Cal. Sep. 24, 2024) (protocol governing inspection of training data); *New York Times Co. v. Microsoft Corporation, et al.*, Case No. 23-cv-11195, Dkt. 254 (S.D.N.Y. Oct. 4, 2024).

[5] *Feist*, 499 U.S. at 361; *see also Flo & Eddie, Inc. v. Sirius XM Radio Inc.*, 80 F. Supp. 3d 535, 543 (S.D.N.Y. 2015) ("A party alleging copyright infringement always has to prove that he owns the copyright he is asserting, it is an element of his claim!" (emphasis added)); *Kwan v. Schlein*, No. 05-cv-459, 2009 WL 10678967, at *3 (S.D.N.Y. Apr. 23, 2009) ("Of course, an infringement claimant must first prove that she owns the copyright, that the defendant does not own the copyright, and that the defendant infringed on her copyright." (emphasis added)).

to shirk even the most straightforward discovery into their ownership of the works identified in the Complaint—and often on the basis of the alleged difficulty of collecting and producing the requisite evidence.

First, in seeking to bifurcate discovery so that they could delay producing documents relevant to their prima facie case, Plaintiffs argued that discovery into their asserted works "would undoubtedly require a significant undertaking involving voluminous materials given the number of sound recordings implicated." Dkt. 36 at 8. *After* the Court denied Plaintiffs' bifurcation motion, Udio sought basic discovery of documents supporting Plaintiffs' claim that they own the currently asserted works. For months, Plaintiffs refused to produce any responsive documents until they had the chance to assert additional works, arguing that any production would "require Plaintiffs to expend significant resources collecting and producing ownership information for the asserted works, only to have to restart the process after Udio produces its training data." Dkt. 80-2 at 2, 4. After Udio served a motion to compel discovery (and months after Udio first served its requests), Plaintiffs made an about-face and agreed to produce some of the ownership information Udio requested. Dkt. 80-5. But Plaintiffs have maintained their refusal to produce deposit copies and work-for-hire agreements for the asserted works, on the basis that doing so would pose "an immense burden," particularly in light of the volume of works at issue. Dkt. 80 at 14, 16. This dispute is currently before the Court. *See* Dkt. 80. Moreover, when Plaintiffs finally agreed to a number of Udio's ownership requests, they specifically reserved objections "with respect to Plaintiffs' production obligations after the list of asserted works grows." Dkt. 80-5 at 2. To be clear, Plaintiffs' contemplated objection is meritless: whether Plaintiffs assert a single work or thousands, they bear the burden of proving that they own *each work* and are not excused from this burden because they have chosen to expand the scope of their suit. But in raising it, Plaintiffs have made evident their intention to withhold relevant discovery on any new works they add to the litigation—which will likely lead to additional delays.

Plaintiffs' resistance is a reflection of the potential enormity of the undertaking ahead of them. While the ownership information for the approximately 1,600 currently asserted works that Udio seeks is undoubtedly relevant to the litigation, Plaintiffs have claimed that collecting and producing information regarding those works alone presents a burden. It took Plaintiffs six months to make a modest and incomplete initial production of copyright registrations for a fraction of the currently asserted works. This burden of ownership discovery—though not undue—will only increase if Plaintiffs expand the scope of the case to include what may be thousands of additional works. Based on the course of discovery to date, Udio is highly skeptical that Plaintiffs will be able to provide ownership-related discovery for an unspecified number of additional works by the July 9, 2025 document discovery deadline they have proposed.

**An Alternative Proposal**

The answer to these challenges is not to excuse Plaintiffs from their prima facie burden: ownership discovery is necessary for Plaintiffs to prove (and Udio to challenge) the elements of their copyright infringement claims. Instead, the appropriate course of action is one that keeps the case manageable for both the Court and the parties without prejudicing *either* side's ability to pursue its claims and defenses. *See* Pls.' Mot. at 2-3. Udio's proposal does just that: it obviates Plaintiffs' burden in the short term and allows the parties to proceed with discovery as to the works

LATHAM&WATKINS LLP

and issues already in the case—which have not lacked in complexity or volume. Once the Court has adjudicated summary judgment, Plaintiffs will be able to amend their Complaint to assert additional works, and the parties can engage in limited discovery relevant to those works specifically.

In addition to being a more efficient and practical way to address Plaintiffs' plan to assert additional works, Udio's proposal is also consistent with the Court's concerns, expressed shortly after this case was brought, that having many thousands of works at issue would "creat[e] a case that is impossible" and that no "single judge could deal with." Ex. A at 19:06-10. Though there is no way to avoid these difficulties entirely, Udio's approach would keep the scope of the case narrower while the parties and the Court navigate the merits of Plaintiffs' current infringement claims.

Nor would such an approach be inconsistent with Udio's previous position on bifurcated discovery. The bifurcated schedule for which Plaintiffs advocated would have halted all discovery other than that related to fair use until the Court ruled on fair use—essentially sidelining discovery into all of Udio's other defenses and into Plaintiffs' prima facie case based on Plaintiffs' preference. Udio does not propose bifurcating discovery issue-by-issue, as Plaintiffs did. Under Udio's current proposal, both parties can pursue full discovery related to their claims and defenses, and the Court will be able to assess the merits of those claims and defenses on a full discovery record. All that will be put on hold is Plaintiffs' attempt to expand the list of asserted works—which goes to damages alone. So that it is abundantly clear: in the meantime, Udio will not renege on its commitment to provide Plaintiffs with the opportunity to inspect the whole of its training data. But deferring amendment could obviate the need for additional ownership discovery into yet-unasserted works, as a favorable resolution of Udio's fair use and/or copyright misuse defenses would apply with equal force to other works in Plaintiffs' catalog. As Plaintiffs themselves argued in the context of their bifurcation demand "[i]t would be inefficient and inexpedient to undertake such voluminous discovery when a more limited set of discovery in the first instance might fully dispose of the case and moot the need for more burdensome discovery." Dkt. 36 at 8-9. And, even if Udio is not successful at summary judgment, deferral will provide Plaintiffs with additional time to collect ownership-related documents without delaying the litigation's progress to that "main event."

For the foregoing reasons, Udio respectfully requests that the Court deny Plaintiffs' motion for an extension of time and instead set the deadline to file an amended pleading without leave of the Court for 30 days following the Court's adjudication of any summary judgment motion(s).

Dated March 25, 2025                          Respectfully submitted,

LATHAM&WATKINS LLP

<u>s/ Andrew M. Gass</u>
Steven N. Feldman
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
steve.feldman@lw.com

Andrew M. Gass (*pro hac vice*)
Brittany N. Lovejoy (*pro hac vice*)
**LATHAM & WATKINS LLP**
505 Montgomery Street
Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
andrew.gass@lw.com
brittany.lovejoy@lw.com

Sarang V. Damle
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
sy.damle@lw.com

Alex Spiro
Todd Steven Anten
Jessica Anne Rose
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
51 Madison Avenue
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
alexspiro@quinnemanuel.com
toddanten@quinnemanuel.com
jessicarose@quinnemanuel.com

Andrew H. Schapiro
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
191 N. Wacker Drive
Suite 2700

LATHAM&WATKINS LLP

Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401
andrewschapiro@quinnemanuel.com

*Counsel for Defendant Uncharted Labs, Inc. d/b/a Udio.com*