MOEZ M. KABA     mkaba@hueston.com     523 West 6th Street
D: 213 788 4543     Suite 400
T: 213 788 4340     Los Angeles, CA 90014
F: 888 866 4825

# HUESTON HENNIGAN LLP

March 21, 2025

**VIA ECF & FACSIMILE**

Hon. Alvin K. Hellerstein
United States District Court
Southern District of New York
500 Pearl Street, Room 1050
New York, New York 10007

*[Handwritten annotation: Denied. Plaintiff may seek leave to file for amended complaint at any convenient time. 3-25-25 /s/ Hellerstein]*

Re:    *UMG Recordings, Inc. et al. v. Uncharted Labs, Inc., et al.*, No. 24 Civ. 04777 (AKH) (S.D.N.Y.)

Dear Judge Hellerstein:

    Pursuant to Local Civil Rule 7.1(e) and Rule 1(D) of this Court's Individual Rules, Plaintiffs respectfully request an extension of time to file an amended complaint without leave of court from March 25, 2025, to May 27, 2025. This is Plaintiffs' first request for an extension of this deadline. As set forth below, Plaintiffs' request will only impact one other deadline currently set in the case, the deadline for the completion of document production.

    Before initiating this action, Plaintiffs attempted to start a dialogue with Defendant Uncharted Labs, Inc. ("Udio") regarding its widespread infringement of copyrighted sound recordings used to train its generative AI models. Plaintiffs asked Udio to provide information regarding the copyrighted sound recordings, including a list of each sound recording and where it was obtained. Consistent with Udio's pattern of hiding the nature and scale of its infringement, Udio refused, forcing Plaintiffs to bring this suit.

    Plaintiffs' Complaint alleges that Udio trained its generative AI models on an untold number of Plaintiffs' copyrighted sound recordings. Because Udio was not forthcoming about the contents of its training dataset, Plaintiffs tested Udio's AI music generation service to generate outputs that resembled Plaintiffs' copyrighted sound recordings to develop circumstantial evidence of the copyrighted works that Udio infringed. *See* Complaint, Ex. B. Given the stark similarities between these AI generated soundalikes and certain of Plaintiffs' copyrighted works, Plaintiffs were able to deduce that specific sound recordings they owned or exclusively controlled were included in Udio's training dataset, which recordings comprise the current list of asserted works. *Id.*, Ex. A. But, as explained in the Complaint, this approach was necessarily "non-exhaustive," and Plaintiffs made clear that they "intend to amend the Complaint at an appropriate time to provide an expanded list of works that Udio has infringed." *Id.* ¶ 30. Even Udio has seemingly acknowledged that its copying of Plaintiffs' sound recordings goes beyond the current list of asserted works, given its admission in its Answer that "[t]he many recordings that Udio's model was trained on presumably included recordings whose rights are owned by Plaintiffs in this case." Answer at 8. The Court acknowledged Plaintiffs' planned amendment when entering the Case Management Plan, allowing Plaintiffs to amend without leave by March 25, 2025. Dkt. 57; *see also* Dec. 5, 2024 Hr'g Tr. at 10:11-11:12.

# HUESTON HENNIGAN LLP

The parties have expended significant efforts in negotiating the scope of discovery, as well as mutually agreeable protocols to govern Plaintiffs' inspection of both Udio's source code and training data. But given the complexity of the issues and delicate balancing of each party's interests, the negotiations consumed considerable time and effort. Indeed, it took nearly 50 days to come to agreement on the source code protocol and nearly 70 days for the training data protocol. In this intervening time, the parties attended six conferences before the Special Master, submitted three rounds of briefing, and exchanged numerous drafts of both protocols. Plaintiffs could have amended their complaint without all this expenditure of effort if Udio had simply agreed in the first place to identify the works it copied and used to train its AI models—clearly discoverable subject matter.

Udio's refusal to provide information regarding the copyrighted sound recordings it has infringed has forced Plaintiffs to conduct a thorough inspection of Udio's training datasets in order to identify the copies themselves. Plaintiffs have already begun the task of reviewing Udio's training datasets and expect their inspection will provide them with the information necessary to amend their Complaint to assert additional infringed works. By way of background, the parties filed the proposed training data inspection protocol on March 6, 2025, which the Court entered on March 17, 2025. Plaintiffs diligently noticed their initial inspection of Udio's training data to begin on March 20, 2025. Accordingly, Plaintiffs have only just started their review of Udio's training data, which will be an immense task given the sheer volume of data (measured in "petabytes" according to Udio) and the technical details necessary for Plaintiffs to confidently identify their own sound recordings in this unknown dataset. To that end, the parties are working together to develop a mutually agreeable plan to use Audible Magic, a third-party vendor that provides audio fingerprinting services, to assist Plaintiffs with their review of the training data.[1] Once the parties agree on the technical details of Plaintiffs' use of Audible Magic, this should speed up the review considerably, allowing Plaintiffs to meet their proposed extended deadline of May 27, 2025, to amend their complaint.

Pursuant to Rule 1(D), Plaintiffs inquired with Udio to see if it would consent to this request. In response, Udio stated that it opposes the request, and would instead propose that Plaintiffs file a motion to amend the Complaint after adjudication of summary judgment as to the works presently in suit. But Plaintiffs cannot agree to such a substantial and unwarranted delay of the amendment they have contemplated since the case's inception.

Udio's proposal is unmistakably an attempt to delay the inevitable unmasking of the full scope of its infringement. Udio's proposal also came as a surprise to Plaintiffs, given Udio's vehement opposition to Plaintiffs' earlier request to bifurcate discovery to focus first on fair use, the central issue of liability. *See* Dkt. 36. Just as Udio claimed that Plaintiffs should not be "permitted to unliterally dictate Udio's defense" (*id.* at 11), Udio cannot be permitted to unilaterally dictate how Plaintiffs prosecute their case. In addition,

---

[1] Numerous courts have recognized Audible Magic's ability to match unknown sound recordings (like those in Udio's training dataset) to a database of known copyrighted recordings with remarkable accuracy. *See UMG Recordings, Inc. v. Grande Commc'ns Networks, L.L.C.*, 118 F.4th 697, 709 (5th Cir. 2024) (explaining that "[t]he jury was entitled to rely on the records generated by Audible Magic, which themselves evinced a 'side-by-side comparison' between Plaintiffs' copyrighted sound recordings and [the infringing] downloads."); *UMG Recording, Inc. v. Escape Media Group, Inc.*, 2014 WL 5089743, at *15, 17 (S.D.N.Y. Sept. 29, 2014) ("Audible Magic's methods of analysis are not a secret and have been relied upon in various similar copyright litigations."); *Arista Records LLC v. Lime Wire LLC*, 06 Civ. 05936 (KMW), 2010 WL 10031251, at *6 (S.D.N.Y. Aug. 9, 2010) (defining "Fingerprinting Technology," which is "available from commercial vendors such as Audible Magic," as "the most effective available means of content-recognition filtering based on recognizing the unique content of an underlying audio-visual work and detecting and preventing copying of that content").

6945128

# HUESTON HENNIGAN LLP

proceeding as Udio proposes makes little practical sense, as it would potentially lead to a second round of post-amendment summary judgment briefing that overlaps with the issues presented in the first round. Plaintiffs reserve the right to respond in full to Udio's proposal after it articulates any bases for it.

\* \* \*

In sum, Plaintiffs respectfully request an extension of time from March 25, 2025, to May 27, 2025 to file their amended complaint without leave of court. If granted, this extension will provide Plaintiffs with time to review Udio's training data and avoid burdening the Court with a motion to amend the pleadings. Plaintiffs' request will only affect one other case deadline, the completion of document production, which currently has a deadline of May 14, 2025. Plaintiffs therefore propose the following amendments to the Case Management Plan (Dkt. 57):

| Discovery Activities | Current Completion Date | Amended Completion Date |
|---|---|---|
| Amended Pleadings (without leave of court) | March 25, 2025 | May 27, 2025 |
| Completion of Document Production | May 14, 2025 | July 9, 2025 |
| Case Management Conference | May 28, 2025, at 2:30 PM ET | July 23, 2025[2] |

Sincerely,

Moez M. Kaba

---

[2] Plaintiffs have proposed an updated Case Management Conference date based on the Court's request that the parties meet after the completion of document production to discuss depositions. See Dec. 5, 2024 Hr'g Tr. at 13:4-9. Plaintiffs are amenable to keeping the conference set for May 28, or scheduling the conference on another date if more convenient for the Court.

6945128