UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, SONY MUSIC ENTERTAINMENT, ARISTA MUSIC, ARISTA RECORDS LLC, ATLANTIC RECORDING CORPORATION, RHINO ENTERTAINMENT COMPANY, WARNER MUSIC INC., WARNER MUSIC INTERNATIONAL SERVICES LIMITED, WARNER RECORDS INC., WARNER RECORDS LLC, and WARNER RECORDS/SIRE VENTURES LLC,<br><br>          Plaintiffs,<br><br>      v.<br><br>UNCHARTED LABS, INC., d/b/a Udio.com, and JOHN DOES 1-10,<br><br>          Defendant. | Case No. 1:24-cv-04777-AKH |

**DEFENDANT UNCHARTED LABS, INC.'S MEMORANDUM OF LAW IN <u>OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION</u>**

## I.  INTRODUCTION

In response to this Court's unambiguous order requiring Plaintiffs' to produce deposit copies of their Asserted Works, Dkt. No. 89 (the "Order"), Plaintiffs have filed what they characterize as a "Motion for Clarification," Dkt. No. 92 (the "Motion"), which is, in effect, a motion for reconsideration.  The Motion largely regurgitates arguments that Plaintiffs made in opposition to Udio's motion to compel production of the deposit copies, *see* Dkt. No. 80, which the Court already considered and rejected when granting Udio's motion.  Dkt. No. 89 (the "Order").  Nothing in the Motion changes the factual or legal issues that were before the Court when it entered its Order less than three weeks ago.

In their Motion, Plaintiffs offer to provide "(a) digital copies of each asserted work that are in their possession, custody, or control, and (b) declarations establishing that those digital copies are identical to the deposit copies submitted to the Copyright Office when the works were registered." Motion at 2-3.  But this offer is not actually new—Plaintiffs already presented it to Udio on March 27th, after Udio filed its motion to compel but before the Court ruled on that motion.  *See* Dkt. No. 92-1 ¶ 6.  Udio rejected the proposal as insufficient, since—unlike the deposit copies Plaintiffs actually submitted to the Copyright Office—neither Plaintiffs' digital recordings nor their declarations would establish precisely what sound recordings were registered with the Copyright Office.  Dkt. No. 80 at 6.  Udio is not required to take Plaintiffs at their word the recordings they submitted to the Copyright Office are one and the same as the works in current commercial distribution, particularly given that there may be many different recordings of the titles at issue and many of the tracks were recorded and deposited before the digitization process Plaintiffs currently employ.  *See, e.g.*, Dkt. No. 92-8 ¶¶ 9–10 (explaining that UMG may not

possess deposit copies for some older recordings and "has not maintained consistent practices for entering [their] information into the system").

Udio's reasons for rejecting Plaintiffs' March 27th offer are the exact reasons why this Court ultimately ordered Plaintiffs to produce the deposit copies: because the nearly identical alternatives Plaintiffs originally offered when opposing Udio's motion—which included metadata identifying commercially available sound recordings and declarations about the files Plaintiffs generally submit to the Copyright Office—were "not the best evidence of ownership of the specific copyrighted sound recordings or the contours of what was registered." Dkt. No. 89 at 2. Plaintiffs' attempt to return to this insufficient offer falls short of their obligations under the law and is at odds with what this Court clearly ordered them to do: produce their deposit copies. The Motion should be denied.

## II.  ARGUMENT

Plaintiffs allege that Udio infringed sound recordings "owned or exclusively controlled by Plaintiffs" (the "Asserted Works") by using them to train its generative AI tool. Dkt. No. 1 at ¶ 9. As this Court has found, to establish their prima facie claim of copyright infringement, Plaintiffs must prove that they own each of the Asserted Works. Order at 2; *see also Boisson v. Banian, Ltd.*, 273 F. 3d 262, 267 (2d. Cir. 2001) (*citing Feist Publ'ns, v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). And in order to prove that the Asserted Works are in fact works on which Udio trained, Plaintiffs must establish both what those Works *are*—that is, what actual sound recordings are associated with each Asserted Work Plaintiffs have identified—and whether those specific Works are present in Udio's training data. Without this evidence, Plaintiffs cannot demonstrate infringement. *See Antonick v. Elec. Arts, Inc.*, 841 F.3d 1062, 1066 (9th Cir. 2016) (affirming district court decision that "[t]he jury [] could not compare the works to determine substantial

similarity" for infringement because the works that were purportedly infringed were not in evidence). The deposit copies of the Asserted Works are "the embodiment of the copyright itself and the specific sound recording that was copyrighted" and, as such, are the best evidence of ownership. Dkt. No. 89 at 2; *see also, e.g.*, *Structured Asset Sales, LLC v. Sheeran*, 120 F.4th 1066, 1075 (2d Cir. 2024) ("One cannot fairly be liable for infringement without the ability to understand the contours of a prior creator's rights. That is why the deposit (and accompanying registration) requirement was (as it still is) a condition precedent to the right to bring an infringement action." (citation omitted)). Accordingly, this Court, after considering briefing on the issue from both parties, ordered Plaintiffs to "produce the deposit copies" of the Asserted Works. *Id.*

Despite the unambiguity of this Court's Order, Plaintiffs claim to seek "clarification" under Rule 60(a), under which a "court may correct a **clerical mistake or a mistake arising from oversight or omission** whenever one is found in [an order]." Fed. R. Civ. P. 60(a) (emphasis added). But the Order could not be clearer: it requires Plaintiffs to "produce the deposit copies." Order at 2. What Plaintiffs truly seek is *relief* from the Order. *See* Fed. R. Civ. P. 60(b). Plaintiffs' Motion fails to satisfy the high bar for the "extraordinary remedy" that they effectively seek. *See Fezzani v. Bear, Stearns & Co. Inc.*, No. 99-cv-0793, 2021 WL 3115449, at *1 (S.D.N.Y. July 21, 2021).

The most immediate problem with Plaintiffs' Motion is that Plaintiffs are, in effect, simply seeking to relitigate the exact issue they already lost. In opposition to Udio's motion to compel, Plaintiffs argued that, in lieu of deposit copies, both they *and* Udio should rely on: (1) publicly available sound recordings, which Plaintiffs also provide to Audible Magic, and (2) declarations from Plaintiffs as to the recordings they submit to the Copyright Office "[a]s a matter of course." Dkt. No. 80 at 13. The only difference between the current Motion and Plaintiffs'

3

opposition to Udio's motion to compel is Plaintiffs' offer to actually *produce* digital recordings associated with their Asserted Works, rather than metadata through which Udio could access those digital recordings itself and the results of their Audible Magic analysis. Dkt. No. 92 at 5-6. Other than that, what Plaintiffs currently frame as a "clarification" is in fact exactly what they proposed in their opposition and what this Court rejected in its previous Order. Order at 2. And, in fact, their offer to produce digital recordings is *also* something Plaintiffs have previously proposed to Udio. Plaintiffs first presented Udio with this offer on March 27, 2025, after Udio's motion to compel was briefed. Dkt. No. 92-1 at ¶ 6. Like Plaintiffs' other proposals, *see* Dkt. No. 80 at 10, their March 27 offer would not establish that the works they own are identical to the works they claim Udio infringed, and so Udio rejected it. But there is no reason that Plaintiffs could not have at least made this offer earlier, either over the many months the parties spent negotiating Udio's discovery requests or in the motion to compel the parties submitted to the Court three weeks before, in which they advocated for a virtually identical approach to this discovery. After having their previous proposals rejected by both Udio and the Court, Plaintiffs cannot use their motion for "clarification" to try yet another compromise offer that they made the strategic choice not to present to the Court in the first place.

Moreover, Plaintiffs' current proposal suffers the exact same issues as the one they previously presented to the Court and is therefore insufficient. In opposing Udio's motion to compel, Plaintiffs said that they would provide publicly available digital "sound files" of their Asserted Works to Audible Magic, which would identify whether the works on which Udio was trained are identical to those files. Dkt. No. 80 at 13. The Court rejected Plaintiffs' argument that their plan to use Audible Magic relieved them of their obligation to produce deposit copies, finding that, because "[t]he alternative discovery proposed by Plaintiffs is not the best evidence of

4

ownership of the specific copyrighted sound recordings or the contours of what was registered," they must "produce the deposit copies." Order at 2; *see also Antonick*, 841 F.3d at 1066 (recognizing the best evidence rule in copyright cases and affirming that, because "the source code was [not] in evidence," the jury could not determine substantial similarity). This finding does not change if what Plaintiffs produce is digital copies, rather than Audible Magic results. Udio is entitled to the best and most directly relevant evidence of ownership—the deposit copies—to challenge the accuracy of Plaintiffs' claims and whatever evidence on which they plan to rely.

In addition, both Plaintiffs' current Motion and their opposition to Udio's motion to compel similarly offer declarations attesting that their general practice is to commercially release the same versions of the works that are sent to the Copyright Office. *Compare* Motion at 1–2; Dkt. No. 80 at 13. But the declarants do not and cannot attest that the deposited recordings of the Asserted Works are in fact identical to the commercially released copies that Plaintiffs offered to produce, as the declarants do not have percipient knowledge of what sound recordings were submitted to the Copyright Office. Even if Udio were to accept Plaintiffs' declarations as accurate descriptions of their *general practices*, that would not establish that Plaintiffs abided by those practices with respect to the Asserted Works—particularly not where Plaintiffs may not even have been the ones to submit all of the Asserted Works to the Copyright Office, *see* Motion at 6–7. As addressed below, that distinguishes the facts here from those in the cases Plaintiffs rely on, wherein the declarants had personal knowledge of the contents of the deposit copies submitted to the Copyright Office. Plaintiffs' current offer accordingly fails for the same reason as their prior offers, including the one before the Court when it granted Udio's motion to compel: the proposed discovery and declarations do not conclusively identify the contents of the sound recordings Plaintiffs own and allege Udio infringed.

5

Plaintiffs' claim that their approach "will give Udio exactly what it sought in its motion to compel," Motion at 6, is, thus, patently untrue. While Udio may be able to "use the digital copies Plaintiffs will produce . . . to 'test' that these copies of the asserted recordings are identical to works in Udio's training data," *id.*, this misses the key point: Plaintiffs' approach does not allow Udio to "test" whether the "digital copies" in current commercial distribution *are the same as the sound recordings deposited with the Copyright Office*—and over which Plaintiffs hold copyrights. To be clear, the digital copies Plaintiffs are offering to produce are not somehow forensically linked to Plaintiffs' deposit copies. The "matching" that Plaintiffs describe is little more than keyword search through their digital catalog databases. *See* Motion at 5–6. The persisting missing link between, on the one hand, the sound recordings Plaintiffs are presently distributing and have provided to Audible Magic for purposes of matching to tracks in Udio's training data and, on the other hand, what Plaintiffs registered with the Copyright Office, is critical. Without access to deposit copies, the parties cannot establish that any sound recording Audible Magic identifies among Udio's training data is actually a work registered and owned by Plaintiffs. This critical gap in the discovery Plaintiffs have offered to provide is the exact issue that motivated Udio's motion to compel. Neither Udio nor the Court is required to simply take Plaintiffs' word for it, and Udio is entitled to highly relevant evidence that may rebut Plaintiffs' conclusory testimony.

The cases Plaintiffs cite also do not compel a new result. Indeed, these cases stand for the same propositions as the cases Plaintiffs relied on in their opposition to Udio's motion to compel—Plaintiffs could have cited them in that opposition. And they are unavailing for the same reasons. For example, Plaintiffs invoke *Chicoineau v. Bonnier Corp.*, No. 18-cv-3264, 2018 WL 6039387 (S.D.N.Y. Oct. 16, 2018), in support of their proposal to use declarations about their

6

general practices when registering works with the Copyright Office in lieu of producing deposit copies. Motion at 6–7. But that case dealt with a copyrighted photograph, and there was no reason to believe that additional (unasserted) versions of the photograph existed. *See Chicoineau*, 2018 WL 6039387, at *1–2. Moreover, the declaration on which the plaintiff intended to rely was of the person who "personally deposited the Photograph with the U.S. Copyright Office." *Id.* at *1. Here, by contrast, there may be multiple recordings of the titles at issue. *See* Dkt. No. 80 at 5. And Plaintiffs have not submitted declarations from the individuals who *actually deposited* the recordings of the Asserted Works. The deposit copies are therefore necessary for Udio to test Plaintiffs' assertion that Udio trained on the recordings that Plaintiffs actually own and have registered with the Copyright Office. *Masi v. Moguldom Media Grp. LLC*, No. 18-cv-2402, 2019 WL 3287819 (S.D.N.Y. July 22, 2019), is similarly inapt. There, too, the plaintiff introduced a sworn declaration and deposition testimony that *he personally* included the photographs at issue "in his gallery with his registration application." *Id.* at *4. Moreover, fact discovery had concluded in *Massi*, and the Court noted that the "Defendant could have filed a motion to compel if it felt that document production was insufficient." *Id.* Here, Udio *did* bring a motion to compel production of the deposit copies, which the Court granted.

Finally, Plaintiffs contend that they do not maintain deposit copies for every copyrighted sound recording they own and note that "locating physical archival copies of older works, many of which predate Plaintiffs' current archival practices, would be uniquely burdensome (if not impossible)." Motion at 7. Plaintiffs made this exact argument in their opposition to Udio's motion to compel. *See* Dkt. No. 80 at 14. As an initial matter, it is difficult to believe that Plaintiffs, who are multimillion dollar record labels whose businesses are premised on the copyrights they own, cannot locate crucial copyright information for works by artists like Frank

7

Sinatra, the Beatles, and the Beach Boys, which represent some of their core assets. To the extent that Plaintiffs have failed to maintain accessible, contemporaneous records of the files they or their predecessors submitted to the Copyright Office, Udio should not be charged with correcting this failure. *See* 5 Intellectual Property Counseling & Litigation § 65.07 (noting that because "[c]opyright certificates obtained from the Copyright Office do not include a copy of the 'deposit,'. . . inspection of the certificate alone does not enable the court to determine the subject matter of the copyright" and advising "copyright owner[s] to keep copies in [their] files of the deposit submitted to the Copyright Office so that in [their] moving papers such copies can be submitted with the certificate itself"). Moreover, the burden Plaintiffs have described is irrelevant. As Udio has already explained, Plaintiffs remain able to request deposit copies from the Copyright Office if they are not otherwise available in Plaintiffs' own records, as the Order requires them to do. *See* Dkt. No. 89 at 2. Though Plaintiffs may not want to follow this established procedure, that is no basis for their attempt to circumvent what the Court clearly ordered.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion should be denied and Plaintiffs should comply with the Court's existing Order.

Dated: April 25, 2025

/s/ Brittany N. Lovejoy
Steven N. Feldman
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
steve.feldman@lw.com

Andrew M. Gass (*pro hac vice*)
Brittany N. Lovejoy (*pro hac vice*)
**LATHAM & WATKINS LLP**
505 Montgomery Street
Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
andrew.gass@lw.com
brittany.lovejoy@lw.com

Sarang V. Damle
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
sy.damle@lw.com

Alex Spiro
Todd Steven Anten
Jessica Anne Rose
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
51 Madison Avenue
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
alexspiro@quinnemanuel.com
toddanten@quinnemanuel.com
jessicarose@quinnemanuel.com

Andrew H. Schapiro
**Q**UINN **E**MANUEL **U**RQUHART **& S**ULLIVAN **LLP**
191 N. Wacker Drive
Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401
andrewschapiro@quinnemanuel.com

*Counsel for Defendant Uncharted Labs, Inc., d/b/a Udio.com*

**CERTIFICATION OF COMPLIANCE**

  I certify pursuant to Local Civil Rules 6.3 and 7.1(c) that the foregoing Memorandum of Law in Opposition to Plaintiff's Motion for Reconsideration was prepared on a computer using Microsoft Word. The total number of words in this brief, excluding the caption, table of contents, table of authorities, signature block, and this certification is 2,556. In preparing this certification, I relied on the word count program in Microsoft Word.

Dated: April 25, 2025

                */s/ Brittany N. Lovejoy*
                Brittany N. Lovejoy