UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, SONY MUSIC ENTERTAINMENT, ARISTA MUSIC, ARISTA RECORDS LLC, ATLANTIC RECORDING CORPORATION, RHINO ENTERTAINMENT COMPANY, WARNER MUSIC INC., WARNER MUSIC INTERNATIONAL SERVICES LIMITED, WARNER RECORDS LLC, and WARNER RECORDS/SIRE VENTURES LLC,<br><br>　　　　Plaintiffs,<br>vs.<br><br>UNCHARTED LABS, INC., d/b/a Udio.com, and JOHN DOES 1-10,<br><br>　　　　Defendant. | Case No. 1:24-cv-04777 (AKH) |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLARIFICATION**

**INTRODUCTION**

Udio's opposition (the "Opposition") attempts to recast Plaintiffs' motion for clarification as seeking reconsideration of the Court's April 8, 2025 order (the "Order") requiring Plaintiffs to produce deposit copies of the asserted works. That is decidedly untrue. Plaintiffs intend to fully comply with the Order and simply seek clarification that their production of (a) digital copies of each asserted work, and (b) declarations establishing that those digital copies are identical to the deposit copies submitted to the Copyright Office, will constitute compliance with the Order.

This is a reasonable and administrable manner of complying with the Court's directive to "produce the deposit copies," as Plaintiffs will be providing Udio copies of each asserted work that are identical to the actual deposit copies that were submitted to the Copyright Office. On Udio's reading, anything short of obtaining the actual deposit copies from the Copyright Office is insufficient, as it would require Udio "to simply take Plaintiffs' word" that the produced copies are what was deposited with the Copyright Office.[1] But Udio does not have to "take Plaintiffs' word" for it. If Udio has a good faith suspicion that, despite Plaintiffs' attestation, the deposit copy of a particular sound recording may not be the same as the digital copy produced by Plaintiffs, Plaintiffs have agreed to reasonably cooperate with Udio to facilitate Udio's ability to request the additional certified copies of the actual deposit copy from the Copyright Office via a stipulated proposed order. Udio offers no cogent explanation (and cites no authority) for why Plaintiffs should be required to bear the burden of making that request in the first instance.

---

[1] In this respect, there is no difference between the digital copies Plaintiffs have offered to produce and any physical media that may be stored in Plaintiffs' storage facilities. In either case Plaintiffs must provide additional evidence linking these recordings to what was given to the Copyright Office.

Because the method by which Plaintiffs are to "produce the deposit copies" is not addressed in the Order, it is properly the subject of a request for clarification. And the clarification that Plaintiffs propose not only reflects the most reasonable and practical manner of producing deposit copies, but it also matches the resolution of a virtually identical motion to compel filed by the defendant in *Suno, Inc.* (represented by the same counsel that represents Udio here).

## ARGUMENT

Udio mischaracterizes Plaintiffs' motion as seeking reconsideration of the Order requiring the production of deposit copies. *See* Opposition at 3-4. That is not accurate. As made clear in their motion, Plaintiffs do not challenge the Court's order to "produce the deposit copies." Order at 2. Plaintiffs merely seek clarification as to the method by which that production should occur.

In particular, Plaintiffs would like to clarify whether the Court envisions Plaintiffs' procuring and producing the actual media that were submitted to the Copyright Office at the time of registration. If so, Plaintiffs respectfully submit that such materials are no longer within their possession, custody, or control, as they were surrendered to the Copyright Office as part of the registration process. Had Plaintiffs not surrendered those deposit copies, their applications would have been rejected as incomplete. Plaintiffs do possess *copies* of the deposit copies that were given to the Copyright Office in digital format and can attest that those copies match what was deposited. Plaintiffs therefore propose the production of those digital copies, along with evidence tying these recordings to the original registration applications.

This is the most reasonable and administrable interpretation of the Order. As Plaintiffs' motion and supplemental declarations explain, digital recordings sourced from Plaintiffs' centralized repositories or physical recordings sourced from their archives reflect the same underlying recordings, regardless of format or age. In other words, because Bruce Springsteen's

- 3 -

"Born in the U.S.A.," first published in May 1984, is one of the asserted works, Plaintiffs intend to produce a digital copy of Bruce Springsteen's "Born in the U.S.A.," first published in May 1984 to comply with the Order.[2] *See* Dkt. 92-5.  Interpreting the Order to instead require Plaintiffs to search their archives for a physical copy of "Born in the U.S.A" archived in May 1984 makes little sense, as that physical recording would still be a *copy* of the deposit copy in the same way that the digital recording is a *copy* of the deposit copy.  It would increase the burden on Plaintiffs exponentially yet do nothing to eliminate Udio's reliance on Plaintiffs' attestations that the copies they produce are identical to the sound recordings that were deposited with the Copyright Office.  Since the original deposit copies were surrendered to the Copyright Office years ago, the best available evidence of those deposits are the digital recordings that Plaintiffs can prove are the same as what were deposited.

Nor did Plaintiffs make a "strategic choice" not to present this proposal to the Court in the first instance.  Opposition at 4.  Plaintiffs made this proposal during the meet-and-confer process supervised by the Special Master, after the parties agreed to seek the Special Master's guidance on Udio's motion.  *See* Dkt. 92-1 ¶¶ 3-6.  Plaintiffs notified the Special Master of their proposal to produce digital copies of the recordings and declarations attesting to their provenance, but the Order issued before a hearing was scheduled with the Special Master.  *See id.* ¶ 6.  And as noted, the Order does not address—let alone reject—Plaintiffs' proposal, which is precisely why Plaintiffs seek clarification.

---

[2] Plaintiffs are entitled to a presumption that the information reflected on their copyright registrations is correct, and they intend to use this information to guide their search for the digital copies of the recordings they will produce.  *See* 17 U.S.C. § 410(c) (providing that production of a valid registration certificate "made before or within five years after first publication of the work shall constitute prima facie evidence of . . . the facts stated in the certificate").

Udio's resistance to Plaintiffs' proposal to produce digital copies of the asserted works is particularly incongruous given that Udio's counsel recently agreed to this same process in parallel litigation involving precisely the same deposit copy issue. *See UMG Recordings, Inc. v. Suno, Inc.*, No. 24-cv-11611 (FDS), Dkt. 97 (Joint Stipulation and Order Regarding Deposit Copies). There, Suno stipulated that its motion to compel "deposit copies"—which relied on many of the same arguments that Udio presents here—was "moot" given Plaintiffs' agreement to "produce digital versions of all the asserted works listed in Exhibit A of the Complaint which Plaintiffs aver are the same recordings that each Plaintiff distributed commercially, submitted to Audible Magic, and, critically, deposited with the Copyright Office for registration." *Id.* ¶ 1(a) (internal quotation marks omitted). Plaintiffs further agreed to cooperate to provide any information necessary for Suno to obtain certified deposit copies from the Copyright Office, and the Court entered an order authorizing the Copyright Office to provide certified deposit copies upon a party's request and at that party's expense. *Id.* ¶ 1(b); *see also Suno, Inc.*, Dkt. 98 (Order Requesting Certified Deposit Copies from United States Copyright Office).[3] In other words, the exact procedures Udio now opposes were deemed sufficient—by its own counsel—to resolve a similar dispute in *Suno, Inc.* Plaintiffs highlighted the similarities between this case and the motion in *Suno, Inc.* in their opening brief, yet Udio failed to address those arguments.

There is no reason for a different result here. Udio suggests that contemporaneous physical copies in Plaintiffs' archives would somehow be better evidence than the digital copies that Plaintiffs propose to produce because Plaintiffs' declarants allegedly lack "percipient knowledge"

---

[3] The applicable regulations provide that the Copyright Office will grant a request for reproductions of works deposited in connection with a copyright registration when, for instance, the "Copyright Office receives a court order for reproduction of the deposited copies . . . of a registered work which is the subject of litigation." 37 C.F.R. § 201.2(d)(2)(iii).

of what were submitted to the Copyright Office. Opposition at 5. But producing physical archives would not resolve the issue Udio has identified, because Udio would still have to "take Plaintiffs' word" that the archival copies of the recordings are what were deposited with the Copyright Office, particularly given that many of the asserted works were deposited decades ago by individuals who may no longer be employed by Plaintiffs (or may never have been employed by them in instances where Plaintiffs acquired rights to the works from another entity). Indeed, the procedure Udio is contemplating would threaten any copyright plaintiff's ability to assert a claim based on an older work, unless they can present the individual who personally submitted the copyright application, perhaps decades in the past.

Udio also suggests that Plaintiffs could request certified deposit copies from the Copyright Office, *id.* at 8, but fails to explain why Plaintiffs should bear the burden and cost of doing so[4] when they have already agreed to produce digital copies of the same recordings, as well as facilitate Udio's equal access to request certified copies from the Copyright Office directly. Nor has Udio cited any authority to support its position that Plaintiffs, in these circumstances, must turn to the Copyright Office in the first instance and affirmatively seek to acquire materials not within their possession, custody, or control to satisfy their own discovery obligations.

---

[4] Specifically, for each sound recording, Plaintiffs would need to submit a signed litigation statement on Form LS, with each form costing $100. *See* 37 C.F.R. § 201.2(d)(2)(ii), 201.3(d)(15); *see also Compendium of U.S. Copyright Office Practices* § 2407.1(D)(2) (3d ed. Jan. 28, 2021); U.S. Copyright Office, Circular 4: Copyright Office Fees at 8 (2024). The Copyright Office charges $200 per hour to search for and certify each of the deposit copies, 37 C.F.R. § 201.3(c)(21), with an additional $500 per hour surcharge for expedited processing, *id.* § 201.3(d)(14). *See also* Circular 4 at 8. And finally, Plaintiffs would also incur a $45 per deposit copy mailing fee. 37 C.F.R. § 201.3(d)(17); Circular 4 at 8. These unnecessary costs would compound significantly given the large number of works at issue (which will grow larger, given the breadth of Udio's unauthorized copying).

Finally, Udio dramatically overreads the cases it cites in suggesting that Plaintiffs' proposed production is inadequate. For example, in *Structured Asset Sales, LLC v. Sheeran*, 120 F.4th 1066 (2d Cir. 2024), the plaintiff claimed copyright protection in elements of a musical composition (not a sound recording) that the plaintiff conceded were not reflected in the sheet music deposited with the Copyright Office. The court held that copyright protection in the musical composition at issue was limited to the "four corners of the Deposit Copy"—in that case, the five pages of sheet music of Marvin Gaye's *Let's Get It On* submitted to the Copyright Office at the time of registration. *Id.* at 1075-76 ("Elements of Gaye's popular audio recording of *Let's Get It On* that do not appear in the Deposit Copy are thus not protected by the registration."). The cited opinion did not concern discovery or even address more generally what evidence is necessary for a copyright plaintiff to sustain its burden of proof. Indeed, there is no discussion in *Structured Asset Sales, LLC* whatsoever of the manner of producing the sheet music, much less any suggestion that the plaintiff was required to retrieve the original deposit from the Copyright Office rather than produce an identical copy of the sheet music already within its possession, custody, and control.

*Antonick v. Electronic Arts, Inc.*, 841 F.3d 1062 (9th Cir. 2016), is similarly inapposite. That case involved claims of infringement over video game source code, where neither the copyrighted work nor the allegedly infringing works were introduced into evidence. *Id.* at 1064-65. The Ninth Circuit held that absent evidence "of the copyrighted work," the jury could not determine substantial similarity. *Id.* at 1066. But *Antonick* did not hold that a copyright plaintiff must produce the original copy of the deposited source code; in fact, mere images of "the games at issue[]" might have sufficed. *Id.* at 1065. Unlike in *Antonick*, Plaintiffs here will produce the asserted works into evidence, through digital copies of the same sound recordings that are on

deposit with the Copyright Office, and use Audible Magic to show that those sound recordings match files in Udio's training data.[5] *Antonick* in no way suggests that is inadequate.

## CONCLUSION

For the reasons stated above and in their opening brief, Plaintiffs respectfully request that the Court grant Plaintiffs' motion and clarify that, as in *Suno, Inc.*, Plaintiffs' production of (a) digital copies of each asserted work in their possession, custody, or control, and (b) declarations establishing that those digital copies are identical to the deposit copies submitted to the Copyright Office, will constitute compliance with the Order.

---

[5] While Udio has previously characterized Audible Magic as a "black box" and questioned "the reliability of [its] matching technology—about which there are presently no facts in the record," Dkt. 80 at 5-6 & n.4, it announced *today* a partnership with Audible Magic to "fingerprint tracks made using the platform at the moment they are created and to check the generated works, using Audible Magic's 'content control pipeline,' for any infringing copyrighted material." *See* Kristin Robinson, *Udio Partners With Audible Magic to Fingerprint AI-Generated Tracks and to Check for Infringements*, Billboard (Apr. 29, 2025). In other words, Udio itself is relying on the very same audio fingerprinting technology that Plaintiffs propose to use to establish their prima facie case—*and for the very same purpose.*

Dated: April 29, 2025
New York, New York

By: _____
Robert N. Klieger (pro hac vice)
Rajan S. Trehan (pro hac vice)
HUESTON HENNIGAN LLP
523 West 6th Street, Suite 400
Los Angeles, California 90014
Telephone: (213) 788-4340
Facsimile: (888) 775-0898
rklieger@hueston.com
rtrehan@hueston.com

Moez M. Kaba
Mariah N. Rivera
Alexander R. Perry
Samuel Givertz
HUESTON HENNIGAN LLP
1 Little West 12th Street
New York, New York 10014
Telephone: (646) 930-4046
Facsimile: (888) 775-0898
mkaba@hueston.com
mrivera@hueston.com
aperry@hueston.com
sgivertz@hueston.com

*Attorney for Plaintiffs UMG Recordings, Inc., Capitol Records, LLC, Sony Music Entertainment, Arista Music, Arista Records LLC, Atlantic Recording Corporation, Rhino Entertainment Company, Warner Music Inc., Warner Music International Services Limited, Warner Records Inc., Warner Records LLC, and Warner Records/SIRE Ventures LLC*

- 9 -