# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UMG RECORDINGS, INC., CAPITOL
RECORDS, LLC, SONY MUSIC
ENTERTAINMENT, ARISTA MUSIC, ARISTA
RECORDS LLC, ATLANTIC RECORDING
CORPORATION, RHINO ENTERTAINMENT
COMPANY, WARNER MUSIC INC., WARNER
MUSIC INTERNATIONAL SERVICES
LIMITED, WARNER RECORDS INC.,
WARNER RECORDS LLC, and WARNER
RECORDS/SIRE VENTURES LLC,

       Plaintiffs,

   v.

UNCHARTED LABS, INC., d/b/a Udio.com, and
JOHN DOES 1-10,

       Defendant.

Case No. 1:24-cv-04777-AKH

**MEMORANDUM OF LAW IN SUPPORT OF UDIO'S NOTICE OF UNOPPOSED
MOTION TO MAINTAIN UNDER SEAL PORTIONS OF CERTAIN EXHIBITS TO
PLAINTIFFS' MOTION TO FILE A FIRST AMENDED COMPLAINT**

Pursuant to Paragraphs 20 and 21 of the Stipulated Protective Order entered in this case, Dkt. No. 67 ("Protective Order"), and Rule 4(B) of the Court's Individual Rules, Defendant Uncharted Labs, Inc., d/b/a Udio.com ("Udio") hereby files this memorandum in support of Udio's unopposed motion to maintain under seal two exhibits and portions of a third exhibit to the Declaration of Rajan S. Trehan, submitted in support of Plaintiffs' Motion for Leave to Amend the Complaint ("MLA"); *see* Dkt. Nos. 109-7, 109-8, 109-10 (original redacted documents); *see also* Dkt Nos. 111-7, 111-8, 111-10 (sealed unredacted documents). This memorandum is accompanied by the Declaration of Brittany N. Lovejoy ("Lovejoy Decl.").

Plaintiffs filed their MLA on September 26, 2025, seeking leave to amend after the deadline for amendments had passed. *See* Dkt. No. 109; *see also* Lovejoy Decl. ¶ 3.[1] Plaintiffs' MLA describes and cites multiple discovery requests to Udio, as well as certain of Udio's responses. Udio designated the cited responses as Highly Confidential - Attorneys' Eyes Only under the Protective Order. *See* Dkt. No. 109; *see also* Lovejoy Decl. ¶ 3. Now, Udio seeks to seal only those discovery materials that are neither cited nor discussed in Plaintiffs' MLA or first amended complaint ("FAC"), or are merely referenced in the MLA to establish a timeline for the parties' negotiations—the substance of the documents and communications were not central to Plaintiffs' motion. Specifically, Udio seeks to seal: (i) Exhibit D to the Trehan Declaration, in its entirety, *see* Dkt. Nos. 109-7 (under seal), 111-7 (unredacted); (ii) Exhibit E to the Trehan Declaration, in its entirety, *see* Dkt. Nos. 107-8 (under seal), 111-8 (unredacted); and (iii) portions of Exhibit G to the Trehan Declaration, pp. 10–15, 16–17, 17–19, 20, 21, as indicated in Exhibit 1

---

[1] The Court granted Plaintiffs' MLA on September 30, 2025, while this motion was pending. *See* Dkt. No. 113.

to the Lovejoy Declaration. *Id.* ¶ 4; *see also* Dkt. No. 111-10 (unredacted Exhibit G to the Trehan Declaration).

Udio's motion is unopposed. On October 3, 2025, in an effort to minimize sealing disputes before the Court, Udio agreed to limit its sealing request to the above-listed documents, and Plaintiffs agreed that they would not oppose that request.[2] Lovejoy Decl. ¶¶ 4–5. Udio does not seek to maintain under seal any other material that was preliminarily sealed or redacted in connection with Plaintiffs' September 26, 2025 filing, and agrees that that material may become unsealed. *Id*. ¶¶ 4–5. Subject to the Court's approval, in order to effectuate this agreement, within 5 days of the Court's order on this sealing motion, the parties agree to file lesser-redacted public versions of these documents.[3]

Accordingly, and for the reasons set forth below, the Court should grant Udio's motion.

## I.    *No Right of Public Access Attaches to Discovery Materials Unrelated to The Matter Before the Court*

As the Second Circuit has explained, the right of public access to court records attaches only to "judicial documents." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). "The mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *Id*. (citations omitted). Rather, to determine whether a document is a "judicial document," courts in the Second Circuit consider "the relevance of the document's specific contents to the nature of the proceeding" and whether that specific document would "materially assist the public in understanding the issues before the ... court, and in evaluating the fairness and integrity of the court's proceedings." *Bernstein v.*

---

[2] Plaintiffs have reserved the right to contest the propriety of sealing this material at a later date, and to contest any future sealing requests.

[3] The parties agree that this refiling will not alter any other date or deadline in the case.

*Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016).  Documents that do qualify as "judicial documents" but "play only a negligible role in the performance of Article III duties" are accorded a low presumption of public access.  *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995).

 The documents at issue here are not judicial documents.  The portions of Exhibit G that Udio seeks to seal are wholly unrelated to Plaintiffs' MLA and Plaintiffs' FAC:  they are *other* confidential discovery materials that simply happen to be in the set of discovery responses that also contain the information that Plaintiffs relied on in connection with their MLA and FAC.  Udio does not seek to seal the portions of Exhibit G that Plaintiffs actually rely upon.

 In the same vein, Plaintiffs do not discuss Exhibits D or E, or refer to any information obtained from those documents, in their FAC.  Plaintiffs refer to these exhibits in the MLA only to establish the timeline of the parties' discovery negotiations.  The actual contents of Exhibits D and E were not central to Plaintiffs' motion.  *See* Memorandum of Law at 3–4, 9.  Indeed, the Court did not cite or discuss the substance of those exhibits in its order resolving Plaintiffs' MLA. *See* Dkt. No. 113.  These documents will not "materially assist the public in understanding the issues before the ... court," *Bernstein*, 814 F.3d at 139, and should remain under seal.

## II. *Any Public Right of Access is Outweighed by The Risk of Harm to Udio*

 Should the Court determine that these exhibits are "judicial documents," the Court should nevertheless conclude that any right of public access is outweighed by the risk of harm to Udio.

 Even where there is a presumption of "openness to public inspection," the presumption is "rebuttable upon demonstration that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'"  *See* J. Hellerstein, Individual Rule 4(B) (quoting *Bernstein*, 814 F.3d at 144).  "[T]he confidentiality of sensitive commercial information" is generally recognized

by courts as an interest warranting protection over rights to public access. *See, e.g.*, *Blackboard Inc. v. Int'l Bus. Machs. Corp.*, No. 21-cv-07165, 2021 WL 4776287, at *1 (S.D.N.Y. Oct. 12, 2021); *see also Standard Inv. Chartered, Inc. v. Fin. Indus. Reg. Auth., Ind.*, 347 F. App'x 615, 617 (2d Cir. 2009) (summary order) (affirming district court sealing order premised on a conclusion "that [a party's] interest in protecting confidential business information outweighs [. . . the] presumption of access"). That interest outweighs any public right of access here.

   A.  *The Descriptions of Source Code in Exhibits D and E are Competitively Sensitive As Well As Irrelevant*

   Exhibits D and E consist of meet-and-confer correspondence between the parties relating to the sufficiency of Udio's production of source code. These exhibits describe in detail the source code that Udio actually produced. Those descriptions are both irrelevant and highly confidential. It is obvious that "source code is inherently sensitive." *Xinuos, Inc. v. IBM Corp.*, No. 22-CV-09777-CS-VR, 2024 WL 5010717, at *3 (S.D.N.Y. Nov. 13, 2024) (collecting cases). Udio's only product is a groundbreaking AI model, and public disclosure of its source code could be ruinous for the company. *See* Lovejoy Decl. ¶ 6. And again, as described above, Plaintiffs do not refer to these Exhibits in their FAC, and discuss them in the MLA only to establish the timeline of the parties' discovery negotiations. Udio should not be forced to make them public.

   B.  *The Redacted Portions of Exhibit G Describe Udio's Sensitive Training Data and Guardrails*

   The portions of Exhibit G that Udio seeks to maintain under seal consist of interrogatory responses that describe data Udio may or may not have used in constructing its  training dataset (which consists of both audio data and metadata); how Udio processes its training data; and other aspects of Udio's product. *See* Lovejoy Decl. ¶ 7. All these materials are competitively sensitive

4

and should be maintained under seal.  If the details of how and where Udio did or did not obtain its training data were publicly disclosed, Udio's competitors could gain an unfair advantage, which would be particularly harmful given the nascent nature of the artificial intelligence market.  *See* Lovejoy Decl. ¶¶ 7; *see also* Dkt. No. 71-10 (February 18, 2025 Declaration of David Ding) ¶¶ 10–11 (describing competitive sensitivity of Udio's training data).  For instance, if this information were revealed, Udio's competitors could duplicate Udio's work to create a music-generative AI training data set of their own, and unfairly leverage that ill-gotten knowledge to train their own models.  *See* Lovejoy Decl. ¶ 7; Ding Decl. ¶ 10.  For that reason, this Court has already granted another request to seal a discussion of how Udio built its training data.  *See* Dkt. No. 79 (granting request to seal portions of exhibit that described how Udio compiled and processed its training data).  Other courts in this District and across the country have likewise repeatedly granted motions to seal the same kinds of commercially sensitive information in other generative AI copyright cases.  *See, e.g.*, *The New York Times v. Microsoft Corp.*, No. 23-cv-11195, Dkt. No. 378 (S.D.N.Y. Jan. 10, 2025) (granting motions to seal exhibits and portions of letter motions that reference "information of the type that would normally be kept strictly confidential by the parties" and noting "the high-stakes nature and publicity of these cases and the sensitive information involved"); *see also id.*, Dkt. No. 349 ¶ 6 (information sought to be maintained under seal included details of training processes for generative AI model); *accord Kadrey v. Meta Platforms, Inc.*, No. 23-cv-03417, Dkt. No. 304 (N.D. Cal. Dec. 4, 2024) (order granting motion to seal discussion of training data in generative AI copyright case); *Concord Music Grp., Inc.* v. *Anthropic PBC*, No. 24-cv-03811, Dkt. No. 261, at 6 (N.D. Cal. Nov. 1, 2024) (arguing that disclosure of confidential information about training data "would allow [the defendant]'s competitors to gain unfair insight into and mimic [the defendant]'s training methods"); *Anthropic*, No. 24-cv-03811, Dkt. No. 282,

at 2–4 (N.D. Cal. Dec. 19, 2024) (granting request to seal confidential information about training data).

Exhibit G also contains a technical description of the guardrails Udio has put in place to ensure that its model, for example, blocks outputs that sound too similar to an existing artist's voice. *See* Dkt. No. 26 (Answer) at 3. The details of how Udio developed and instituted those guardrails is likewise competitively sensitive, and public disclosure creates a risk of harm to Udio. *See* Lovejoy Decl. ¶ 8; *cf.* Ding Decl. ¶ 11 (noting the paramount importance of Udio's source code to maintaining its competitive position). Those guardrails have nothing to do with Plaintiffs' MLA, and the risk of harm to Udio outweighs any public interest in disclosure here.

### C.  *The Narrow Tailoring of Udio's Request Supports Sealing*

Finally, in the interest of public access, Udio has redacted only the portions of Exhibit G that are both competitively sensitive *and* wholly irrelevant to Plaintiffs' MLA. Udio's narrow fashioning of the request supports sealing. *See, e.g.*, *Playtex Prods., LLC v. Munchkin, Inc.*, No. 14-cv-01308, 2016 WL 1276450, at *11 (S.D.N.Y. Mar. 29, 2016) (granting motion to seal requiring redaction of a "limited number of statements in the briefs and exhibits"); *Cooksey v. Digital*, No. 14-cv-07146, 2016 WL 316853, at *3 (S.D.N.Y. Jan. 26, 2016) (granting motion to seal and noting that "[t]he Court has carefully reviewed the redacted Amended Complaint to assure that the redactions are narrowly tailored to redact only the allegations as to which there is a sufficiently compelling interest in privacy").

In sum, Udio's tailored request balances the public's limited interest in disclosure of this information against Udio's strong interest in safeguarding its sensitive commercial information, disclosed under the auspices of the Protective Order. For all these reasons, Udio respectfully requests that the Court grant Udio's unopposed motion.

Dated: October 3, 2025

*/s/ Brittany N. Lovejoy*
Steven N. Feldman
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
steve.feldman@lw.com

Andrew M. Gass (*pro hac vice*)
Brittany N. Lovejoy (*pro hac vice*)
**LATHAM & WATKINS LLP**
505 Montgomery Street
Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
andrew.gass@lw.com
brittany.lovejoy@lw.com

Sarang V. Damle
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
sy.damle@lw.com

Alex Spiro
Todd Steven Anten
Jessica Anne Rose
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
51 Madison Avenue
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
alexspiro@quinnemanuel.com
toddanten@quinnemanuel.com
jessicarose@quinnemanuel.com

Andrew H. Schapiro
**QUINN EMANUEL URQUHART & SULLIVAN LLP**

191 N. Wacker Drive
Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401
andrewschapiro@quinnemanuel.com

*Counsel for Defendant Uncharted Labs, Inc.,*
*d/b/a Udio.com*

**<u>CERTIFICATE OF COMPLIANCE</u>**

I, Brittany N. Lovejoy, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules") that the foregoing Memorandum of Law was prepared using Microsoft Word and contains 1,959 words in accordance with the Local Rules. In making this calculation, I have relied on the word and page counts of the word-processing program used to prepare the document.

Dated: October 3, 2025
        Lafayette, California

                                        */s/ Brittany N. Lovejoy*
                                        Brittany N. Lovejoy
                                        LATHAM & WATKINS LLP
                                        *Attorney for Defendant Uncharted*
                                        *Labs, Inc., d/b/a Udio.com*