**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, SONY MUSIC ENTERTAINMENT, ARISTA MUSIC, ARISTA RECORDS LLC, ATLANTIC RECORDING CORPORATION, RHINO ENTERTAINMENT COMPANY, WARNER MUSIC INC., WARNER MUSIC INTERNATIONAL SERVICES LIMITED, WARNER RECORDS INC., WARNER RECORDS LLC, and WARNER RECORDS/SIRE VENTURES LLC, | Case No. 1:24-cv-04777-AKH<br><br>Hon. Alvin K. Hellerstein<br><br>**ORAL ARGUMENT REQUESTED** |
| *Plaintiffs*, | |
| v. | |
| UNCHARTED LABS, INC., d/b/a Udio.com, and JOHN DOES 1-10, | |
| *Defendant*. | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT UNCHARTED LABS, INC.'S MOTION TO DISMISS**
**COUNT THREE OF THE AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.      INTRODUCTION ...................................................................................................1

II.     ARGUMENT ........................................................................................................3

     A.      Plaintiffs Ignore the Statutory Context ....................................................3

     B.      YouTube Is Not a DVD Player..................................................................8

     C.      Plaintiffs Attack a Strawman ..................................................................10

III.    CONCLUSION....................................................................................................11

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*All. of Artists and Recording Cos., Inc. v. Gen. Motors Co.*,
    162 F. Supp. 3d 8 (D.D.C. 2016) ...................................................................................6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................................1

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................................1

*Chamberlain Grp., Inc. v. Skylink Techs., Inc.*,
    381 F.3d 1178 (Fed. Cir. 2004) ...................................................................................5

*Disney Enterprises, Inc. v. VidAngel, Inc.*,
    869 F.3d 848 (9th Cir. 2017) ...............................................................................8, 9, 10

*Dunn v. Commodity Futures Trading Comm'n*,
    519 U.S. 465 (1997) ......................................................................................................6

*Hattler v. Ashton*,
    No. 16-cv-4099, 2017 WL 11634742 (C.D. Cal. Apr. 20, 2017) .............................8

*Lexmark Intern., Inc. v. Static Control Components, Inc.*,
    387 F.3d 522 (6th Cir. 2004) ......................................................................................4

*Nat'l Assn. of Home Builders v. Defs. of Wildlife*,
    551 U.S. 644 (2007) ..................................................................................................4, 7

*RealNetworks, Inc. v. Streambox, Inc.*,
    No. 2:99-cv-02070, 2000 WL 127311 (W.D. Wash. Jan. 18, 2000) ........................9

*UMG Recordings, Inc. v. Kurbanov*,
    No. 1:18-cv-957, 2021 WL 6492907 (E.D. Va. Dec. 16, 2021) ...............................7

### STATUTES

17 U.S.C.
    § 106 ..............................................................................................................................1
    § 1201(a) ..............................................................................................................1, 2, 5, 6
    § 1201(a)(1)(A) ..........................................................................................................5, 9
    § 1201(a)(3)(A) ..............................................................................................................4
    § 1201(a)(3)(B) ....................................................................................................4, 9, 10
    § 1201(b) ....................................................................................................................1, 5

## OTHER AUTHORITIES

Exemption to Prohibition on Circumvention of Copyright Protection Systems for
  Access Control Technologies, 65 Fed. Reg. 64556-01, 2000 WL 1624383
  (Oct. 27, 2000) ................................................................................................................8, 9, 10

S. Rep. No. 105-190 (1998) ............................................................................................4, 5

U.S. Copyright Office, *The Digit. Millenium Copyright Act of 1998: U.S.
  Copyright Off. Summary* (Dec. 1998) .....................................................................2, 5

U.S. Copyright Office, *Section 1201 of Title 17: A Rep. of the Reg. of Copyrights*
  (June 2017)........................................................................................................................5, 9

## I.    INTRODUCTION

In its opening memorandum, Udio argued that Plaintiffs' new claim under section 1201(a) of the Digital Millennium Copyright Act is legally unsound because the "technological measure" that they allege Udio circumvented—YouTube's "rolling cipher"—is a copy control, not an access control.  *See* Dkt. No. 125 ("Mot."); *see also* Dkt. 119 ("Am. Compl.").  That follows directly from Plaintiffs' own allegations, which repeatedly concede that the singular function of the "rolling cipher" is to "protect against unauthorized ***downloading and copying***."  *See* Am. Compl. ¶ 53 (emphasis added).  Plaintiffs' allegations may give rise to a claim of *copyright infringement* under 17 U.S.C. § 106—which Plaintiffs have already alleged as part of this case, *see* Am. Compl. ¶¶ 100–17, and which will in turn implicate the fair use issues that courts around the country are wrestling with in the context of generative AI.  But it does not yield a separate claim for a violation of section 1201 because section 1201 does not prohibit the circumvention of copy controls.  *See* 17 U.S.C. § 1201(b).  Plaintiffs' new claim contravenes the plain language of section 1201 (as well as its purpose) and cannot proceed as a matter of law.  Thus, count three of their Amended Complaint should be dismissed.

In an attempt to avoid this outcome, Plaintiffs try to manufacture a factual dispute, claiming that Udio "disputes" how YouTube's "rolling cipher" technology functions.  *See* Dkt. No. 127 ("Opp.") at 25.  This is not the case: for the purposes of its motion to dismiss, Udio accepts as true the facts about the "rolling cipher" alleged in the Amended Complaint.  *See* Mot. at 10 n.5,12.  The issue for Plaintiffs is that, putting aside any legal labels, these alleged facts describe a copy control.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] formulaic recitation of the elements of a cause of action will not do.").

Left with their own description of a technology that prevents "copying" and "downloading," Plaintiffs defend their section 1201(a) claim by advancing what amounts to a purely *legal* argument based on a strained and unsupported interpretation of the statute. *See* Dkt. No. 127 ("Opp."). They advance a definition of access controls that would encompass "technological measure[s]" that leave the <u>content</u> of a work freely accessible to anyone, but merely control "how users may interact with" the work—including a technological measure that prevents users from "downloading," i.e., copying a work. Opp. at 16. But that definition of access controls is broad enough to also cover all copy controls, which can just as easily be characterized as measures that control "*how* users may interact" with a work by (e.g.) allowing someone to view a work but prohibiting them from copying it. That, in turn, would collapse the distinction between these two distinct categories of controls and unwind Congress's careful decision to prohibit circumvention of access controls while permitting circumvention of copy controls—threatening the public's ability to make fair uses of lawfully accessible content. *See* U.S. Copyright Office, *The Digit. Millenium Copyright Act of 1998: U.S. Copyright Off. Summary*, at 3 (Dec. 1998), https://www.copyright.gov/legislation/dmca.pdf ("USCO DMCA Summary") ("This distinction was employed to assure that the public will have the continued ability to make fair use of copyrighted works.").

Plaintiffs, in other words, make the same mistake that the district court made in the *Yout* case: they ignore the statutory context and advance a blinkered interpretation of the phrase "controls access" that would eviscerate the statutory framework that Congress enacted. Udio raised exactly this point in its recently filed amicus brief in *Yout*.[1] And despite having almost

---

[1] *See* Brief for Amici Curiae in *Yout, LLC v. Recording Indus. Ass'n of Am.*, No. 22-2760, ECF 127 at § B (2d Cir., Oct. 7, 2025).

three weeks to review that argument, Plaintiffs' Opposition ignores it and walks straight into the same problem.

Worse still, Plaintiffs continue to cite the *Yout* district court opinion as persuasive authority, emphasizing that it has not been reversed. *See* Opp. at 17–19. They also criticize Udio for filing a "two-year-belated" amicus brief in the appeal of that case and suggest that Udio's brief rehashed arguments the parties had already briefed. Opp. at 19 n.6. But they fail to mention that the Second Circuit panel recently granted Udio leave to file its amicus brief out of time and invited the parties to the *Yout* appeal to submit 20-page briefs in response to Udio's brief, *see* Mot. Order in *Yout, LLC v. Recording Indus. Ass'n of Am.*, No. 22-2760, Dkt. 124 (2d Cir. Oct. 10, 2025). The panel, which has been reviewing the parties' briefs and the district court opinion for almost two years, would not have done so if Udio's briefs did not raise concerns that warrant close analysis. This Court should consider those arguments in earnest, rather than endorsing the Yout district court opinion as authoritative.

## II.    ARGUMENT

### A.    Plaintiffs Ignore the Statutory Context

Plaintiffs do not dispute the key fact that should resolve this motion: as their Amended Complaint concedes, the sound recordings they uploaded to YouTube are freely accessible to any member of the public on the YouTube platform without the need for logins, passwords, decryption, or the like. *See* Mot. at 2. Nor do Plaintiffs dispute that the video files that Udio allegedly downloaded are the very same video files that YouTube makes available for free public viewing on its player pages. *Id.* at 2 (citing Am. Compl. ¶ 57).

That alone establishes that those files do not fall within the statutory language's definition of access controls. Access controls require some kind of technological barrier that prevents the public from "gain[ing] access to the work" itself without the "authority of the copyright

3

owner." 17 U.S.C. § 1201(a)(3)(B) (emphasis added). A "work," in the context of the Copyright Act, means the expressive content that a copyright protects—such as the text of a book or the sounds captured by a sound recording. *See* Mot. at 17 n.9. A technological measure that leaves the text of a book or the sounds in a sound recording freely accessible to the public (such as the "rolling cipher") is not an access control. 17 U.S.C. § 1201(a)(3)(B); *see also* S. Rep. No. 105-190, at 12 (1998) (hereinafter "Senate Judiciary Committee Report") (access controls "limit[] access to the plain text of a work"); *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 545 (6th Cir. 2004) (systems that "permit[] users to view or watch a copyrighted work but prevent[] them from downloading a permanent copy of the work" are copy controls, not access controls).

Instead of contesting that key factual premise, Plaintiffs raise a purely legal argument. All parties agree that the statute's definition of access controls includes "technological measure[s]" that prevent the public from viewing, reading, or using a work's content, e.g., by "encrypt[ing]" the content of a book so that it cannot be read, or "scramb[ling]" an audio file so that it cannot be played. 17 U.S.C. § 1201(a)(3)(A). But Plaintiffs contend that the statutory definition of access controls also encompasses technological measures that allow free public access to the content of a work *but* restrict what users can do with that work. *See, e.g.*, Opp. at 16 (arguing that the "rolling cipher" is an access control because it "controls *how* users may interact with (or access) copyrighted works" (emphasis added)).

That legal argument violates basic rules of statutory interpretation. It is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Nat'l Assn. of Home Builders v. Defs. of*

*Wildlife*, 551 U.S. 644, 666 (2007) (citation omitted).  The contours of the relevant "statutory scheme" are not in dispute.  Plaintiffs, for example, do not dispute two critical points:

1.  That section 1201 defines two distinct categories of technological measures, i.e., access controls, *see* 17 U.S.C. § 1201(a), and copy controls, *see id.* § 1201(b); *see also* Senate Judiciary Committee Report at 12 (two provisions "designed to protect two distinct rights and target two distinct classes of devices").

2.  That the statute treats these different categories of technological measures differently, i.e., by prohibiting the circumvention of access controls, *see* 17 U.S.C. § 1201(a)(1)(A), while expressly declining to prohibit the circumvention of copy controls, *see id.* § 1201(b).  *See also Chamberlain Grp., Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1195 (Fed. Cir. 2004) ("Though § 1201(b) parallels the anti-trafficking ban of § 1201(a)(2), there is no narrowly tailored ban on direct circumvention to parallel § 1201(a)(1).  This omission was intentional.").[2]

The clear implication of that statutory scheme is that there must be some category of copy controls that can be freely circumvented because they are not also access controls.  Plaintiffs' interpretation leaves no room for that category.  To the contrary, their interpretation would render every copy control also an access control.  Take, for example, a mechanism designed to "prevent[] the copying of an e-book after it has been downloaded to a user's device"—which the Copyright Office described as a paradigmatic copy control.[3]  Under Plaintiffs' formulation, that mechanism

---

[2] While Plaintiffs do not acknowledge the reason for this statutory asymmetry, they do not (and cannot) dispute that it exists for one reason: to ensure that section 1201 does not impose liability on fair users of copyrighted material.  *See* USCO DMCA Summary at 3.

[3] U.S. Copyright Office, *Section 1201 of Title 17: A Rep. of the Reg. of Copyrights* at 6 (June 2017), https://www.copyright.gov/policy/1201/section-1201-full-report.pdf (hereinafter "USCO Report").

would also qualify as an access control because it "controls *how* users may interact with" the book by (e.g.) allowing a user to read the book while preventing the user from copying it.  Opp. at 16 (emphasis in original).  Or take, for example, a mechanism that permits a user to listen to an audio tape but prevents a user from making a bootleg copy of the tape—another paradigmatic copy control.  *See All. of Artists and Recording Cos., Inc. v. Gen. Motors Co.*, 162 F. Supp. 3d 8, 10–11 (D.D.C. 2016) (describing such a system).   Under Plaintiffs' formulation, that mechanism would also qualify as an access control because while it does not "bar[] access" to the tape, it nonetheless "regulates the *manner* . . . under which access occurs" by preventing the kind of access that could enable a user to make a copy.  Opp. at 14.

Put another way: under Plaintiffs' theory, "control[] access to a work" under section 1201(a) means "control[ling] *how* users may interact with (or access) copyrighted works, restricting other forms of access, such as . . . direct downloads."   Opp. at 16 (claiming that the "rolling cipher" restricts "offline playback," "mobile playback," "ad-free viewing," and "direct downloads," all of which involve downloading, i.e., copying, the work); *see also* Am. Compl. ¶ 53 ("'rolling cipher' . . . impede[s] external access to the underlying YouTube video files, thereby preventing or inhibiting any downloading[] [or] copying").  That rhetorical sleight of hand would collapse the statutory structure by rendering copy controls a mere subset of access controls.  *See Dunn v. Commodity Futures Trading Comm'n*, 519 U.S. 465, 472 (1997) ("[L]egislative enactments should not be construed to render their provisions mere surplusage.").  And if all copy controls were also access controls, section 1201(a) would necessarily prohibit their circumvention.  That would effectively negate Congress's decision to carve out copy controls from the statute's act-of-circumvention prohibition.  Plaintiffs thus invite this Court to do through interpretive gamesmanship what they failed to convince Congress to do in the legislative sphere

during the 1990s: sanction an effective prohibition on the circumvention of copy controls. *See* Mot. at 7 (explaining that the record industry unsuccessfully lobbied for such a prohibition in the lead-up to the DMCA's passage).

That is not a tenable interpretation of the statute, as Udio already argued in its recently submitted amicus brief in the *Yout, LLC v. Recording Industry Association of America, Inc.* appeal. *See* Brief for Amici Curiae in *Yout, LLC v. Recording Indus. Ass'n of Am.*, No. 22-2760, ECF 127 at 14–15 (2d Cir., Oct. 7, 2025) (arguing that under the district court's analysis, "any copy control could be interpreted as an access control in some form or another"). Rather than addressing that problem, Plaintiffs ignore it and make the same error that the district court made in *Yout*: they focus exclusively on dictionary definitions of individual words rather than advancing an interpretation that reads those "words . . . in their context and with a view to their place in the overall statutory scheme." *Nat'l Assn. of Home Builders*, 551 U.S. at 666; *compare Yout*, 633 F. Supp. 3d at 664 (focusing on dictionary definitions of "control" and "access" but failing to analyze the statutory scheme as a whole), *with* Opp. at 14 (same). In fact, at no point in their Opposition do Plaintiffs attempt to harmonize their interpretation with the overall statutory framework.

The other case that Plaintiffs cite concerning YouTube—a report and recommendation in *UMG Recordings, Inc. v. Kurbanov*, No. 1:18-cv-957, 2021 WL 6492907 (E.D. Va. Dec. 16, 2021)—directly contradicts their position. In that case, the plaintiffs, a number of record labels including Plaintiffs here, accused the defendant of operating a service designed to circumvent YouTube's "[r]olling cipher" to allow users to download "copyrighted audio recordings" from YouTube. *Id.* at *1, *4–5. Notably, however, the *Kurbanov* plaintiffs and the court proceeded primarily on the theory that the "rolling cipher" was a copy control, and that the defendant's service violated section 1201(b)'s anti-trafficking provision. *Id.* at *7. At no point did the Court's

reasoning suggest that the "rolling cipher" also qualifies as an access control. In other words, contrary to Plaintiffs' suggestion, *see* Opp. at 2–3, the *Kurbanov* case directly supports Udio's argument: "[t]he 'rolling cipher' . . . is a copy control, not an access control." Mot. at 12.[4]

### B.  YouTube Is Not a DVD Player

Plaintiffs cite several cases concerning DVDs, including the Ninth Circuit's decision in *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848 (9th Cir. 2017), in support of their contention that the "rolling cipher" is both an access control and a copy control. *See, e.g.*, Opp. at 3, 15. But those cases concern a different suite of "technological measure[s]" that functions differently.

As the Ninth Circuit made clear in *VidAngel*, the encryption typically applied to DVDs— referred to as the "Content Scrambling System" or "CSS"—accomplishes two distinct functions. <u>First</u>, the technological measure "control[s] access to [the] copyrighted content on DVDs" by blocking anyone who does not have a "[DVD] player[] from [a] licensed manufacturer[]" from watching it. *Id.* at 853.[5] This is an access control: it makes it impossible for a user who does not have a DVD player to watch a DVD by (e.g.,) inserting it into her personal

---

[4] In this regard, *Kurbanov* is consistent with the court's decision in *Hattler v. Ashton*, No. 16-cv-4099, 2017 WL 11634742 (C.D. Cal. Apr. 20, 2017), which found that a technological measure that permitted free public streaming of videos but prohibited downloads was a copy control, not an access control. *See id.* at *5–8; see also* Mot. at 15–16 (discussing *Hattler*). Plaintiffs dismiss *Hattler*, claiming that, because it was decided before *Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848 (9th Cir. 2017), it is "likely no longer good law." Opp. at 22. But *VidAngel* and *Hattler* are not inconsistent: the measure at issue in *Hattler* permitted access while preventing copying, while the measure at issue in *VidAngel* prevented both access and copying. *See infra* 8–10.

[5] *See* Exemption to Prohibition on Circumvention of Copyright Protection Systems for Access Control Technologies, 65 Fed. Reg. 64556-01, 64568, 2000 WL 1624383 (Oct. 27, 2000) (hereinafter "USCO 2000 Rulemaking") ("DVDs with CSS may be viewed only on equipment licensed by [DVD CCA].").

computer.[6] *See* 17 U.S.C. § 1201(a)(3)(B) (access controls prohibit "access to the work" unless the user applies a "process or treatment"). <u>Second</u>, CSS protects against unauthorized reproduction of the film on the DVD by limiting the use of the DVD to "playback, not for copying." *VidAngel*, 869 F.3d at 853.[7] This is a copy control: it "protect[s] against unauthorized uses [i.e., copying] of a copyrighted work once access has been lawfully obtained." USCO Report at 2. The distinction between these two functions is critical. As the Copyright Office explained shortly after the DMCA's passage, a person who circumvents the "copy control aspects of CSS . . . without circumventing its access controls" is not liable under section 1201 because that provision of law does not prohibit circumvention of copy controls. *See* USCO 2000 Rulemaking at 64568.

That is why the *VidAngel* court held that CSS is "both an access control and a use control"—because it both blocks those without licensed DVD players from viewing the content of the works on the DVDs and prevents the unauthorized copying of those works. *VidAngel*, 869 F.3d at 864; *see also RealNetworks, Inc. v. Streambox, Inc.*, No. 2:99-cv-02070, 2000 WL 127311, at *7 (W.D. Wash. Jan. 18, 2000) (discussing a similar mechanism that both protects "access to a work" by requiring a "Secret Handshake" to view it, and separately protects against "unauthorized copying of [a] work" by using a "Copy Switch" to prevent a user from "record[ing] a copy as the file is streamed"). It is also why the court held that VidAngel violated section 1201(a)(1)(A):

---

[6] Plaintiffs characterize such technology as a "*partial* restriction[] on access." Opp. at 15 (emphasis in original). This description is flawed. As described by the Ninth Circuit, CSS *entirely* blocks access unless a user utilizes an authorized player. *See VidAngel*, 869 F.3d at 864 (explaining that "only authorized players get th[e] keys" to the discs' contents). By contrast, as Plaintiffs concede, the "rolling cipher" at issue here freely grants streaming access and restricts only "copying." *See* Am. Compl. ¶ 52.

[7] *See* USCO 2000 Rulemaking at 64568 ("The terms of the DVD CCA license permit[] licensed devices to decrypt and play—but not to copy—the films.").

because VidAngel used a software program—rather than a licensed DVD player—to access the content of the films on DVDs. *VidAngel*, 869 F.3d at 853, 864–65.

Critically, *VidAngel*'s reasoning relied on the fact that the technology applied to DVDs actually prohibits access: the content of a film stored on a DVD is "encrypt[ed]" so that one cannot "gain access to" it without a licensed DVD player that can decrypt the file. *Id.* at 853; 17 U.S.C. § 1201(a)(3)(B). By contrast, Plaintiffs' proposed pleading concedes that the content of the videos Plaintiffs uploaded to YouTube can be accessed by anyone. *See* Am. Compl. ¶ 52. They are not encrypted, nor does a user need to log in or use a password to view them. To the contrary, the only "technological measure" at issue here is the "rolling cipher," which Plaintiffs' pleading repeatedly concedes exists for a different function: to protect against "unauthorized downloading and copying" of the videos. *Id.* ¶ 53; *see also id.* ¶ 57. The rolling cipher protects against unauthorized copying in the same way that CSS protects against unauthorized *reproduction* of a film on a DVD by limiting the use of the DVD to "playback, not for copying." *VidAngel*, 869 F.3d at 853. Thus, it is analogous to the "copy control aspects of CSS," which the public can freely circumvent without section 1201 liability. *See* USCO 2000 Rulemaking at 64568.

## C.    Plaintiffs Attack a Strawman

Plaintiffs also mischaracterize Udio's argument. Udio's argument is not, as they claim, based on the contention that Udio's "*purpose* . . . was to download (and thus copy) Plaintiffs' copyrighted sound recordings for use in training its AI." Opp. at 19 (emphasis in original); *see also id.* at 20–21 ("Udio cites no case holding that a TPM controlling access loses that status when the circumvention is for copying."). To the contrary, Udio's argument is that the "technological measure" that Plaintiffs describe in their Amended Complaint is plainly a copy control, not an access control. Mot. at 12. In the words of that pleading, the "rolling cipher" exists to prevent users from "downloading" or "making permanent, unrestricted copies" of YouTube videos. Am.

Compl. ¶¶ 52–53. That is the textbook definition of a ***copy*** control. And because Plaintiffs' amended pleading also concedes that the sound recordings they uploaded to YouTube are freely accessible to any member of the public, *see id.* ¶ 52, they have conceded that the "rolling cipher" is <u>not</u> an access control.

## III.    CONCLUSION

For the reasons identified above and in Udio's opening brief, Plaintiffs' section 1201 claim fails to state a cognizable cause of action. The Court should therefore dismiss Count Three of the Amended Complaint with prejudice.

Dated: October 31, 2025

Respectfully submitted,

*/s/ Andrew M. Gass*

Andrew M. Gass (*pro hac vice*)
Brittany N. Lovejoy (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
andrew.gass@lw.com
britt.lovejoy@lw.com

Sarang V. Damle
LATHAM & WATKINS LLP
555 Eleventh Street NW
Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
sy.damle@lw.com

Grace McLaughlin
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1747
Facsimile: (212) 751-4864
grace.mclaughlin@lw.com

Alex Spiro
Andrew H. Schapiro
Jessica A. Rose
Todd S. Anten
QUINN EMANUEL URQUHART & SULLIVAN,
LLP
295 5th Avenue
New York, NY 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
alexspiro@quinnemanuel.com
andrewschapiro@quinnemanuel.com
jessicarose@quinnemanuel.com
toddanten@quinnemanuel.com

*Counsel for Defendant Uncharted Labs,
Inc., d/b/a Udio.com*

## <u>CERTIFICATION OF COMPLIANCE</u>

As required by Local Civil Rule 7.1(c), I hereby certify that the foregoing Memorandum of Law contains 3,495 words, excluding the parts of the Memorandum that are exempted from Local Civil Rule 7.1(c).

<u>*/s/ Andrew M. Gass*</u>
Andrew M. Gass