**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, ARISTA MUSIC, and ARISTA RECORDS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> UNCHARTED LABS, INC., d/b/a Udio.com, and JOHN DOES 1-10, <br><br> Defendant. | Case No.: 1:24-cv-04777-AKH |

**MEMORANDUM OF LAW IN SUPPORT OF UDIO'S MOTION TO MAINTAIN PARTIALLY UNDER SEAL DOCKET ENTRIES 160-2, 160-4, 160-5, AND 160-8**

Pursuant to Paragraphs 22 and 23 of the Amended Confidentiality Stipulation and Protective Order entered in this case, ("Protective Order"), Dkt. No. 147, and and Rule 4(B) of the Court's Individual Rules, Defendant Uncharted Labs, Inc., d/b/a Udio.com ("Udio") hereby files this memorandum in support of Udio's motion to maintain under seal discrete portions of Plaintiffs' Memorandum of Law in Support of Motion for Leave to Amend Complaint, Dkt. No. 160-2, at 6-7, 13, Plaintiffs' Proposed Second Amended Complaint, Dkt. No. 160-4, ¶¶ 12, 76, the redline of the Proposed Second Amended Complaint, Dkt. No. 160-5, ¶¶ 12, 76, and the Declaration of Daniel Delorey in Support of Plaintiffs' Motion for Leave to Amend Complaint, Dkt. No. 160-8, ¶¶ 3-4, 6. This memorandum is accompanied by the Declaration of Andrew Sanchez.

Udio seeks to seal a limited set of references to the volume of audio files that Plaintiffs claim Udio used to train its generative AI models (the "Training Data Number"). The Training Data Number is nonpublic, commercially sensitive information that Plaintiffs gained access to only through discovery and under the protections of the Protective Order and the separate Training Data Inspection Protocol, which the parties entered in recognition of the unique sensitivity of this data. *See* Dkts. 67, 82, 147. Disclosure of the Training Data Number would cause competitive harm for Udio, and good cause exists to grant the narrow redaction Udio requests.

### 1. The Commercial Sensitivity of the Training Data Number Justifies Sealing

Even where there is a presumption of public access to judicial records, the presumption is "rebuttable upon demonstration that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" See J. Hellerstein, Individual Rule 4(B) (quoting *Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 144 (2d Cir. 2016)). "[T]he confidentiality of

sensitive commercial information" is generally recognized by courts as an interest warranting protection over rights to public access. *See, e.g.*, *Blackboard Inc. v. Int'l Bus. Machs. Corp.*, No. 21-cv-07165, 2021 WL 4776287, at *1 (S.D.N.Y. Oct. 12, 2021); *see also Standard Inv. Chartered, Inc. v. Fin. Indus. Reg. Auth.*, Ind., 347 F. App'x 615, 617 (2d Cir. 2009) (summary order) (affirming district court sealing order premised on a conclusion "that [a party's] interest in protecting confidential business information outweighs [. . . the] presumption of access"). That interest outweighs any public right of access here.[1]

The Training Data Number reflects the alleged volume of audio files Plaintiffs claim Udio used to train its generative AI models. *See* Sanchez Decl. ¶ 4.[2] To be clear, Udio does not seek to seal any *particular* recording Plaintiffs allege was included in the training data. Nor does Udio seek sealing of the information material to Plaintiffs' motion to amend: the additional works they purportedly identified in the training data. *Cf. Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 121 (2d Cir. 2006) ("Where testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption [of public access] is low and amounts to little more than a prediction of public access absent a countervailing reason."). Rather, the sole information Udio seeks to  impound is the total *number* of audio files allegedly used to train its model. Udio has never disclosed that figure publicly, and for good reason. Generative AI

---

[1] Udio intends to oppose Plaintiffs' Motion for Leave to Amend Complaint. That the Training Data Figure is "irrelevant to the live claims in this action" further supports impoundment. *See Freedom Mortg. Corp. v. Tschernia*, No. 20-cv-1206, 2021 WL 11645776, at *2 (S.D.N.Y. May 7, 2021); *see also Lusk v. Akradi*, No. 15-cv-1911, 2018 WL 1634408, at *2 (D. Minn. Apr. 5, 2018) (denying motion to unseal proposed amended complaint attached to unsuccessful motion for leave to amend and explaining that "[t]he public's interest in a proposed amended complaint that is unanswered by the Defendants is outweighed by the confidentiality interests of the Defendants and third parties" (emphasis omitted)).

[2] Udio does not concede that the Training Data Number alleged by Plaintiffs accurately reflects the volume of audio files Udio used to train its AI models.

3

is a booming field, and many rival companies exist seeking to develop tools to compete with Udio's. *See* Sanchez Decl. ¶¶ 5-7.  If competitors learned the volume of Udio's training data—a core component of the tool has Udio built—they could use that information to develop and refine competing products more rapidly and at a lower cost by using the Training Data Number to measure their own training datasets against Udio's and extrapolate commercially sensitive insights about Udio's training methodology and strategy, thereby obtaining an unfair competitive advantage. *See* Sanchez Decl. ¶ 7.  Plaintiffs have been able to allege the Training Data Number only because Udio produced the underlying information in discovery, subject to the Protective Order as well as the separate Training Data Inspection Protocol, which designates all training data as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," requires inspection to be conducted in a secure room on designated computers without internet access, and, with limited exceptions, prohibits copies of the training data from leaving the secured room.  *See* Sanchez Decl. ¶ 4; Dkt. 82; *see also* Dkts. 67, 147.  While Udio disclosed its highly sensitive information to Plaintiffs for use in this litigation under the protections of the Protective Order and the Training Data Inspection Protocol, public disclosure of the Training Data Number to potential competitors could cause Udio serious commercial harm.  *See* Sanchez Decl. ¶ 6.

Courts routinely seal competitively sensitive business information of this kind, recognizing that its disclosure could "allow competitors an unfair advantage." *Kewazinga Corp. v. Microsoft Corp.*, No. 18-cv-4500, 2021 WL 1222122 at *7 (S.D.N.Y. Mar. 31, 2021) (finding that disclosure of confidential "technical" information, such as proprietary data collection procedures and source code variables would be "highly prejudicial"); *see also Samsung Elecs. Co., Ltd. v. Microchip Tech. Inc.*, 748 F. Supp. 3d 257, 260 (S.D.N.Y. 2024) (sealing "proprietary technical" information, including confidential discussions of source code, because its protection "outweighs the public's

4

right of access"); *EFT Servs., LLC v. I-POS Sys. LLC*, No. 20-cv-1757, 2025 WL 1752144 at \*3-4 (S.D.N.Y. June 25, 2025) (sealing proprietary technical information regarding certain "technology and software" protocols).  In cases involving generative AI specifically, other courts in this District and across the country have consistently applied this approach to grant motions to seal the same kind of commercially sensitive information about training datasets and similar information.  *See, e.g.*, *The New York Times v. Microsoft Corp.*, No. 23-cv-11195, Dkt. No. 378 (S.D.N.Y. Jan. 10, 2025) (granting motions to seal exhibits and portions of letter motions that reference "information of the type that would normally be kept strictly confidential by the parties" and noting "the high-stakes nature and publicity of these cases and the sensitive information involved"); *see also id.*, Dkt. No. 349 ¶ 6 (information sought to be maintained under seal included details of training processes for generative AI model); *accord Kadrey v. Meta Platforms, Inc.*, No. 23-cv-03417, Dkt. No. 304 (N.D. Cal. Dec. 4, 2024) (order granting motion to seal discussion of training data in generative AI copyright case); *Concord Music Grp., Inc. v. Anthropic PBC*, No. 24-cv-03811, Dkt. No. 261, at 6 (N.D. Cal. Nov. 1, 2024) (arguing that disclosure of confidential information about training data "would allow [the defendant]'s competitors to gain unfair insight into and mimic [the defendant]'s training methods"); *Anthropic*, No. 24-cv-03811, Dkt. No. 282, at 2–4 (N.D. Cal. Dec. 19, 2024) (granting request to seal confidential information about training data).  This Court has joined those others in this very litigation, granting previous requests to seal technical information about Udio's training data due to the same competitive risks of disclosure currently at issue.  *See* Dkt. Nos. 79, 116 (granting requests to seal portions of exhibits that described how Udio constructed its training dataset).

In light of the significant harm to Udio's competitive position that could result from disclosure of the Training Data Number, the Court should find that good cause exists to seal that information.

### 2. *The Narrow Tailoring of Udio's Requests Supports Sealing*

Udio's sealing request is narrowly tailored to prevent the risk of competitive harm while also allowing public access to judicial records. *See, e.g.*, *Playtex Prods., LLC v. Munchkin, Inc.*, No. 14-cv-01308, 2016 WL 1276450, at *11 (S.D.N.Y. Mar. 29, 2016) (granting motion to seal requiring redaction of a "limited number of statements in the briefs and exhibits"); *Cooksey v. Digital*, No. 14-cv-07146, 2016 WL 316853, at *3 (S.D.N.Y. Jan. 26, 2016) (granting motion to seal and noting that "[t]he Court has carefully reviewed the redacted Amended Complaint to assure that the redactions are narrowly tailored to redact only the allegations as to which there is a sufficiently compelling interest in privacy").

Across the dozens of pages of materials Plaintiffs filed in support of their second Motion to Amend the Complaint, Udio seeks to redact only the Training Data Number, which presents unique commercial sensitivities, as described above. Udio does not seek to impound anything beyond the Training Data Number, and no less restrictive alternative would protect Udio's interests. For instance, Plaintiffs identified the additional works Udio allegedly infringed only by inspecting Udio's training data, which has been designated "Highly Confidential - Attorney's Eyes Only." *See* Dkt. 82. Udio does not seek to seal all references to that inspection or to its results, however, recognizing that the right of public access outweighs any commercial interest in keeping private the identity of these specific works. Instead, Udio seeks to seal only a small handful of references to the exact number of files in its training data set. This approach is well-supported in this Circuit and beyond. *See supra.*

Because the interest of the general public in the Training Data Number, in isolation, is low, and the risk of potential competitive harm is significant, the Court should grant Udio's narrow motion to seal.

\* \* \* \* \*

For these reasons, Udio respectfully requests that the Court grant the motion and order that the materials described herein remain under seal.

Dated: June 1, 2026

Respectfully submitted,

/s/ *Brittany N. Lovejoy*
Andrew M. Gass (*pro hac vice*)
Brittany N. Lovejoy (*pro hac vice*)
Ivana Dukanovic (*pro hac vice*)
**LATHAM & WATKINS LLP**
505 Montgomery Street
Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
andrew.gass@lw.com
brittany.lovejoy@lw.com
ivana.dukanovic@lw.com

Grace McLaughlin
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
grace.mclaughlin@lw.com

*Counsel for Defendant Uncharted Labs, Inc.,*
*d/b/a Udio.com*

**CERTIFICATE OF COMPLIANCE**

I, Brittany N. Lovejoy, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules") that the foregoing Memorandum of Law was prepared using Microsoft Word and contains 1,678 words in accordance with the Local Rules. In making this calculation, I have relied on the word and page counts of the word-processing program used to prepare the document.

Dated: June 1, 2026
          Lafayette, California

/s/ *Brittany N. Lovejoy*
Brittany N. Lovejoy
LATHAM & WATKINS LLP
*Counsel for Defendant Uncharted
Labs, Inc., d/b/a Udio.com*