**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SONY MUSIC ENTERTAINMENT, ARISTA MUSIC, and ARISTA RECORDS LLC, <br><br> Plaintiffs, <br><br> v. <br><br> UNCHARTED LABS, INC., d/b/a Udio.com, and JOHN DOES 1-10, <br><br> Defendant. | Civil Action No. 1:24-cv-04777-AKH |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO UDIO'S MOTION TO MAINTAIN PARTIALLY UNDER SEAL DOCKET ENTRIES 160-2, 160-4, 160-5, AND 160-8**

Plaintiffs Sony Music Entertainment, Arista Music, and Arista Records LLC (together, "Plaintiffs") respectfully submit this Memorandum of Law in Opposition to Udio's Motion to Maintain Partially Under Seal Docket Entries 160-2, 160-4, 160-5, and 160-8 ("Motion").

## I.    INTRODUCTION

Udio's Motion seeks concealment of a single number—the "Training Data Number"—in Plaintiffs' motion to amend and supporting papers, (Dkt. 164). (Mot. at 2.) According to Udio, that "Training Data Number" represents the total number of audio files Udio allegedly used to train its generative AI model. [1] (*Id.*) But the Training Data Number should not be redacted. The Training Data Number is part of Plaintiffs' proposed amended complaint, where "'the weight of the presumption' in favor of access to pleadings is strong[.]" *Fed. Trade Comm'n. v. Cleo AI, Inc.*, 2025 WL 1260992, at *1 (S.D.N.Y. Apr. 30, 2025) (denying motion to seal and ordering party to "refile the unredacted complaint and declaration"). Moreover, that figure is necessary to understand the full extent of Udio's copying, which bears on Udio's fair use defense.

To rebut the presumption of public access, Udio offers only conclusory assertions that disclosure of the Training Data Number "***could*** cause Udio serious commercial harm." (Mot. at 4 (emphasis added).) Such speculation is insufficient as a matter of law to justify sealing. *See, e.g., Slice Ins. Tech., Inc. v. Appalachian Underwriters, Inc.*, 2025 WL 3677802, at *2 (S.D.N.Y.

---

[1] Udio's Motion also seeks sealing of paragraph 6 of the Declaration of Daniel Delorey in Support of Plaintiffs' Motion for Leave to Amend Complaint ("Delorey Decl.") and portions of pages 7 and 13 of Plaintiffs' Plaintiffs' Memorandum of Law in Support of Motion for Leave to Amend Complaint ("Plaintiffs' Memorandum"). (*See* Mot. at 2). These portions of the Delorey Decl. and Plaintiffs' Memorandum, however, do not pertain to the Training Data Number; rather, they refer to the number of recordings Plaintiffs identified in Udio's training data, which they provided to the content recognition service Audible Magic ("Audible Magic Figure"). Following the submission of its Motion, Udio confirmed with Plaintiffs that it inadvertently included the Audible Magic Figure in its Motion.  The Parties are conferring regarding a joint stipulation to memorialize Udio's withdrawal of its request to seal the Audible Magic Figure.

Dec. 18, 2025) ("Vague and unspecified business concerns, like confidential and related business interactions that could be used by corporate competitors in a detrimental manner, are broad, general, and conclusory allegations insufficient to justify sealing."). Indeed, Udio's argument rings especially hollow because the Training Data Number is a lone aggregate number that says nothing about how Udio built its models or what it did with any sound recording. It simply provides context for the scale of Udio's conduct, which the public is entitled to see.

Udio cannot overcome the strong presumption of public access to Plaintiffs' proposed amended pleading and accompanying filings. Nor has Udio articulated any particularized harm that would result from disclosure of the Training Data Number. The Court should deny Udio's Motion in full.

## I.    BACKGROUND

This sealing dispute arises in the context of Plaintiffs' copyright infringement claims against Udio, which involve infringement allegations of an extraordinary scale. Plaintiffs are among the world's leading record companies, and they allege that Udio copied their copyrighted sound recordings without authorization to build the dataset used to train its generative AI music service. (Dkt. 1, Compl. ¶¶ 6-9.) Udio has admitted that building its service "required showing the program *massive* amounts of data to derive statistical insights about that date." (Dkt. 159, Answer at 2 (emphasis added).) Through discovery, Plaintiffs were able learn the total number of audio files Udio used to train its AI model—the Training Data Number. Understanding that number provides necessary context for the scale of Udio's copying.

## II.    ARGUMENT

### A.    There Is a Presumptive Right to Public Access to the Amended Complaint and Accompanying Documents in Full

"There is a 'common law right of public access to judicial documents,' which is 'firmly

rooted in our nation's history[.]'" *Richtone Design Grp., L.L.C. v. Kelly*, 2023 WL 3170405, at *1 (S.D.N.Y. May 1, 2023) (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006)). That presumption extends to complaints—which courts have recognized as documents that "initiate[] judicial proceedings," serve as "the cornerstone of every case," and constitute "the very architecture of the lawsuit." *Cleo AI,* 2025 WL 1260992, at *1; *see also Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016) ("[A] complaint is [an obvious example of] a judicial document subject to [which a strong] presumption of access" attaches.).

Indeed, courts have held that "'the weight of the presumption' in favor of access to pleadings is strong," for pleadings because "the parties' substantive legal rights and duties may be affected." *Cleo AI*, 2025 WL 1260992, at *1 (quoting *Bernstein*, 814 F.3d at 140). That is why courts have explained that "access to the complaint is almost always necessary if the public is to understand a court's decision." *Id.* at *1 (denying motion to seal complaint). Only a "particular and specific demonstration of fact showing that disclosure would result in an injury" can overcome the presumption of public access. *Shaf Int'l, Inc. v. First Mfg. Co.*, 2024 WL 2962143, at *2 (E.D.N.Y. June 12, 2024) (quoting *Coventry Cap. US LLC v. EEA Life Settlements, Inc.*, 2017 WL 5125544, at *3 (S.D.N.Y. Nov. 2, 2017)).

Here, the Training Data Number appears in a proposed amended complaint and supporting materials filed with this Court. These are precisely the kinds of material that should not be sealed because they are "the first step in ascertaining the parties' rights." *New England Life Ins. Co. v. Wilson*, 2011 WL 13214116, at *3 (D. Vt. Sep. 28, 2011) (denying motion to seal complaint). For that reason, the public's presumptive right of access to Plaintiffs' amended complaint—including its reference to the Training Data Number—is at its strongest and most difficult to overcome. *See*

*Cleo AI*, 2025 WL 1260992, at \*2 (explaining that the "'weight of the presumption' in favor of access to pleadings is strong" (internal citation omitted)).

Not only is the presumption of public access at its strongest, but sealing the Training Data Number would actually harm the public's understanding of this case. Specifically, the Training Data Number is a key fact in this litigation and is relevant to the fair use analysis. It speaks directly to the nature and extent of Udio's copying, and provides context for Plaintiffs' allegations by demonstrating that Udio's sweeping disregard for copyright ownership extends far beyond the specific works asserted in this case. The public is entitled to understand the scope of that conduct in full.

### B.    Udio's Statement of Potential Competitive Harm Is Speculative

Udio has also failed to overcome the strong presumption in favor of public access with respect to the Training Data Number. To justify withholding this single number, Udio broadly asserts that competitors "***could***" use the Training Data Number to "develop and refine competing products," "measure their own training datasets against Udio's," and "extrapolate commercially sensitive insights about Udio's training methodology and strategy."  (Mot. at 4 (emphasis added).) All of this, according to Udio, "***could*** cause Udio serious commercial harm." (*Id.* (emphasis added).)

None of these justifications withstand scrutiny. Udio does not explain how any competitor could "develop," "refine," or "measure" their own models based on a single number that simply identifies the total count of audio files, devoid of any further context about Udio's training dataset. Nor does Udio explain what "commercially sensitive insights" of Udio's training and development could possibly be gleaned from revealing the Training Data Number. *Id.* Indeed, Udio has already confirmed that it has "use[d] existing sound recordings as data to mine and analyze for the purpose of identifying patterns in the sounds of various musical styles." (Am. Answer at 1.)

The declaration Udio submitted in connection with its Motion does not close that gap. The Declaration of Andrew Sanchez ("Sanchez Decl.") asserts only that Udio treats its training data as confidential as a general matter. (Sanchez Decl. ¶ 6.) But a general policy of treating information as confidential is precisely the kind of "[v]ague and unspecified business concerns" that are too "broad, general, and conclusory . . . to justify sealing." *See Slice*, 2025 WL 3677802, at *2 (denying motion to seal complaint). Conceding that the Training Data Number simply "reflects the alleged volume of audio files Plaintiffs claim Udio used to train its generative AI models," Udio has provided no colorable basis to claim that disclosure of that number will cause competitive harm. (Mot. at 3.)

In sum, Udio's claims of the harm that it "could" suffer are precisely the kind of "broad, general, and conclusory" assertions that are insufficient to justify sealing. *See Slice*, 2025 WL 3677802, at *2 (denying motion to seal complaint and ordering unredacted complaint and exhibits be filed "without any redactions").

**C.    None of the Authorities Udio Relies on Supports Its Position**

Finally, the cases that Udio relies on do not support its request to seal the Training Data Number. As a threshold matter, to support its sealing request, Udio highlights the fact that the process in which Plaintiffs learned of the Training Data Number was subject to a protective order. (Mot. at 4 (citing Sanchez Decl. ¶ 6).) But Udio offers no explanation for why the protective order standard should govern a motion to seal. Nor could it. Courts in this circuit have made clear, "[t]he existence of a protective order is not a compelling reason to justify sealing judicial documents." *Fed. Trade Comm'n v. Quincy Bioscience Holding Co., Inc.*, 2023 WL 3919217, at *1 (S.D.N.Y. Mar. 7, 2023) (denying motions to seal). The operative Protective Order (Dkt. 67) in this case makes the same point. The Protective Order permits parties to designate materials as confidential, but emphasizes that it "does not create entitlement to file confidential information under seal."

(Dkt. 67 at 1.) Udio's reliance on its confidentiality designations cannot carry the day, particularly in light of the presumption of public access afforded to these pleading materials.

The other authorities Udio relies on actually undermine, rather than support, its request to seal the Training Data Number. In each case, the sealed material was highly specific technical information. For example, in *Kewazinga Corp. v. Microsoft Corp.*, the court sealed proprietary data collection and image processing procedures, hardware specifications, and confidential source, including "specific algorithms and the names of specific variables and functions in that source code." 2021 WL 1222122, at *7 (S.D.N.Y. Mar. 31, 2021). And in *Samsung Elecs. Co. v. Microchip Tech. Inc.*, the court sealed "confidential discussion of [] source code." 748 F. Supp. 3d 257, 260 (S.D.N.Y. 2024). The same is true in *EFT Servs., LLC v. I-POS Sys. LLC*, in which the court permitted redactions of "certain technology and software" that were used "to enable transactions through specific hardware devices to specific third-party processors." 2025 WL 1752144, at *4 (S.D.N.Y. June 25, 2025). The Training Data Number is unlike any of the highly technical information in these cases. By contrast, it is a single figure identifying the total volume of audio files Udio used to train its system. That is a far cry from the technical detail that justified sealing in those cases.

Udio's last round of citations also falls flat. Each concerned the sealing of detailed descriptions of training processes and methodologies. *See, e.g., New York Times v. Microsoft Corp.*, No. 23-cv-11195, Dkt. 349 ¶ 6 (S.D.N.Y. Nov. 25, 2024) (seeking to seal "the specific processes, methods, and technical details thereof that OpenAI employs to train and test its large language models"); *Kadrey v. Meta Platforms, Inc.*, No. 23-cv-03417, Dkt. 246, at 2 (N.D. Cal. Oct. 31, 2024) (seeking to seal "detailed technical discussion concerning Meta's AI development"); *Concord Music Group, et al., v. Anthropic PBC*, No. 24-cv-03811, Dkt. 261, at 6–

7 (N.D. Cal. Nov. 11, 2024) (seeking to seal information about Anthropic's "training methods" and "information regarding the creation and technical implication of Anthropic's guardrails against copyright infringement"). The Training Data Number, by contrast, is a single aggregate number that reveals nothing about Udio's training processes, systems, or methodologies; it speaks only to the scale of Udio's copying.[2] The situations are distinct and offer no support for Udio's request to seal the Training Data Number.

## III.    CONCLUSION

Udio's Motion seeks to conceal the full extent of its copying to create its training database. But Udio's Motion does not support this request. Stripped of its conclusory assertions of competitive harm, there is no cognizable reason to shield from public view how many sound recordings Udio copied to build its service. The strong presumption of public access to the pleadings cannot yield to unsubstantiated speculation. For the foregoing reasons, Plaintiffs respectfully request that the Court deny Udio's Motion.

---

[2] Indeed, this distinction also differentiates Udio's previous motions to seal, which sought to redact "technical information about Udio's training data." (*See* Mot. at 5 (citing Dkts. 79, 116); *see* Dkt. 77 at 2 (seeking to seal "(i) how Udio creates and processes its training datasets; and (ii) Udio's efforts to protect its training data"); Dkt. 116 at 4 (seeking to seal "data Udio may or may not have used in constructing its training dataset," "how Udio processes its training data," and "other aspects of Udio's product").).

Dated:   June 8, 2026
         New York, New York

By:_____

Moez M. Kaba
Mariah N. Rivera
Alexander R. Perry
Samuel Givertz
**HUESTON HENNIGAN LLP**
1 Little West 12th Street
New York, New York 10014
Telephone: (646) 930-4046
Facsimile: (888) 775-0898
mkaba@hueston.com
mrivera@hueston.com
aperry@hueston.com
sgivertz@hueston.com

Christina V. Rayburn (*pro hac vice*)
**HUESTON HENNIGAN LLP**
620 Newport Beach, CA 92660
Telephone: (949) 356-6412
Facsimile: (888) 775-0898
crayburn@hueston.com

Robert N. Klieger (*pro hac vice*)
Rajan S. Trehan (*pro hac vice*)
**HUESTON HENNIGAN LLP**
523 West 6th Street, Suite 400
Los Angeles, California 90014
Telephone: (213) 788-4340
Facsimile: (888) 775-0898
rklieger@hueston.com
rtrehan@hueston.com


*Counsel for Plaintiffs*